Robert D. Conaway Bar No #119657
LAW OFFICE of ROBERT D. CONAWAY
222 East Main Street, Suite 212
Mailing address: PO Box 865
Barstow, CA 92312-0865
Phone: (760) 256-0603
Fax: (760) 256-0660
rdconaway@gmail.com

Attorney for ELISE BROWN, Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

ELISE BROWN,

        Plaintiff,

v.

DEBRA BOWEN, California Secretary of State

        Defendant.

CASE No. CV 12 - 05547 PA (SPx)

PLAINTIFF's UNOPPOSED EX PARTE APPLICATION FOR ORDER SHORTENING TIME [FRCP 6(C)(1) ON PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION [PROPOSED ORDER]

[FILED CONCURRENT WITH PROPOSED ORDER, COMPLAINT, MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF EX PARTE, NOTICE OF MOTION & MOTION FOR PRELIMINARY INJUNCTION, DECLARATIONS OF ELISE BROWN & ROBERT CONAWAY]

Date: Ex Parte
Time: Ex Parte
Room: TBD

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

## RELIEF SOUGHT

Pursuant to FRCP 6(c)(1)(C), Local Rules 6-1, 7-19 and 17.1, and the Court's inherent power to manage its docket, Plaintiff applies on an ex parte basis

-1-

for an Order Shortening Time for Plaintiff's Motion for Preliminary Injunction, filed herewith, currently noticed to be heard by this court on July 23, 2012 at 10: am (assuming service on June 27, 2012 and a Monday motion calender) .

Plaintiff asks the Court to set for hearing her motion for Preliminary Injunction on July 11, 2012, 10 am and that plaintiff's motion for preliminary injunction be deemed served by the end of business on June 27, 2012 upon the court and the Secretary of State, that Defendant's opposition be due by July 6, 2012 and any reply due by July 9, 2012.

Alternatively, the Court asks the deadline to prepare and deem filed the Certificates of Nomination for Congressional candidates, be stayed until such time the briefing can be scheduled for the convenience of the Court and the Secretary of State.

This application is based on the accompanying Memorandum of Points and Authorities, the Declaration of Elise Brown and Robert D. Conaway and plaintiff's request for judicial notice.

**NOTICE & RELATED MEET & CONFER [ATTEMPT] PARTICULARS**

Plaintiff request that their Motion for Preliminary Injunction be heard on shortened time is appropriate because Plaintiff is racing against the clock toward the California Election Code's Certificate of Nomination deadline that the California Secretary of State has under California Elections Code Section 8147 which states that the "Secretary of State will prepare certificates of nomination for Congressional and Legislative Candidates" (July 13 or 14th depending on which "official" calender is looked at .

The Secretary of State's general counsel office was contacted by phone and fax on June 22, 2012 in an attempt to explore the issues relating to the proposed preliminary injunction (e.g. a local rule meet and confer), whether the Secretary of State would be interested in delaying the preparation of the certificates of nomination or whether an ex parte would be needed for expedited handling–this

letter attached as Exhibit "A" to the Declatation of Robert D. Conaway has not been responded to as of this Notice's preparation.

It would appear in light of the silence, the ex parte is functionally unopposed by the California Secretary of State's office.

Should the Court deny this ex parte application, Plaintiff respectfully requests treat the accompanying Motion for Preliminary Injunction as having been noticed for July 23, 2012, 10 am in a Department to be announced.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

*Elise Brown is an African American woman who has lived in San Bernardino County for 51 years, started voting in 1961 (or 51 years ago), served as a school teacher in this county for 32 years and has ALWAYS voted as a Democrat for Democratic candidates in each and every primary and GENERAL ELECTION for 50 plus years, which Proposition 14 has now taken away.*

Elise Brown, an African American voter in the new 8th Congressional District (25th for the last apportionment under Howard McKeon) seeks declaratory and injunctive relief to enforce the provisions of the First, Fourteenth and Fifteenth Amendments of the Constitution of the United States and 2 of the Voting Rights Act of 1965 ("VRA") as amended in 1982 or more commonly known of as 42 U.S.C. 1973, so to prevent deprivation under color of state law, ordinance, regulation, custom or usage of the rights, privileges and immunities secured by the aforementioned federal constitutional provisions and statute.

