LODGED

1  Robert D. Conaway Bar No #119657
   LAW OFFICE of ROBERT D. CONAWAY
2  222 East Main Street, Suite 212 2012 JUN 26  AM II: 01
   Mailing address: PO Box 865
3  Barstow, CA 92312-0865        CLERK U.S. DISTRICT COURT
   Phone: (760) 256-0603         CENTRAL DIST. OF CALIF.
4  Fax: (760) 256-0660                   RIVERSIDE
   rdconaway@gmail.com           BY:_____
5
6  Attorney for ELISE BROWN, Plaintiff

7           IN THE UNITED STATES DISTRICT COURT

8        FOR THE CENTRAL DISTRICT OF CALIFORNIA

9

10             CV 12 - 05547              PA (SPX)

11  ELISE BROWN,                    )   CASE No.
                                    )
12              Plaintiff,          )
                                    )
13                                  )   POINTS & AUTHORITIES IN
                                    )   SUPPORT IF PLAINTIFF's MOTION
14  v.                              )   FOR PRELIMINARY INJUNCTION
                                    )
15                                  )   Date: July 23, 2012
    DEBRA BOWEN, California         )   Time: 10:00 am
16  Secretary of State             )   Room: TBD
                                    )
17              Defendant.          )   [FILED CONCURRENT WITH
                                    )   PROPOSED ORDER, COMPLAINT,
18  _____ )   NOTICE OF MOTION,
                                        APPLICATION & AUTHORITIES IN
19                                      SUPPORT OF PLAINTIFF's EX
                                        PARTE, DECLARATIONS OF ELISE
20                                      BROWN & ROBERT CONAWAY]

21

22  TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

23

24        MEMORANDUM OF POINTS AND AUTHORITIES

25

26        I. INTRODUCTION & OVERVIEW OF LAW

27     Elise Brown is an African American woman who has lived in San

28  Bernardino County for 51 years, started voting in 1961 (or 51 years ago), served as

1  a school teacher in this county for 32 years and has ALWAYS voted as a

2  Democrat for Democratic candidates in each and every primary and GENERAL

3  ELECTION for 50 plus years, which Proposition 14 has now taken away.

4  Elise Brown, an African American voter in the new 8th Congressional

5  District (25th for the last apportionment under Howard McKeon) seeks declaratory

6  and injunctive relief to enforce the provisions of the First, Fourteenth and

7  Fifteenth Amendments of the Constitution of the United States and 2 of the

8  Voting Rights Act of 1965 ("VRA") as amended in 1982 or more commonly

9  known of as 42 U.S.C. 1973, so to prevent deprivation under color of state law,

10 ordinance, regulation, custom or usage of the rights, privileges and immunities

11 secured by the aforementioned federal constitutional provisions and statute.

12 Ms. Brown under the VRA's 1982 reauthorization believes states

13 *"minorities have a right [to not just vote] but to elect representatives of their*

14 *choice"*, a right, that is now factually impossible in the upcoming November 2012

15 election for the vast majority of African Americans in the 8th Congressional

16 District because the Top 2 Primary law (which focuses not on elections being a

17 competitive process for differing ideas, but a competitive process for the people

18 running) has left the field with two candidates for the November election that are

19 openly hostile to the rights and interests of African American voters in the 8th

20 Congressional District even were it not for the significant traditional pro-

21 Democrat voting history of African Americans.

22 Additionally, this action seeks a ruling that California's Proposition 14

23 entitled the "Top Two Primaries Act [which took effect April 19, 2011] that

24 modified Article II, Section 5 of the California Constitution and Section 6 of

25 Article II of the California Constitution, is unconstitutional as violating ELISE

26 BROWN's rights in the 8th Congressional District in that:

27 (a) the first and fourteenth amendment right to freedom of association,

28 which protects the freedom to join and participate in the general election process

1  in furtherance of common political beliefs, *which by its nature includes the right*
2  *to select and be able to vote for party nominees in the general elections* [as per
3  United States Supreme Court in Democratic Party of the United States of America
4  v Wisconsin ex rel La Follette, 450 US 107 (1981) and reaffirmed in California
5  Democratic Party v Jones 530 US 567, 573-74 (2000)], *the right of qualified*
6  *voters to cast their votes effectively ["which ranks amongst our most precious*
7  *freedoms"]* per Anderson v Celebreeze, 460 U.S. 780, 787-88, quoting Williams v
8  Rhodes, 393 U.S. 23, 30-31] *and protection against "substantial intrusion into*
9  *.... associational freedom which occurs when people are deprived of the right to*
10  *vote for their candidate in federal elections"*. LaFollette Id.
11      The top two candidates in the 8th Congressional District present race-hostile
12  policy positions including but not limited to Craig Imus (the top vote getter, whose
13  campaign slogan was "Live Free or Die" with a man holding a rifle, in the 8th
14  Congressional District) wanting to only uphold the Constitution as it was written
15  (which did not recognize that anyone had the right to vote other than white males
16  and only counted African Americans as three-fifths of a person under Section 2 of
17  Article 1 of the United States Constitution) and both Craig Imus and Paul Cook
18  not recognizing the right of women to control their reproductive health decisions,
19  both major issues for people of color in general elections such as the one coming
20  up in November. Paul Cook voted against an anti-discrimination bill (AB 1450
21  which prohibited discrimination against unemployed workers, a class African
22  Americans lead percentage-wise in California & SB 185 which allowed race,
23  ethnicity and gender to be considered in college admission decisions). See
24  Declaration of Elise Brown, Paras. 6, 7, 8 & Declaration of Robert D. Conaway
25  attaching Project Vote Smart's record of Imus' position as Exhibit "B" and a
26  Voting Record of Paul Cook as Exhibit "C"
27      (b) *The retained right to vote in a federal general election for a democrat,*
28  *a practice that has existed all of Plaintiff's adult life and since the first election*

1  *after California was admitted to the Union in 1850, is a substantive due process*

2  *right protected under the 14th Amendment & Bush v Gore (2000),* which

3  recognized that State citizens had rights in federal elections under the substantive

4  due process clause of the United States Constitution, rights now abridged by the

5  conservative-only republican-only general election in the 8th Congressional

6  District. A federal right that has existed in the State of California for 160 years

7  and over fifty years for plaintiff, should not so cavalierly be extinguished by

8  voter proposition.

