LODGED

Robert D. Conaway Bar No #119657
LAW OFFICE of ROBERT D. CONAWAY
222 East Main Street, Suite 212   2012 JUN 26  AM 11:01
Mailing address: PO Box 865
Barstow, CA 92312-0865
Phone: (760) 256-0603
Fax: (760) 256-0660
rdconaway@gmail.com

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE
BY: _____

Attorney for ELISE BROWN, Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

CV 12 - 05547 PA (SPx)

| | |
|---|---|
| ELISE BROWN,<br><br>    Plaintiff,<br><br>v.<br><br>DEBRA BOWEN, California Secretary of State<br><br>    Defendant. | CASE No.<br><br>POINTS & AUTHORITIES IN SUPPORT IF PLAINTIFF's MOTION FOR PRELIMINARY INJUNCTION<br><br>Date: July 23, 2012<br>Time: 10:00 am<br>Room: TBD<br><br>[FILED CONCURRENT WITH PROPOSED ORDER, COMPLAINT, NOTICE OF MOTION, APPLICATION & AUTHORITIES IN SUPPORT OF PLAINTIFF's EX PARTE, DECLARATIONS OF ELISE BROWN & ROBERT CONAWAY] |

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION & OVERVIEW OF LAW**

Elise Brown is an African American woman who has lived in San Bernardino County for 51 years, started voting in 1961 (or 51 years ago), served as

---
PLAINTIFF's POINTS & AUTHORITIES IN SUPPORT OF PRELIMINARY INJUNCTION
-1-

a school teacher in this county for 32 years and has ALWAYS voted as a Democrat for Democratic candidates in each and every primary and GENERAL ELECTION for 50 plus years, which Proposition 14 has now taken away.

Elise Brown, an African American voter in the new 8th Congressional District (25th for the last apportionment under Howard McKeon) seeks declaratory and injunctive relief to enforce the provisions of the First, Fourteenth and Fifteenth Amendments of the Constitution of the United States and 2 of the Voting Rights Act of 1965 ("VRA") as amended in 1982 or more commonly known of as 42 U.S.C. 1973, so to prevent deprivation under color of state law, ordinance, regulation, custom or usage of the rights, privileges and immunities secured by the aforementioned federal constitutional provisions and statute.

Ms. Brown under the VRA's 1982 reauthorization believes states **"minorities have a right [to not just vote] but to elect representatives of their choice"**, a right, that is now factually impossible in the upcoming November 2012 election for the vast majority of African Americans in the 8th Congressional District because the Top 2 Primary law (which focuses not on elections being a competitive process for differing ideas, but a competitive process for the people running) has left the field with two candidates for the November election that are openly hostile to the rights and interests of African American voters in the 8th Congressional District even were it not for the significant traditional pro-Democrat voting history of African Americans.

Additionally, this action seeks a ruling that California's Proposition 14 entitled the "Top Two Primaries Act [which took effect April 19, 2011] that modified Article II, Section 5 of the California Constitution and Section 6 of Article II of the California Constitution, is unconstitutional as violating ELISE BROWN's rights in the 8th Congressional District in that:

(a) the first and fourteenth amendment right to freedom of association, which protects the freedom to join and participate in the general election process

in furtherance of common political beliefs, *which by its nature includes the right to select and be able to vote for party nominees in the general elections* [as per United States Supreme Court in Democratic Party of the United States of America v Wisconsin ex rel La Follette, 450 US 107 (1981) and reaffirmed in California Democratic Party v Jones 530 US 567, 573-74 (2000)], *the right of qualified voters to cast their votes effectively ["which ranks amongst our most precious freedoms"]* per Anderson v Celebreeze, 460 U.S. 780, 787-88, quoting Williams v Rhodes, 393 U.S. 23, 30-31] *and protection against "substantial intrusion into .... associational freedom which occurs when people are deprived of the right to vote for their candidate in federal elections"*. LaFollette Id.

The top two candidates in the 8th Congressional District present race-hostile policy positions including but not limited to Craig Imus (the top vote getter, whose campaign slogan was "Live Free or Die" with a man holding a rifle, in the 8th Congressional District) wanting to only uphold the Constitution as it was written (which did not recognize that anyone had the right to vote other than white males and only counted African Americans as three-fifths of a person under Section 2 of Article 1 of the United States Constitution) and both Craig Imus and Paul Cook not recognizing the right of women to control their reproductive health decisions, both major issues for people of color in general elections such as the one coming up in November. Paul Cook voted against an anti-discrimination bill (AB 1450 which prohibited discrimination against unemployed workers, a class African Americans lead percentage-wise in California & SB 185 which allowed race, ethnicity and gender to be considered in college admission decisions). See Declaration of Elise Brown, Paras. 6, 7, 8 & Declaration of Robert D. Conaway attaching Project Vote Smart's record of Imus' position as Exhibit "B" and a Voting Record of Paul Cook as Exhibit "C"

(b) *The retained right to vote in a federal general election for a democrat, a practice that has existed all of Plaintiff's adult life and since the first election*

*after California was admitted to the Union in 1850, is a substantive due process right protected under the 14th Amendment & Bush v Gore (2000),* which recognized that State citizens had rights in federal elections under the substantive due process clause of the United States Constitution, rights now abridged by the conservative-only republican-only general election in the 8th Congressional District. A federal right that has existed in the State of California for 160 years and over fifty years for plaintiff, should not so cavalierly be extinguished by voter proposition.

