Robert D. Conaway Bar No #119657
LAW OFFICE of ROBERT D. CONAWAY
222 East Main Street, Suite 212
Mailing address: PO Box 865
Barstow, CA 92312-0865
Phone: (760) 256-0603 Fax: (760) 256-0660

Attorney for ELISE BROWN, Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELISE BROWN,<br><br>        Plaintiff,<br><br>v.<br><br>DEBRA BOWEN, California Secretary of State<br><br>        Defendant. | CASE No. CV12-5547 P A (SPx)<br><br>REPLY BRIEF TO SECRETARY OF STATE OF STATE's & ATTORNEY GENERAL's OPPOSITION TO ELISE BROWN's MOTION FOR PRELIMINARY INJUNCTION<br><br>Date: TBD<br>Time: TBD<br>Room: 163/15 [Judge Percy Anderson]<br><br>[FILED CONCURRENT WITH DECLARATIONS OF R. CONAWAY] |

**I. IT WILL NOT ONLY BE MRS. BROWN THAT WILL LOSE AN EFFECTIVE VOTING RIGHT IF THE TOP TWO PRIMARY IS UPHELD, BUT THE ENTIRE STATE OF CALIFORNIA WILL LOSE DELEGATION MEMBERSHIP & ELECTORAL COLLEGE STRENGTH**

"When the *right to vote at any federal election… is* denied to any of the male [or female, inserted by virtue of the 19th Amendment] inhabitants of [a] State…or [is]*in any way abridged*, except for participation in rebellion, or other crime, *the basis of representation therein shall be reduced.*" U.S. Const. XIV, § 2.

In Reynolds v. Sims, 377 U.S. 533, 561-562, the High Court said,

"Individual rights are not subject to a public vote; a majority has no right to vote away the rights of a minority; the political function of rights is precisely to protect minorities from oppression by majorities (and the smallest minority on earth is the individual)." Long ago, in Yick Wo v. Hopkins, 118 U.S. 356, 370, the Court referred to "the *political franchise* of voting" as a "*fundamental political right,*

-1-

*because [it's] preservative of all rights.*" Abridgement using the language of Noah Webster's day [1828 American Dictionary of the English Language] means (in a non literature editing context) to "2. Lessen; to diminish... to abridge power of rights."

James Madison stated that he "believed there are more instances of the abridgement of the freedom of the people by gradual and silent encroachments of those in power than by violent and sudden usurpations"–taking a look at Prop 14 may be our first modern era disenfranchisement device.

Proposition 14's election results are precisely such an abridgement–it does what state action sanctioned prior restraints like poll taxes, English-only ballots and literacy tests historically did–it effectively prevents Mrs. Brown from exercising her rights as a federal citizen [Art. I. § 2, of the Constitution &United States v. Classic, 313 U.S. 299, 314-315]. Fn 1/

The right to vote in national elections is a privilege and immunity of national citizenship and state based restrictions which interfere with same are an impermissible prior restraint. Oregon v Mitchell, 400 U.S. 112 (1970),147-150. The right to vote in federal elections is conferred by voting in a national general election for a Congressional candidate and will trigger the Section 2 sanction.

It will not be only Mrs. Brown that will lose an effective voting right if the Top Two Primary is upheld, but the entire State of California in Congress and in the Electoral College which elects our Presidents and Vice Presidents.

**II. SO WHAT IS THE ABRIDGEMENT UNDER THE TOP TWO PRIMARY?**

**A. BEING UNABLE TO CAST AN EFFECTIVE BALLOT IN A NATIONAL (FEDERAL) ELECTION**

Allowing the voter to cast an effective ballot is implicit in the granting of the franchise [Senate Report No. 94-295 (1975), at p. 32].