Ms. Brown under the VRA's 1982 reauthorization believes states *"minorities have a right [to not just vote] but to elect representatives of their choice"*, a right, that is now factually impossible in the upcoming November 2012 election for the vast majority of African Americans in the 8th Congressional District because the Top 2 Primary law (which focuses not on elections being a

PLAINTIFF's EX PARTE APPLICATION AN ORDER SHORTENING TIME,ETC
-3-

competitive process for differing ideas, but a competitive process for the people running) has left the field with two candidates for the November election that are openly hostile to the rights and interests of African American voters in the 8th Congressional District even were it not for the significant traditional pro-Democrat voting history of African Americans.

Additionally, this action seeks a ruling that California's Proposition 14 entitled the "Top Two Primaries Act [which took effect April 19, 2011] that modified Article II, Section 5 of the California Constitution and Section 6 of Article II of the California Constitution, is unconstitutional as violating ELISE BROWN's rights in the 8th Congressional District in that:

(a) the first and fourteenth amendment right to freedom of association, which protects the freedom to join and participate in the general election process in furtherance of common political beliefs, *which by its nature includes the right to select and be able to vote for party nominees in the general elections* [as per United States Supreme Court in Democratic Party of the United States of America v Wisconsin ex rel La Follette, 450 US 107 (1981) and reaffirmed in California Democratic Party v Jones 530 US 567, 573-74 (2000)], *the right of qualified voters to cast their votes effectively ["which ranks amongst our most precious freedoms"]* per Anderson v Celebreeze, 460 U.S. 780, 787-88, quoting Williams v Rhodes, 393 U.S. 23, 30-31] *and protection against "substantial intrusion into .... associational freedom which occurs when people are deprived of the right to vote for their candidate in federal elections"*. LaFollette Id.

The top two candidates in the 8th Congressional District present race-hostile policy positions including but not limited to Craig Imus (the top vote getter, whose campaign slogan was "Live Free or Die" with a man holding a rifle, in the 8th Congressional District) wanting to only uphold the Constitution as it was written (which did not recognize that anyone had the right to vote other than white males and only counted African Americans as three-fifths of a person under Section 2 of

Article 1 of the United States Constitution) and both Craig Imus and Paul Cook not recognizing the right of women to control their reproductive health decisions, both major issues for people of color in general elections such as the one coming up in November. Paul Cook voted against an anti-discrimination bill (AB 1450 which prohibited discrimination against unemployed workers, a class African Americans lead percentage-wise in California & SB 185 which allowed race, ethnicity and gender to be considered in college admission decisions). See Declaration of Elise Brown, Paras. 6, 7, 8 & Declaration of Robert D. Conaway attaching Project Vote Smart's record of Imus' position as Exhibit "B" and a Voting Record of Paul Cook as Exhibit "C"

(b) ***The retained right to vote in a federal general election for a democrat, a practice that has existed all of Plaintiff's adult life and since the first election after California was admitted to the Union in 1850, is a substantive due process right protected under the 14th Amendment & Bush v Gore (2000)***, which recognized that State citizens had rights in federal elections under the substantive due process clause of the United States Constitution, rights now abridged by the conservative-only republican-only general election in the 8th Congressional District. A federal right that has existed in the State of California for 160 years and over fifty years for plaintiff, should not so cavalierly be extinguished by voter proposition.

(c) California Election Code Section 8147 authorizes and directs the California Secretary of State to issue certificates of nomination (note nomination is singular) to candidates for Congress, which is contradicted when nomination is of people from the same political party, an enlargement of power under statute.

## II. BACKGROUND

On June 22, 2012, Plaintiff's counsel sent a fax letter after talking with a Robbie Anderson at the Secretary of State's office, informing them that plaintiff

1  would seek ex parte relief if some agreement could not be reached on the issues
2  raised in plaintiff's complaint (sent to the Secretary of State with the June 22,
3  2012 letter), asking if the Secretary would stipulate to delay the preparation of the
4  Certificates of Nomination under Election Code Sec. 8147 and the related timing
5  constraint concerns created by Election Code Sec. 8147. Declaration of Robert D.
6  Conaway & Exhibit "A" thereto.

7      Plaintiff can only assume the letter was passed to one of the two available
8  attorneys (according to Mr. Anderson) and the Secretary's office is unagreeable
9  with any sort of voluntary agreement/emergency order and stipulation regarding
10 the time constraints plaintiff is facing. Silence, in the face of a duty to respond, is a
11 fairly good indicia of issue rejection.