9      (c) California Election Code Section 8147 authorizes and directs the

10  California Secretary of State to issue certificates of nomination (note nomination

11  is singular) to candidates for Congress, which is contradicted when nomination is

12  of people from the same political party, an enlargement of power under statute.

13
## II. ARGUMENT
14
### A. THE INJUNCTIVE RELIEF-WHY ITS NEEDED
15
16      The 9th Circuit, the Court articulated a sliding scale and stated a preliminary

17  injunction should be granted "when a plaintiff demonstrates... that serious

18  questions going to the merits were raised and the balance of hardships tips sharply

19  in the plaintiff's favor," as long as the other two Winters v Natural Resources

20  Defense Council [(2008) 555 US 7, 20)] factors have also been met [that the

21  plaintiff is likely to succeed, that the plaintiff is likely to suffer irreparable harm in

22  absence of the preliminary relief and that the balance of the equities tips in

23  plaintiff's favor, and that an injunction is in the public interest].

24      It is clear that Elise Brown wants to vote, but is revulsed by the notion of

25  voting for two people who want an America that is hostile to African American

26  voting rights.

27      Ms. Brown, consistent with her beliefs that the Democrats better represented

28  the issues of importance to her race, voted for a democrat in the 8th Congressional

1  District (Brown Decl at p. 1, lines 22-28), not surprising for someone with ties to

2  Democratic organizations in addition to a lifetime of registration as a Democrat

3  (Brown Decl at p. 2, lines 1-14).

4       Ms. Brown objects to the Top Two Primary/Prop 14 in that it replaced

5  the competition of ideas that takes place with a candidate from one's own party

6  in the general election contest stands up and competes on issues of importance to

7  African Americans, to a competition of campaigning skills and resources. This

8  less than subtle shift in policy manifested itself most graphically in the 8th

9  Congressional District race. African Americans want their issues discussed and

10  debated in Congressional races, and not just wiped out by who was the best

11  campaigner in a primary (Brown decl at p. 2, lines 15-25)

12       Ms. Brown brings a unique historical perspective and professional

13  background as an African-American educator in an area where African

14  Americans are a small minority group of roughly 10% of the voting population

15  overall when she states her belief that competing ideas should be in the

16  Congressional races in this area so that, especially in such contentious times,

17  voters can have the full measure of ideas examined before voting. (Brown decl at

18  p. 3, lines 1-5).

19       Ms. Brown gives rubber-to-the-road examples--Gregg Imus likes a world

20  (the original constitution) where black and women did not vote and Paul Cook

21  does not believe race should be a factor that can be considered in college

22  admissions--issues that concern African Americans (and women) (Brown

23  declaration at p. 3, lines 5-21).

24       In districts where the African American are a smaller percentage and the

25  candidates so reactionary, it is not the likely winners at the ballot box that should

26  be protected. Voting rights are deserving of the highest protection the courts can

27  give and denial of plaintiff's motion, would break a chain of arms locked walking

28  across the bridge for voting rights 40 years ago this past April 11.

1   Ms. Brown observes as a student of history and a witness (with a clear

2   personal stake in the outcome) to the churnings and birth pains of civil rights for

3   women and blacks, notes that she has had the right to vote for democrats for over

4   50 years in the general election. Prop 14 took that away replacing the time tested

5   ideal that general elections should be about candidates championing ideals with a

6   showcase for the top vote getters, which in a district with a substantial one

7   party advantage, virtually guarantees that the African American voice will be

8   muffled if not silenced (Brown decl at p. 3, lines 16-18 through p. 4-5).

9   The July 13, 2012 nomination papers preparation deadline is something the

10  Secretary of State showed no interest in moving, so that is why injunctive relief is

11  needed (Brown dec, p 4. Lines 6-15).

12  **B. Plaintiff Will be Irreparably Harmed Without Immediate Injunctive Relief**

13  Once the time for the certification of nomination has passed, unless the

14  court believes it can vacate certificates of nomination prepared by the Secretary of

15  State, Elise Brown will not be able to vote for a Democrat for Congress for the

16  first time in a half a century (and based on the 1961 date of her first eligibility to

17  vote, a right which existed BEFORE the passage of the federal voting rights act,

18  which underscores a substantive right in California has existed for a long time!)

19  Once denied, that loss cannot be regained.

20  Also once the chain of enfranchisement is broken, a dangerous precedent is

21  created for future state intrusions in the name of candidate (vs idea) competition

22  in the public ear.

23  The equities, plaintiff respectfully submits, weigh in for Ms. Brown–

24  voting rights are precious.  That Common Cause thought it would be nice to have

25  more competitive primaries is not a constitutional goal, nor good national policy

26  for minority voters.

27

28

---

PLAINTIFF's POINTS & AUTHORITIES IN SUPPORT OF PRELIMINARY INJUNCTION

## III. CONCLUSION

For the foregoing reasons, Plaintiff her Motion for Preliminary Injunction be granted so that the top vote getters from each party stand in the general election in November of 2012 and for each election thereafter.

Dated: June 25, 2012

LAW OFFICE of ROBERT D. CONAWAY

ROBERT D. CONAWAY,
Attorney for Elise Brown, Plaintiff