(c) California Election Code Section 8147 authorizes and directs the California Secretary of State to issue certificates of nomination (note nomination is singular) to candidates for Congress, which is contradicted when nomination is of people from the same political party, an enlargement of power under statute.

## II. ARGUMENT
### A. THE INJUNCTIVE RELIEF-WHY ITS NEEDED

The 9th Circuit, the Court articulated a sliding scale and stated a preliminary injunction should be granted "when a plaintiff demonstrates... that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor," as long as the other two Winters v Natural Resources Defense Council [(2008) 555 US 7, 20)] factors have also been met [that the plaintiff is likely to succeed, that the plaintiff is likely to suffer irreparable harm in absence of the preliminary relief and that the balance of the equities tips in plaintiff's favor, and that an injunction is in the public interest].

It is clear that Elise Brown wants to vote, but is revulsed by the notion of voting for two people who want an America that is hostile to African American voting rights.

Ms. Brown, consistent with her beliefs that the Democrats better represented the issues of importance to her race, voted for a democrat in the 8th Congressional

District (Brown Decl at p. 1, lines 22-28), not surprising for someone with ties to Democratic organizations in addition to a lifetime of registration as a Democrat (Brown Decl at p. 2, lines 1-14).

Ms. Brown objects to the Top Two Primary/Prop 14 in that it replaced the competition of ideas that takes place with a candidate from one's own party in the general election contest stands up and competes on issues of importance to African Americans, to a competition of campaigning skills and resources. This less than subtle shift in policy manifested itself most graphically in the 8th Congressional District race. African Americans want their issues discussed and debated in Congressional races, and not just wiped out by who was the best campaigner in a primary (Brown decl at p. 2, lines 15-25)

Ms. Brown brings a unique historical perspective and professional background as an African-American educator in an area where African Americans are a small minority group of roughly 10% of the voting population overall when she states her belief that competing ideas should be in the Congressional races in this area so that, especially in such contentious times, voters can have the full measure of ideas examined before voting. (Brown decl at p. 3, lines 1-5).

Ms. Brown gives rubber-to-the-road examples–Gregg Imus likes a world (the original constitution) where black and women did not vote and Paul Cook does not believe race should be a factor that can be considered in college admissions–issues that concern African Americans (and women) (Brown declaration at p. 3, lines 5-21).

In districts where the African American are a smaller percentage and the candidates so reactionary, it is not the likely winners at the ballot box that should be protected. Voting rights are deserving of the highest protection the courts can give and denial of plaintiff's motion, would break a chain of arms locked walking across the bridge for voting rights 40 years ago this past April 11.

Ms. Brown observes as a student of history and a witness (with a clear personal stake in the outcome) to the churnings and birth pains of civil rights for women and blacks, notes that she has had the right to vote for democrats for over 50 years in the general election. Prop 14 took that away replacing the time tested ideal that general elections should be about candidates championing ideals with a showcase for the top vote getters, which in a district with a substantial one party advantage, virtually guarantees that the African American voice will be muffled if not silenced (Brown decl at p. 3, lines 16-18 through p. 4-5).

The July 13, 2012 nomination papers preparation deadline is something the Secretary of State showed no interest in moving, so that is why injunctive relief is needed (Brown dec, p 4. Lines 6-15).

**B. Plaintiff Will be Irreparably Harmed Without Immediate Injunctive Relief**

Once the time for the certification of nomination has passed, unless the court believes it can vacate certificates of nomination prepared by the Secretary of State, Elise Brown will not be able to vote for a Democrat for Congress for the first time in a half a century (and based on the 1961 date of her first eligibility to vote, a right which existed BEFORE the passage of the federal voting rights act, which underscores a substantive right in California has existed for a long time!)

Once denied, that loss cannot be regained.

Also once the chain of enfranchisement is broken, a dangerous precedent is created for future state intrusions in the name of candidate (vs idea) competition in the public ear.

The equities, plaintiff respectfully submits, weigh in for Ms. Brown– voting rights are precious. That Common Cause thought it would be nice to have more competitive primaries is not a constitutional goal, nor good national policy for minority voters.

### III. CONCLUSION

For the foregoing reasons, Plaintiff her Motion for Preliminary Injunction be granted so that the top vote getters from each party stand in the general election in November of 2012 and for each election thereafter.

Dated: June 25, 2012               LAW OFFICE of ROBERT D. CONAWAY

_____
ROBERT D. CONAWAY,
Attorney for Elise Brown, Plaintiff