---

Fn 1 Washington State Grange case cited by Defendant at page 1, line 14-19 of their Opposition which upheld the constitutionality of the Top 2 Primary in Washington has been taken up on writ of certiorari by the Democratic & Libertarian parties, review was granted [Case No. 11-1263]. has been briefed & will likely be argued in October, so issuing an emergency order staying the issuance of certificates of nomination may make sense in those districts where a party had a top vote getter but not in the Top Two so to conserve judicial & party resources [Case No. 11-1263]

In the University of Michigan Journal of Law Reform [Vol 44:4, Summer of 2011 article entitled *What Do We Want in A Presidential Primary? An Election Law Perspective* found at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1903797] election expert Dr. Chad Flanders observed that "[m]uch election law scholarship has not been especially concerned with the understanding and articulation of the formal aspect of the right to vote,....[b]ut an increasing amount of attention in election law has been paid to the right to an effective vote: the ability to not just cast a ballot but also to be able to exert the same influence on an election as other voters"

In Dixon v Maryland State Administrative Board of Election Laws (1989, 4th Cir.), the court in weighing a 14th Amendment challenge generally stated *"[t]he asserted injury to the right to cast an effective vote, like the asserted infringement on rights of association is, in character, of extraordinary importance. " 'No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined.' "* Williams, 393 U.S. at 31, 89 S.Ct. at 10 (footnote omitted) (quoting Wesberry v. Sanders, 376 U.S. 1, 17, 84 S.Ct. 526, 535(1964)); see Anderson, 460 U.S. at 786-787, 103 S.Ct. at 1568-1569. The Dixon court in relevant part went on to state:

> "It is apodictic that a vote does not lose its constitutional significance merely because it is cast for a candidate who has little or no chance of winning. Nor do we think it loses this character if cast for a non-existent or fictional person, for surely the right to vote for the candidate of one's choice includes the right to say that no candidate is acceptable. The Supreme Court has repeatedly recognized that minor parties and their supporters seek "influence, if not always electoral success." Illinois State Bd. of Elections v. Socialist Workers Party, 440 U.S. 173, 185-186, 99 S.Ct. 983, 990-991, 59 L.Ed.2d 230 (1979); see Socialist Labor Party v. Rhodes, 290 F.Supp. 983, 986-987 (S.D.Ohio 1968). Our form of government is built upon the premise that every citizen shall have the right to engage in political expression and association.... History has amply proved the virtue of political activity by minority, dissident groups, who innumerable times have been in the vanguard of democratic thought and whose programs were ultimately accepted. Mere unorthodoxy or dissent from the prevailing mores is not to be condemned. The absence of such voices would be a symptom of grave illness in our society. Sweezy v. New Hampshire, 354 U.S. 234, 250-251, 77 S.Ct. 1203, 1211-1212, 1 L.Ed.2d 1311 (1957). This attentiveness to the voices of dissident citizens flows from, and indeed is mandated by, our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." New York Times Co. v. Sullivan, 376 U.S. 254, 270, 84 S.Ct. 710, 720, 11 L.Ed.2d 686 (1964).

In the 8th Congressional District, Democrats are in the minority and African American voters are a small fraction of that approximate 39% registration with a nearly 20% conservative leaning decline-to-state group–so clearly an African American vote is a minority party voter in at least 2 ways.

### B. DENYING MOST AFRICAN AMERICAN VOTERS THE RIGHT TO CAST A VOTE CONSISTENT WITH THEIR PARTISAN VIEWS CAUSES VOTE DILUTION IN NON-MINORITY-MAJORITY DISTRICTS

Jon Rogowski & Amir Fairdosi from the University of Chicago in their April 11, 2012 paper entitled *"Voting by Race? The Neglected Role of Partisanship"* [Copy attached as Exhibit "A" to the Declaration of Robert Conaway filed in Support of the Reply Brief due availability concerns on the internet ] they state "partisanship among blacks has been relatively impervious to the significant social and political changes that have occurred over the past 4 decades – African Americans have identified with the Democratic Party and supported presidential and congressional candidates" [p.6]. Rogowski pointed to the 2012 Cooperative Congressional Election Study (CCES) which was based on pre- and post-election modules administered to 55,400 respondents and after the 2012 Congressional midterm and included respondents from all 435 Congressional Districts and concluded "black citizens are more likely to participate in a campaign when a democratic candidate seeks office"(p.12).