## III. ARGUMENT

13     Under FRCP 6(c)(1)(C)the Court, may for good cause and on an ex parte
14 basis, issue an order shortening time under which a motion may be heard. The
15 Central District of California has held that "legitimate ex parte applications" are
16 appropriate "where the other side actually is served" seeking "a routine order",
17 such as an order shortening time. In re Intermagnestics Am. Inc. 101 B.R. 191,
18 193, 194 (C.D., Cal. 1989).

19     The 9th Circuit, the Court articulated a sliding scale and stated a preliminary
20 injunction should be granted "when a plaintiff demonstrates... that serious
21 questions going to the merits were raised and the balance of hardships tips sharply
22 in the plaintiff's favor," as long as the other two Winters v Natural Resources
23 Defense Council [(2008) 555 US 7, 20)] factors have also been met [that the
24 plaintiff is likely to succeed, that the plaintiff is likely to suffer irreparable harm in
25 absence of the preliminary relief and that the balance of the equities tips in
26 plaintiff's favor, and that an injunction is in the public interest].

27 **A. Plaintiff Will be Irreparably Harmed Without Immediate Injunctive Relief**
28     Calendering the motion even with hand service will mean the motion would

be set (on a Monday motion day) no sooner than July 23 or ten days after the Secretary will prepare the nomination papers.

The purpose of this action and related motions is to have either a heard motion BEFORE the July 13, 2012 nomination paper deadline or to have the nomination paper preparation deadline delayed until this motion can be set to a mutually acceptable time.

Once the time for the certification of nomination has passed, unless the court believes it can vacate certificates of nomination prepared by the Secretary of State, Elise Brown will not be able to vote for a Democrat for Congress for the first time in a half a century (and based on the 1961 date of her first eligibility to vote, a right which existed BEFORE the passage of the federal voting rights act, which underscores a substantive right in California has existed for a long time!)

Once denied, that loss cannot be regained.

Once the chain of enfranchisement is broken, a dangerous precedent is created for future state intrusions in the name of candidate (vs idea) competition in the public ear.

It is clear that Elise Brown wants to vote, but is revulsed by the notion of voting for two people who would look at the color of her skin as not deserving of the same rights, freedoms and protections.

In districts where the African American are a smaller percentage and the candidates so reactionary, it is not the likely winners at the ballot box that should be protected. Voting rights are deserving of the highest protection the courts can give and denial of this ex parte application, would break a chain of voting right protections and freedoms.

The July 13, 2012 nomination papers preparation is something the Secretary of State showed no interest in moving. It is a date that we need to work with if this voting rights challenge is to be heard in time for a potential

disposition that will uphold federal law against what is a State-proposition based encroachment, if not all out voting rights abridgement.

The equities, plaintiff respectfully submits, weigh in for Ms. Brown–voting rights are precious. Court deadlines, State agency intransigence and poor communication from the registrar in the primary county should be used to deny plaintiff's right to vote.

### B. PLAINTIFF IS NOT AT FAULT IN CREATING URGENT NEED FOR INJUNCTIVE RELIEF

This is the earliest plaintiff could have brought the within action and ex parte application, and quite frankly because of the failure of the San Bernardino County Registrar to issue press releases on where they are in the process, means any further delay could be catastrophic.

How? With no press releases or web postings on the status of the canvassing, the Registrar of Voters could theoretically, without giving ANY progress report, take until July 3, 2012, a scant 10 days before the nomination certificates would have to be prepared, which would have halved the time that plaintiff is now working with in this ex parte and the related motion.

Plaintiff made a good faith effort to reach a pre-filing agreement that would have obviated the need for a contested preliminary injunction and would have allowed the natural course of the canvassing to and any potential recount to be finished. Such an option was not allowed by the Secretary of State's inaction.

Further the delay was necessary to make sure there was not going to be any likely significant change in the candidate positions under the Top Two Primary protocols.

Accordingly the ex parte application to shorten time is necessary here or the court should consider ordering the Secretary of State to stay the preparation of the certificates of nomination.

//

### III. CONCLUSION

For the foregoing reasons, Plaintiff request pursuant to FRCP 6(c)(1)(C) that the Court issue an Order Shortening Time for Plaintiff Motion for Preliminary Injunction or the court should consider ordering the Secretary of State to stay the preparation of the certificates of nomination.

Dated: June 25, 2012        LAW OFFICE of ROBERT D. CONAWAY

_____
ROBERT D. CONAWAY,
Attorney for Elise Brown, Plaintiff