Mrs. Brown has no one to champion her issues. That she will not be able to effectively vote for the first time in 51 years in a general election has fallen on the deaf ears of California's Attorney General. Warning someone of an illegal outcome is hardly the stuff of which good public policy is built–public policies not only found in the federal tradition, but in the basic state law maxims of law –e.g. for every wrong there is a remedy might be cause for a different position to be taken [California Civil Code § 3523]

### III. MRS. BROWN HAS STANDING TO CHALLENGE STATE ACTION WHICH INTERFERES WITH HER RIGHT TO CAST AN EFFECTIVE VOTE

The individual's right to vote has always been bound up with the right of candidates to run for an office and the Supreme Court has said that "[t]he rights of voters and the rights of candidates do not lend themselves to neat separation; laws that affect

-4-

1  candidates always have at least some theoretical, correlative effect on voters". Bullock v
2  Carter 405 U.S. 134, 143 (1972), which led the 11th Circuit t in Duke v Massey to
3  conclude that voters have standing to sue when their favorite candidate was excluded.
4  Duke v Massey 87 F. 3d 1226,1231, 1233 (11th Cir. 1996)

### IV. MRS. BROWN's CLAIM WAS NOT RIPE UNTIL THE PRIMARY ELECTION RESULTS CREATED BY PROPOSITION 14 WERE IN

The AG's office presses for why the action could not have been brought before. Apart from the ripeness allegation in the complaint at Para 2, p. 2 lines 7-10, its clear from Bullock, the right to run in the general election was not something known before the semi-official results were in (as of the date this action was filed) which showed neither of the two democratic candidates would be advancing to general election [See Exhibit "B" to Conaway declaration]

The doctrine of ripeness is a means by which federal courts may dispose of matters that are premature for review because the plaintiff's purported injury is too speculative and may never occur [Chandler v State Farm Mutual Auto. Ins. Co 598 F.3d 1115, 1121 (9th Cir. 2012)]. Instead the constitutional component of a ripeness inquiry "mandates the issues presented are "definite and concrete [Oklevueda Native Am. Church of Hawa., Inc v Holder –F.3d–,2012 WL 1150259, at*3 (9th Cir. 2012) quoting Portman v Cnty. Of Santa Clara, 995 F. 2d 898, 902 (9th Cir. 1993)]

### V. THAT Mrs. BROWN WAS WARNED IN A BALLOT PHAMPHLET THAT PROP 14 MIGHT CREATE THE SITUATION WHERE SHE MIGHT HAVE TO CHOSE BETWEEN TWO REPUBLICAN CANDIDATES IS HARDLY A CONSTITUTIONAL DEFENSE

In Reynolds v. Sims, 377 U.S. 533, 561-562, the Court said, "Individual rights are not subject to a public vote; a majority has no right to vote away the rights of a minority; the political function of rights is precisely to protect minorities from oppression by majorities (and the smallest minority on earth is the individual)."

Were the "you were warned" and "the majority has spoken" the law of this land for our voting rights, we'd still have white primaries. After the 15th Amendment, it took women 50 years to get the right to vote and native Americans even longer.

-5-

## VI. SECTION 2 of the VOTING RIGHT ACT PROHIBITS THE TOP TWO PRIMARY AS AN IMPERMISSIBLE STATE ACTION

The Voting Rights Act was designed to apply "throughout the electoral process." See H.R.Rep. No. 102-655 (1992). The terms "relating to the electoral process." 42 U.S.C. § 1973aa-1a(e) have been routinely and in a variety of contexts broadly. Under Section 2 of the current version of the VRA, the Supreme Court has made clear that "[t]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." Robinson v. Shell Oil, 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). There is no question that the language of § 1973 is extremely broad — any "voting qualification or prerequisite to voting *or standard, practice, or procedure" that adversely affects the right to vote"*.

The Top 2 Primary and redistricting scheme appears, now that we have results in, to be one of the newest disenfranchisement methods election experts have warned us of. In Kathy Feng's [ Project Director for the Voting Rights and Anti-Discrimination Unit of the Asian Pacific American Legal Center of Southern California], Keith Aoki (Prof of Law at Oregon) and Bryan Ikegami's article entitled *Voting Matters: AIPAs, Latinas/os and Post-2000 Redistricting in California*, 81 Oregon L.Rev. 849, 886 (2002) [http://biblioteca.uprrp.edu/latcrited/Publications/PublishedSymposium/LCVIIOregon&La Raza(2002)/91.CVIIFengetal.pd] the new methods of vote dilution have been identified as including multi-member districts and strategies which either over-concentrated a minority into a single district or dispersed minority groups so widely amongst the majority group in several districts to limit their political influence." Id at 868-66 - the later of which the 8th Congressional District fits.

In § 3 of the 1982 amendments, § 2 of the Act was amended by the insertion of the quoted phrase and the addition of a section setting out a nonexclusive list of factors making up a totality of circumstances test by which a violation of § 2 would be determined. 96 Stat. 134, amending 42 U.S. § 1973. Without any discussion of

-6-

the Fifteenth Amendment, the Court in Thornburg v. Gingles, 478 U.S. 30(1986), interpreted and applied the "totality of the circumstances" test in the context of multi-member districting.

Section 2 of the Voting Rights Act prohibits minority vote dilution. Section 2 provides that a voting practice is unlawful if it has a discriminatory effect. A voting practice has a discriminatory effect if, based on the totality of circumstances, minorities have "less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice." Section 2 also prohibits the enactment of redistricting plans (and other voting practices) that were adopted with a discriminatory purpose. http://www.redrawingthelines.org/votingrightsact [The NAACP Legal Defense and Educational Fund, Inc.].

In a 2012 Santa Clara Law Review article by Chelsea J. Hopkins entitled The Minority Coalition's Burden of Proof Under Section 2 of the Voting Rights Act [http://digitalcommons.law.scu.edu/lawreview/vol52/iss2/6/] the Senate Report No. 97-417 new "factors" are listed and remarkably, the vast majority of which Mrs. Brown has met: election practices that enhance the opportunity for discrimination against the minority group (Prop 14 as argued herein if allowed to stand will deny Mrs. Brown and all similarly situated African Americans the right to an effective vote), the extent to which minority groups bore the effects of discrimination in such areas as unemployment (which African Americans are at the top of per Mrs. Brown's declaration at p. 3, line 11-15), which hindered their ability to participate in politics (African Americans are at a registration advantage, Mrs. Brown's declaration at p. 3, lines 27-28 through line 3 on p.4), racial campaign appeals (returning the Constitution to its original form may be code for taking the vote & other civil rights away from people like Mrs Brown -See Brown decl at p. 2, lines 15-28 through line 10 on p 3), the electoral success of minorities (no African American has ever run for Congress in the area and the African American that ran in the area, lost by sizable margins–Lionel Dew in 1998 for the 34th State Assembly).

## VII. THE JOINDER ARGUMENT vs THE COURT's ABILITY TO FASHION A REMEDY WITH WHAT IS BEFORE IT SHOULD BE CONSIDERED

The contention that the various candidates needed to be joined is something, if raised by motion, the court in its discretion could deny. Armo Engineering Co. V Bud Radio, Inc (ND Ohio 1965) 38 FRD 51,53 and there is good reason to consider that– should the challenge to the Top Two Primary succeed before the Supreme Court, a stay on the issuance of certificates of nomination could save party and court resources and avoid needless public confusion over who the candidates are that should be considered.

Mrs. Brown in the Certificate of Interested Parties AND in the complaint (fn 1 on page 3) listed the various races that might be affected by the court's ruling.

Under FRCP 19(a) it is clear the court could afford complete relief amongst the existing parties. Mrs. Brown can move in her own behalf and for all African American voters without a democrat to vote for in Congressional races across the state.

If The Top Two Primary is found unlawful by this court, injunction, preliminarey or permanent, with the data already in the possession of the Secretary of State (e.g. who the top vote getters are for each party or preference) can be fashioned and Certificates of Nomination issued consistent therewith.

Under FRCP 19(b), whether the other candidates are present or not does not add to or detract from the thoroughness of the discussion–those candidates have not only the Attorney General pitching in for the Secretary of State, but several well funded intervenor-proponents of Proposition 14 and to date, none of them have contacted plaintiff's counsel office asking for assistance by way of stipulation to intervene [ the Maldonado group is the only potential intervenor contact–which I agreed to stipulate to but without the statement that the AG/SOS was not qualified to oppose plaintiff's motion and that the request to intervene was timely].

Whether joining a dozen District's (or all 53) would be feasible or necessary under FRCP 19(b) with the scope of and depth & quality of representation in support of the Top

Two Primary, is a call for the Court to make–a call that the Court can make at any time after finding that the parties' inclusion is indispensable. [Macklin v Butler (7th Cir. 1977) 553 F2d 525, 531].

### VIII. Mrs. BROWN MEETS HER *WINTERS v NATURAL RESOURCE* BURDEN

*The irreparable harm?* Mrs. Brown and other African Americans will not be able to effectively exercise her franchise in a federal election for a Congressional representative for the first time in 50 years once the certificates of nomination are issued. Mrs. Brown's right to effectively vote is irretrievably lost for her in 2012, a break in fifty years of her exercising her lawful right (See Mrs. Brown's declaration).

*The balance of the equities tipping in her favor?* A preliminary injunction will freeze the status quo until such time either an expedited bench trial on the full merits can be held or there is a pre-election decision in Case No. 11-1263 which is dispositive, whichever comes first; the only hardship would be in delaying the early campaigning between the current second place finisher in each race, the current top vote getter and the potentially pushed up top vote getter should the pre-Top Two handling of primaries be ordered reinstated. The benefit side would be public might be spared months of confusing and misleading campaigning (the two ultraconservative top two vote getters will try and run an unbranding/disinformation campaign for democratic votes) and the candidates involved, would likely save money. The prejudice to campaign strategy is minimal as most get out the vote for likely supporters are done in the last 30 days and both of the Top Two vote getters have already spent a significant amount of money in branding themselves (the "Colonel" and the "Live Free or Die" candidates).

Should the court wish to minimize the prejudice, it could consider issuing a preliminary injunction on the Secretary of State's intention to only issue certificates of nomination for the top two vote getters, to instead consider issuing Certificates of Nomination for the top vote getter in each political party so that their supporters (and their political parties') votes could be counted in the event the Supreme Court's decision in

-9-

Case 11-1263 has a dispositive impact favoring a return to the pre-Top Two Vote Primary system. Since Congressional representatives are not sworn in until mid-January of the following year, the court's decision will have come down and the decision will take its logical and natural course and allow final relief to be accorded by this court.

*The public interest?* "[t]he asserted injury to the right to cast an effective vote, like the asserted infringement on rights of association is, in character, of extraordinary importance." 'No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined.' " Williams, 393 U.S. at 31, 89 S.Ct. at 10 (footnote omitted) Were that not enough, how about the Top Two Primary causing a potential 14th Amendment sanction -e.g. the loss of Congressional seats and Electoral College votes?

## IX. CONCLUSION

The Secretary of State of California should be enjoined on a preliminary injunctive relief basis from issuing Certificates of Nomination in the races where top voter getters for party candidates are not being allowed to advance under the California Top Two Primary System until such time the court can schedule an expedited trial. Ms. Brown will likely prevail on one or both claims for relief as the right in issue is so fundamental, the timing is so critical, the state interest, to produce competitive races and increase public interest a failure (the 35% statewide turnout was the lowest since 1948) and finally, if SCOTUS wanted to affirm the constitutionality of Washington State's Top 2 Primary law, it would not have accepted the Top Two law for review.

Date: July 9, 2012            LAW OFFICE of ROBERT D. CONAWAY

                          By: _____
                              ROBERT D. CONAWAY, Counsel for
                              ELISE BROWN, PLAINTIFF

-10-

# CERTIFICATE OF SERVICE

Case name: Brown v Bowen     Case No. CV12-5557 P A (Spx)

I hereby certify that on July 9, 2012, I electronically filed the following document with the Clerk of the Court by using the CM/ECF system:

ELISE BROWN's REPLY BRIEF TO SECRETARY OF STATE OF STATE & ATTORNEY GENERAL's OPPOSITION TO ELISE MOTION FOR PRELIMINARY INJUNCTION

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on July 9, 2012 at Barstow, California.

ROBERT D. CONAWAY                    _____
Declarant                             Signature