

1  NIELSEN MERKSAMER
2      PARRINELLO GROSS & LEONI LLP
   MARGUERITE MARY LEONI (SBN 101696)
3  CHRISTOPHER E. SKINNELL (SBN 227093)
4  2350 Kerner Boulevard, Suite 250
   San Rafael, California 94901
5  TELEPHONE: (415) 389-6800
6  FACSIMILE:   (415) 388-6874
7  Email: mleoni@nmgovlaw.com
   Email: cskinnell@nmgovlaw.com
8

9  *Attorneys for Intervener-Defendants*
   INDEPENDENT VOTER PROJECT,
10 CALIFORNIANS TO DEFEND THE OPEN
11 PRIMARY, ABEL MALDONADO AND
   DAVID TAKASHIMA
12

13            IN THE UNITED STATES DISTRICT COURT

14          FOR THE CENTRAL DISTRICT OF CALIFORNIA
15

16 ELISE BROWN,                          Case No.: 12-cv-05547-PA-SPx

17              *Plaintiff,*              **INTERVENERS'**
18      vs.                              **OPPOSITION TO**
                                         **PLAINTIFFS' MOTION**
19 DEBRA BOWEN, in her official capacity as  **FOR PRELIMINARY**
20 California Secretary of State,         **INJUNCTION**

21              *Defendant.*             JUDGE: Hon. Percy Anderson
                                         COURTROOM: 163
22 INDEPENDENT VOTER PROJECT,            HEARING DATE: TBA
23 CALIFORNIANS TO DEFEND THE OPEN       HEARING TIME: TBA
   PRIMARY, ABEL MALDONADO AND
24 DAVID TAKASHIMA,
25              *Intervener-Defendants.*
26
27
28

INTERVENERS' OPPOSITION TO PLAINTIFF'S                CASE NO. 2:12-cv-05547-PA-SPx
MOTION FOR PRELIMINARY INJUNCTION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................ 1

II.     FACTUAL BACKGROUND & LITIGATION HISTORY ........................ 3

        A.    Proposition 14 (Top Two Candidate Open Primary Act) ............. 3

        B.    Proposition 14 Was Consciously Modeled On Washington
              State's Top-Two System, Which Has Been Upheld
              Against Both Facial & As-Applied Challenges .............................. 4

              1.    *Wash. State Grange v. Wash. Republican Party*,
                    552 U.S. 442 (2008) ("*Washington I*") ............................... 4

              2.    As-Applied Claims Were Rejected In *Wash. State
                    Republican Party v. Wash. State Grange*, 2012
                    U.S. App. LEXIS 1050 (9th Cir. Jan. 19, 2012)
                    ("*Washington II*") ............................................................. 5

        C.    Prior Unsuccessful Litigation Against Proposition 14 ................. 7

              1.    *Field v. Bowen* (S.F. Superior Court/Cal. Ct. App.) ........... 7

              2.    *Chamness v. Bowen* (C.D. Cal.) ...................................... 7

              3.    *Rubin v. Bowen* (Alameda Superior Court) ...................... 8

III.    KEY ALLEGATIONS IN THE COMPLAINT .................................... 9

IV.     THE PRELIMINARY INJUNCTION SHOULD BE DENIED
        BECAUSE PAUL COOK AND CRAIG IMUS ARE NECESSARY
        PARTIES WHO HAVE NOT BEEN JOINED, AND WHOSE
        INTERESTS SHOULD NOT BE ADJUDICATED IN THEIR
        ABSENCE ................................................................................... 10

V.      STANDARD GOVERNING PRELIMINARY INJUNCTIONS .............. 11

VI.     PLAINTIFF HAS FAILED TO SHOW ANY LIKELIHOOD OF
        SUCCESS ON THE MERITS OF HER CLAIMS .............................. 12

        A.    Plaintiff Lacks Standing To Bring Her Claim That
              Proposition 14 Violates The Freedom of Association, And
              Is Further Foreclosed By Two Cases Plaintiff Failed To
              *Even Cite*: *Washington I* and *Washington II* ............................. 12

---

INTERVENERS' OPPOSITION TO PLAINTIFF'S                          CASE NO. 2:12-cv-05547-PA-SPx
MOTION FOR PRELIMINARY INJUNCTION

B.     Plaintiff Fails To State A Claim Under Either The Fourteenth Or Fifteenth Amendments..................................... 14

C.     Plaintiff Fails To State A Claim For Violation Of Substantive Due Process............................................................. 15

D.     Plaintiff Has Not Stated A Claim Under Section 2 Of The Voting Rights Act ........................................................ 17

E.     Plaintiff Asks This Court To Perform An Unconstitutional Act—To Exclude A Winning Candidate From The Ballot Because Of His Beliefs ............................................................. 22

VII.   THE BALANCE OF HARDSHIPS TIPS SHARPLY AGAINST AN INJUNCTION................................................................ 23

VIII. CONCLUSION............................................................................. 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF AUTHORITIES**

Page(s)

CASES

*Ark. Educ. Television Comm'n v. Forbes,*
    523 U.S. 666 (1998) ............................................................................ 22

*Baird v. Consolidated City of Indianapolis,*
    976 F.2d 357 (7th Cir. 1992), *cert. denied,* 508 U.S. 907 (1993) .........2, 17

*Baird v. State Bar of Ariz.,*
    401 U.S. 1 (1971) ............................................................................... 23

*Bartlett v. Strickland,*
    556 U.S. 1 (2009) ......................................................................... 20, 21

*Beck v. Ysursa,*
    2007 U.S. Dist. LEXIS 86928 (D. Idaho Nov. 27, 2007) ....................... 13

*Benavente v. Taitano,*
    2006 Guam 15, 2006 Guam LEXIS 16 (Guam 2006) .............................11

*Bush v. Gore,*
    531 U.S. 98 (2000) .................................................................... passim

*Cal. Democratic Party v. Jones,*
    530 U.S. 567 (2000) ........................................................................ 4, 5

*Cardona v. Oakland Unified School District,*
    785 F. Supp. 837 (N.D. Cal. 1992) ....................................................... 24

*Chamness v. Bowen,*
    2011 U.S. Dist. LEXIS 94876 (C.D. Cal. Aug. 23, 2011) .................. 7, 8, 23

*Chamness v. Bowen,*
    Case No. 11-55534 (9th Cir. filed Mar. 30, 2011)...................................8

*Chamness v. Bowen,*
    Case No. 11-56449 (9th Cir. filed Aug. 24, 2011)...................................8

*Communist Party of Indiana v. Whitcomb,*
    414 U.S. 441 (1974)........................................................................... 23

*Democratic Party of the United States of American v. Wisconsin ex rel. La Follette,*
   450 U.S. 107 (1981) ...................................................................... 13

*Democratic Party v. Reed,*
   343 F.3d 1198 (9th Cir. 2003)..................................................... 5

*Dymo Industries, Inc. v. TapePrinter, Inc.,*
   326 F.2d 141 (9th Cir. 1964) (per curiam) ................................ 11

*Field v. Bowen,*
   199 Cal. App. 4th 346 (1st Dist. 2011) ...................................... 7

*Field v. Superior Court,*
   Case No. A129829 (Cal. Ct. App. 1st Dist.) (writ denied Oct. 14, 2010).... 7

*Field v. Superior Court,*
   Case No. S188436 (Cal.) (writ denied Dec. 15, 2010)................................ 7

*Gaw v. Higham,*
   267 F.2d 355 (6th Cir. 1959) ..................................................... 11

*Griffin v. Burns,*
   570 F.2d 1065 (1st Cir. 1978) ................................................... 24

*Keyishian v. Board of Regents,*
   385 U.S. 589 (1967)................................................................. 23

*League of United Latin Am. Citizens, Council No. 4434 v. Clements,*
   999 F.2d 831 (5th Cir. 1993) (en banc).................................... 18

*Legislature v. Eu,*
   54 Cal. 3d 492 (1991), *cert. denied,* 503 U.S. 919 (1992) ................. 12, 24

*Lucas v. Townsend,*
   967 F.2d 549 (11th Cir. 1992) (per curiam) ............................. 14

*Mayview Corp. v. Rodstein,*
   480 F.2d 714 (9th Cir. 1973) .................................................... 11

*Mobile v. Bolden,*
   446 U.S. 55 (1980) .............................................................18, 19

*NAACP v. Jones,*
    131 F.3d 1317 (9th Cir. 1997) ................................................................. 15

*Osburn v. Cox,*
    369 F.3d 1283 (11th Cir.), *cert. denied,* 543 U.S. 943 (2004) ......13, 14, 20

*Purcell v. Gonzalez,*
    549 U.S. 1 (2006) (*per curiam*) ............................................................ 24

*Reno v. Bossier Parish Sch. Bd.,*
    520 U.S. 471 (1997) ............................................................................... 14

*Reno v. Bossier Parish Sch. Bd.,*
    528 U.S. 320 (2000) ............................................................................... 14

*Reynolds v. Sims,*
    377 U.S. 533 (1964) ..........................................................................23, 24

*Righeimer v. Jones,*
    2000 U.S. Dist. LEXIS 13313 (E.D. Cal. Sept. 14, 2000) ...................... 13

*Rubin v. Bowen,*
    Alameda Superior Court, Case No. RG11605301 ................................8, 9

*S.W. Voter Regis. Educ. Proj. v. Shelley,*
    344 F.3d 914 (9th Cir. 2003) (*en banc*) ("*Southwest Voter*")................24

*Socialist Workers Party v. Hill,*
    483 F.2d 554 (5th Cir. 1973) ................................................................. 23

*Thornburg v. Gingles,*
    478 U.S. 30 (1986) (O'Connor, J., concurring) ..................................19, 21

*Vecinos De Barrio Uno v. City of Holyoke,*
    72 F.3d 973 (1st Cir. 1995) ................................................................... 18

*Wash. State Grange v. Wash. Republican Party,*
    552 U.S. 442 (2008)........................................................................ passim

*Wash. State Republican Party v. Wash. State Grange,*
    2011 U.S. Dist. LEXIS 2448 (W.D. Wash. Jan. 11, 2011)........................ 6

*Wash. State Republican Party v. Wash. State Grange,*
    2012 U.S. App. LEXIS 1050 (9th Cir. Jan. 19, 2012)...................... passim

*Whitcomb v. Chavis,*
    403 U.S. 124 (1971) ............................................................................... passim

*White v. Regester,*
    412 U.S. 755 (1973)............................................................................... 18

*Williams v. State Bd. of Elec.,*
    696 F. Supp. 1563 (N.D. Ill. 1988) ......................................................... 10

*Winter v. Natural Resources Defense Council, Inc.,*
    555 U.S. 7 (2008) ............................................................................... 11, 12

**STATUTES**

Cal. Elec. Code §§ 16002, 16420, 16442 ....................................................... 11

Elec. Code § 359.5 .................................................................................... 4

Elec. Code § 2151 ....................................................................................... 3

Elec. Code § 8002.5(b) ............................................................................... 4

Elec. Code § 8062 ...................................................................................... 25

Elec. Code § 8400 ...................................................................................... 25

Elec. Code § 8403(a)(1) ............................................................................. 25

Elec. Code §§ 8141.5 and 15452 .................................................................. 4

Elec. Code §§ 8300-8304 ............................................................................ 3

Elec. Code § 13302(b) ................................................................................. 5

Section 2 of the federal Voting Rights Act........................................... passim

**OTHER AUTHORITIES**

14th Amendment ............................................................................... 9, 15

CAL. CONST. art. II, § 5................................................................................ 4

Elections Clause of the U.S. Constitution......................................................... 8

Federal Rule of Civil Procedure 19(a)........................................................... 10

Fifteenth Amendment......................................................................... 14

First Amendment ....................................................................... 2, 22, 23

Fourteenth Amendment ................................................................. 14, 22

S. Rep. No. 97-417, pp. 27-28 (1982)............................................... 18

Senate Bill 6 (2009-2010 Reg. Sess.) ............................................... 3

U.S. Const. amend. XV, § 1............................................................... 14

## I.   **INTRODUCTION.**

Rarely is a lawsuit so transparent regarding the crass political motivations that underlie its filing.  Plaintiff frankly admits that she is a Democratic voter in a predominantly Republican congressional district, who objects to that fact and who objects to the nomination and election under California's Top Two Candidate Open Primary Act, Proposition 14, of Republican candidates with whom she disagrees.[1]  But she has suffered no legally cognizable harm as a result of these facts. Neither the U.S. Constitution nor the federal Voting Rights Act guarantees any person the right to be represented by a person with whom one agrees, nor is there a constitutional or statutory right not to lose elections.  Plaintiff can accordingly demonstrate no likelihood of success on the merits.

Insofar as she alleges a violation of her "right" and the "right" of other Democratic voters to vote for a Democratic candidate in the November election, she lacks standing to bring such a claim.  Under established case law, any such "freedom of association" claim could only be brought by the party itself.  Moreover, on the merits, her claims are foreclosed by two controlling cases that she fails to even cite: *Wash. State Grange v. Wash. Republican Party,* 552 U.S. 442 (2008) ("*Washington I*"), and *Wash. State Republican Party v. Wash. State Grange,* 2012 U.S. App. LEXIS 1050 (9th Cir. Jan. 19, 2012) ("*Washington II*").  Those case rejected facial and as-applied "freedom of association" claims leveled against the top two primary in Washington State on which Proposition 14 was closely modeled.

Insofar as she alleges a violation of the Fourteenth and Fifteenth Amendments, based on the fact that African American voters prefer Democratic candidates, and no Democratic candidate reached the general

---

[1] And Plaintiff's counsel is apparently the husband of a candidate who stands to benefit from the relief Plaintiff seeks

election in her congressional district (CD 8) this November, she has failed to allege that Proposition 14 was adopted by California's voters for a racially discriminatory purpose. Indeed, the ballot materials show that Proposition 14 was adopted for the purpose of reforming California's political system.

Insofar as Plaintiff alleges that Proposition 14 violates "substantive due process," she simply misstates the case law. In support of her claim she cites *Bush v. Gore*, 531 U.S. 98, 103 (2000), but that case was an equal protection case—not a substantive due process case.

And finally, insofar as Plaintiff alleges a violation of Section 2 of the Voting Rights Act, her argument boils down to the bare premise that—as an African American Democrat—she has the absolute right to vote for a Democratic candidate. Unfortunately for Plaintiff, that is simply not the law. "The Voting Rights Act does not guarantee that nominees of the Democratic Party will be elected, even if black voters are likely to favor that party's candidates." *Baird v. Consolidated City of Indianapolis*, 976 F.2d 357, 361 (7th Cir. 1992), *cert. denied*, 508 U.S. 907 (1993). "It is a balm for racial minorities, not political ones—even though the two often coincide." *Id.* (citing *Whitcomb v. Chavis,* 403 U.S. 124, 153 (1971)).

Ultimately, Plaintiff's complaint is ideological—she disagrees with the views of the two candidates who were nominated by the voters to proceed to the November general election in Congressional District 8 and seeks to have one of them removed from the ballot in favor of a candidate with views more congenial to her. But it would violate the First Amendment to prevent either of the nominated candidates from appearing on the ballot based on his political viewpoints. (Another reason to deny relief here is that Plaintiff has failed to join these candidates, though they are necessary parties to this suit.)

And finally, granting the relief Plaintiff seeks would severely harm the public interest. It would interfere with a pending election—which the courts

1  almost uniformly refuse to do—and it would frustrate the People's efforts to
2  reform their government.

3      For all these reasons, the requested injunction should be denied.

4  **II.   FACTUAL BACKGROUND & LITIGATION HISTORY.**

5      **A.   Proposition 14 (Top Two Candidate Open Primary Act).**

6      Proposition 14, approved by California voters on June 8, 2010, is one of
7  a series of reforms adopted by Californians in an effort to fix their
8  dysfunctional government, which is plagued with extreme partisanship.

9      Proposition 14 amended the state Constitution to abolish political party
10 primaries and replace them with a type of nonpartisan open primary election
11 known as "top two," or "voter-nominated" primary election.  Under the prior
12 system, only candidates and voters registered with a qualified political party
13 could participate in that party's primary election; the top vote-getter in each
14 party's primary became the party's official nominee, and each qualified party
15 was guaranteed a place on the general election ballot for its nominee.
16 Decline-to-State ("DTS") voters and those affiliated with non-qualified parties
17 were prohibited from participating in the primary, where the election was
18 often effectively decided.[2]  And candidates unaffiliated with a qualified party
19 were excluded from the primary, and could access the general election ballot
20 only through the more stringent "independent" nomination process (*see* Elec.
21 Code §§ 8300-8304), or write-in candidacies.

22     Under Proposition 14 and its implementing legislation, SB 6,[3] the
23 political parties no longer control the primary.  Instead, any candidate may
24 run in the primary for congressional or state elective office (now called "voter-

25

26     [2] DTS voters are voters who decline to register with any political party.  DTS
27 voters could not vote in any party's primary under the former system, unless the
   party permitted it.  *See* Elec. Code § 2151.  Voters affiliated with a non-qualified
28 party (or "political body") could not participate at all.
       [3] Senate Bill 6 (2009-2010 Reg. Sess.), *codified at* Stats. 2009, ch. 1.

nominated" offices), and any voter may vote at the primary election for any candidate. *See* CAL. CONST. art. II, § 5 (as amended by Proposition 14); Elec. Code § 8002.5(b).[4]   The two candidates receiving the highest vote totals for each office at the primary then compete for the office at the ensuing general election. *See* CAL. CONST. art. II, § 5; Elec. Code §§ 8141.5 and 15452.  Though the candidates may list their personal party "preference" on the ballot, the candidate is not the party's nominee, and no party is guaranteed a place on the general election ballot unless its preferred candidate is one of the top two vote-getters. *Id.*  Except for the candidate's ability to list his or her party "preference" on the ballot, this system works much like the nonpartisan general/runoff system by which many local officials in California are elected.

**B. Proposition 14 Was Consciously Modeled On Washington State's Top-Two System, Which Has Been Upheld Against Both Facial & As-Applied Challenges.**

**1. *Wash. State Grange v. Wash. Republican Party*, 552 U.S. 442 (2008) ("*Washington I*").**

California's 1998 "blanket primary" law (Proposition 198), in which voters could vote for any candidate at the primary without regard to party affiliation and in which the top vote-getter from each party advanced to the general election as the party's nominee, was struck down in *Cal. Democratic Party v. Jones*, 530 U.S. 567 (2000), on the ground that it violated the political parties' associational rights by forcing them to accept—as the party's official nominee and "standard-bearer"—candidates chosen by other parties' voters, with whom the party might not even wish to associate.  At the time,

---

[4] "Voter-nominated offices" include: (1) Governor; (2) Lieutenant Governor; (3) Secretary of State; (4) State Treasurer; (5) Controller; (6) State Insurance Commissioner; (7) Member of the Board of Equalization; (8) Attorney General; (9) State Senator; (10) Member of the Assembly; (11) United States Senator; (12) Member of the U.S. House of Representatives. Elec. Code § 359.5

the State of Washington had an identical system, which was also enjoined.[5]

In response, and based on language in *Jones* itself, the voters of Washington adopted a top-two primary system in 2004, known as I-872. Several of Washington's political parties immediately challenged I-872, claiming it violated *Jones*. In *Washington I,* 552 U.S. at 442, the Supreme Court rejected the plaintiffs' facial challenge to Washington's system, distinguishing *Jones* on the ground that—unlike the blanket primary—the top-two primary does not actually choose party nominees.    Though candidates may express a *personal* preference for a party on the ballot, to inform the voters, those candidates are not the parties' nominees; the parties are free to endorse candidates, and to publicize their support to the voters.

Proposition 14 was explicitly modeled on the Washington system, taking its cue from the Court's ruling in *Washington I. See* Interveners' Request for Judicial Notice, filed herewith ("RJN"), Exhibit B (Prop. 14), p. 65. Like the Washington system, under Proposition 14 the primary does not choose the parties' nominees, though candidates may share their party "preference" with the voters.   The parties, however, remain free to endorse candidates, and Proposition 14 even permits the parties to print a list of their endorsements in the sample ballot. *See* Elec. Code § 13302(b).

**2.    As-Applied Claims Were Rejected In *Wash. State Republican Party v. Wash. State Grange,* 2012 U.S. App. LEXIS 1050 (9th Cir. Jan. 19, 2012) ("*Washington II*").**

The claim rejected by the Supreme Court in *Washington I* was a facial challenge to I-872.   Left undecided by the Supreme Court's opinion was an as-applied constitutional challenge, based on the premise that Washington voters might be confused as to whether candidates who express a "preference" for the party are the party's nominee.   The Court remanded the case for

[5] *Democratic Party v. Reed,* 343 F.3d 1198 (9th Cir. 2003).

further proceedings on the as-applied claim.

On remand, the Washington State political party plaintiffs advanced (1) their as-applied "confusion"/forced association claims, (2) a challenge alleging that minor parties may have difficulty advancing to the general election, (3) trademark claims, and (4) claims pertaining to the election of party officers in Washington. On August 20, 2009, the federal district court granted the State's motion to dismiss the ballot access claim. *See* RJN, Exhibit C (Aug. 20, 2009, order in *Wash. State Republican Party v. Wash. State Grange*, Case No. 05-cv-00927-JCC (W.D. Wash.)). The plaintiffs and defendants (the State of Washington and the Grange) then filed cross-motions for summary judgment on the remaining claims. The district court granted summary judgment in favor of the defendants on the as-applied claim and trademark claims, and granted summary judgment to the plaintiffs on the party officer claims. *Wash. State Republican Party v. Wash. State Grange,* 2011 U.S. Dist. LEXIS 2448 (W.D. Wash. Jan. 11, 2011). The plaintiff political parties appealed the dismissal of their ballot access claims and the grant of summary judgment on the "confusion" and trademark claims.

On January 19, 2012, the Ninth Circuit unanimously affirmed the trial court's rulings, holding that (1) the minor parties' associational rights were not unconstitutionally infringed by the difficulties their preferred candidates may face in advancing to the general election ballot, (2) the plaintiffs had failed to create a triable issue of fact with respect to the as-applied "confusion" issue, and (3) that plaintiffs had failed to state a claim for trademark violation. *Washington II,* 2012 U.S. App. LEXIS 1050 (9th Cir. Jan. 19, 2012).[6]

---

[6] The Washington Democratic and Libertarian Parties have filed petitions for *certiorari* in this case (Case Nos. 11-1263 and 11-1266). The Respondents filed responses on June 22, and the brief has been distributed for conference on September 24, 2012.

### C.   Prior Unsuccessful Litigation Against Proposition 14.

This is not the first court to be presented with a challenge to Proposition 14. Indeed, Proposition 14 has been subject to sustained (and unsuccessful) legal attack since shortly after its adoption in 2010.

#### 1.   *Field v. Bowen* (S.F. Superior Court/Cal. Ct. App.).

In July 2010, six plaintiffs brought a challenge to Proposition 14 and SB 6 in San Francisco Superior Court, arguing that (1) it is unconstitutional to allow candidates to state a preference only for "qualified" political parties; and (2) it is unconstitutional to prevent voters from casting write-in ballots at the general election.  Based on those contentions, the plaintiffs argued that Proposition 14 and SB 6 must be enjoined in their entirety, and the pre-Proposition 14 partisan system should be reinstated.  The trial court granted a motion by IVP, CADOP and Mr. Maldonado to intervene in that action.

Plaintiffs unsuccessfully sought a preliminary injunction from the trial court, and from the First Appellate District and California Supreme Court.[7]

On September 19, 2011, the Court of Appeal issued a unanimous, published, thirty-page opinion affirming the trial court's denial of a preliminary injunction, and rejecting plaintiffs' claims on the merits as a matter of law.  *Field v. Bowen*, 199 Cal. App. 4th 346 (1st Dist. 2011).

Judgment was entered in that action on behalf of the defendants and interveners (including IVP, CADOP and Mr. Maldonado) on January 27, 2012.  The time for Plaintiffs to appeal that judgment has long since passed.

#### 2.   *Chamness v. Bowen* (C.D. Cal.).

In February 2011, while the appeal in *Field* was pending, a new case was filed in this Court, raising claims very similar to those in *Field*.  *Chamness v. Bowen*, Case No. 11-cv-01479-ODW-FFM (C.D. Cal. filed Feb. 17, 2011).  IVP,

---

[7] *Field v. Superior Court*, Case No. A129829 (Cal. Ct. App. 1st Dist.) (writ denied Oct. 14, 2010); *Field v. Superior Court*, Case No. S188436 (Cal.) (writ denied Dec. 15, 2010).

1    CADOP and Mr. Maldonado intervened as defendants in that action as well.

2         Following unsuccessful attempts, in both the district court and Ninth

3    Circuit,[8] to get a preliminary injunction against the use of Proposition 14 at

4    the 2012 elections, the federal plaintiffs moved for summary judgment.  On

5    August 23, 2011, Judge Otis D. Wright II denied plaintiffs' motion and *sua*

6    *sponte* granted summary judgment on behalf of the defendants and

7    interveners.  *Chamness v. Bowen*, 2011 U.S. Dist. LEXIS 94876 (C.D. Cal.

8    Aug. 23, 2011).   The *Chamness* plaintiffs immediately filed an appeal.

9    *Chamness v. Bowen*, Case No. 11-56449 (9th Cir. filed Aug. 24, 2011).  The

10   Ninth Circuit denied Appellants' motion to expedite the appeal to resolve it

11   before the 2012 elections; the appeal is briefed and awaits oral argument.

12        **3.    *Rubin v. Bowen* (Alameda Superior Court).**

13        A third suit challenging Proposition 14 was filed on November 21, 2011,

14   in Alameda County Superior Court.  *Rubin v. Bowen*, Case No. RG11605301.

15   The *Rubin* plaintiffs alleged that (1) Proposition 14 will make it more difficult

16   for minor parties to have their preferred candidates advance to the general

17   election, and thereby unduly burdens the rights of minor parties and their

18   supporters to ballot access at the general election; (2) voters were likely to be

19   "confused" by the fact that candidates may indicate their party "preference"

20   on the ballot into thinking such candidates are the parties' "standard-bearer";

21   and (3) Proposition 14 violates the Elections Clause of the U.S. Constitution.

22        On January 13, 2012, the plaintiffs filed a motion to preliminarily enjoin

23   the use of Proposition 14 at the 2012 elections.  The Secretary of State filed a

24   demurrer, in which IVP, CADOP, Mr. Maldonado and Mr. Takashima (as

25   Interveners) joined, and the Secretary and Interveners both opposed the

26   motion for preliminary injunction.  On April 24, 2012, the court denied the

27   motion for preliminary injunction and sustained demurrers, with leave to

28

------

[8] *See Chamness v. Bowen*, Case No. 11-55534 (9th Cir. filed Mar. 30, 2011).

amend, as to each of the three causes of action alleged in the original complaint, based largely on the rulings in *Washington I* and *Washington II*.

The plaintiffs in *Rubin* filed an amended complaint in May 2012, seeking to re-characterize their claims as as-applied challenges, rather than facial challenges. The Secretary of State and Interveners demurred to the amended complaint as well. A hearing on the pending demurrers is presently set for September 25, 2012.

## III.  KEY ALLEGATIONS IN THE COMPLAINT.

Plaintiff in this case seeks an injunction to stop issuance of certificates of nomination to the top two winners of the Congressional District 8 Primary Election on June 5, 2012, Mr. Craig Imus and Mr. Paul Cook. (Compl., Prayer ¶¶ 1-3.) Neither Mr. Imus nor Mr. Cook is named as a party in this action.

The essence of Plaintiff's claim is that she and other Democrats have the constitutional right and the right under Section 2 of the federal Voting Rights Act to vote for a candidate with whose opinions they agree—namely a Democrat. Plaintiff wants Proposition 14's system of non-partisan primary elections eliminated and the prior system of partisan primary elections restored, so that a Democrat is assured of advancing to the general election. (Compl., Prayer ¶ 6).

Plaintiff alleges that Proposition 14 violates Section 2 of the Voting Rights Act (and the First, Fourteenth and Fifteenth Amendments to the U.S. Constitution) because it dilutes the right of African Americans to vote for Democrats by creating a substantial likelihood that in some electoral districts, like Congressional District 8, a Democrat will not be among the Top Two vote getters in the Primary Election. (Complaint, ¶ 26.)

Plaintiff further alleges that Proposition 14 violates the 14th Amendment to the United States Constitution by abolishing Plaintiff's and Democrats' alleged right to have a Democratic party representative in the

general election for Congress in violation of their associational rights and right to equal protection, due process, as well as the privileges and immunities clause. (Complaint, ¶ 21.)

Plaintiff also alleges a violation of "substantive due process," citing *Bush v. Gore*, 531 U.S. 98, 103 (2000).

## IV. THE PRELIMINARY INJUNCTION SHOULD BE DENIED BECAUSE PAUL COOK AND CRAIG IMUS ARE NECESSARY PARTIES WHO HAVE NOT BEEN JOINED, AND WHOSE INTERESTS SHOULD NOT BE ADJUDICATED IN THEIR ABSENCE.

Federal Rule of Civil Procedure 19(a) provides in relevant part that:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party.

Two candidates—Paul Cook and Craig Imus—have already been nominated by the voters to appear on the general election ballot in Congressional District 8 this November. Plaintiff seeks to block the certification of those nominations and the conduct of the November election. The courts have held that, under such circumstances, the nominated candidates are "necessary parties" within the meaning of Rule 19. *See Williams v. State Bd. of Elec.*, 696 F. Supp. 1563, 1570-71 (N.D. Ill. 1988) (holding nominated candidates were necessary parties to suit challenging at-large voting system under Voting Rights Act, and seeking to enjoin pending

election for which candidates were already nominated); *Gaw v. Higham*, 267 F.2d 355 (6th Cir. 1959) (overruling district court's conclusion that candidates were not indispensable parties in action to challenge their eligibility to appear on ballot); *Benavente v. Taitano*, 2006 Guam 15, 2006 Guam LEXIS 16, at *43-*44 (Guam 2006) (determining that absent nominees were necessary parties under Guam R. Civ. Proc. 19—which is "virtually identical" to FRCP 19—where they had an interest, created by statute, to be placed on the general election ballot and their ability to protect that interest might have been impaired by a judgment rendered in their absence). *See also* Cal. Elec. Code §§ 16002, 16420, 16442 (in election contest challenging candidate's nomination at a primary, the challenged candidate is to be named as the defendant and served with the affidavit of contest).

Pursuant to the terms of Rule 19, Messrs. Cook and Imus must be joined in this action to defend their interests. Plaintiff seeks to deprive one of them of a place on the general election ballot, and to change the rules of the election mid-stream.

## V.   STANDARD GOVERNING PRELIMINARY INJUNCTIONS.

"An injunction is a matter of equitable discretion" and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 and 32 (2008). "'The grant of a preliminary injunction is the exercise of a very far reaching power never to be indulged in except in a case clearly warranting it. . . . On application for preliminary injunction the court is not bound to decide doubtful and difficult questions of law or disputed questions of fact.'" *Mayview Corp. v. Rodstein*, 480 F.2d 714, 719 (9th Cir. 1973) (quoting *Dymo Industries, Inc. v. TapePrinter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964) (per curiam)).

"A plaintiff seeking a preliminary injunction must establish that he is

likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. Plaintiff falls short on every element of the test.

Consideration of the public interest is particularly important here, where an injunction against the implementation of Proposition 14 and SB 6 would stop an election mid-cycle, deprive CD 8 of their top two choices to appear on the general election ballot, thwart the will of California's voters who determined that there open, non-partisan parties are in the best interest of the State, and frustrate the People's efforts to reform the State's dysfunctional political culture. *Cf. Legislature v. Eu,* 54 Cal. 3d 492, 511-12 (1991), *cert. denied,* 503 U.S. 919 (1992) (holding that to invalidate a voter-enacted legislative reform measure, term limits, threatened to "insulate the Legislature from any severe reform measures directed at that branch...").

## VI.   <u>PLAINTIFF HAS FAILED TO SHOW ANY LIKELIHOOD OF SUCCESS ON THE MERITS OF HER CLAIMS.</u>

Plaintiff's complaint and motion are not exactly models of clear legal analysis. They appear to mix and match any number of separate legal claims without clearly delineating the standards or allegations applicable to each. However, to the extent Plaintiff's claims can be discerned, they lack merit.

### A.   **Plaintiff Lacks Standing To Bring Her Claim That Proposition 14 Violates The Freedom of Association, And Is Further Foreclosed By Two Cases Plaintiff Failed To *Even Cite*: *Washington I* and *Washington II*.**

The main gravamen of Plaintiff's "First Claim for Relief" seems to be that her right of association, and that of other Democrats, is infringed by the fact that she cannot vote for ("associate with") a Democratic candidate at the general election because none advanced under the Top Two system. In other

1 words, Plaintiff wishes to discard the results of the June 5 primary and return
2 to a partisan primary system in which only Democrats vote for their standard-
3 bearer. That way, Plaintiff will not be faced in the general election with the
4 prospect of voting for one of two Republicans. There is no merit whatsoever
5 to Plaintiff's claim.

6 First of all, in the context of the regulation of the primary election
7 process the "right of association" is a right that belongs to the political party
8 itself—not to individual voters. This fact is amply demonstrated by the
9 primary cases upon which Plaintiff relies: *California Democratic Party v.*
10 *Jones, supra,* and *Democratic Party of the United States of American v.*
11 *Wisconsin ex rel. La Follette,* 450 U.S. 107 (1981). Because this is a right
12 belonging to the party, individual voters lack standing to raise such a claim.
13 *See Osburn v. Cox,* 369 F.3d 1283, 1287-88 (11th Cir.), *cert. denied,* 543 U.S.
14 943 (2004) (affirming district court's dismissal of individual voters'
15 associational claim alleged in a challenge to Georgia's open primary for lack of
16 standing); *Righeimer v. Jones,* 2000 U.S. Dist. LEXIS 13313 (E.D. Cal. Sept.
17 14, 2000) (in a challenge to California's 1998 blanket primary system,
18 holding, "the First Amendment associational rights at issue belong solely to
19 the association, here, the Republican Party, not to any individual candidate or
20 voter."); *Beck v. Ysursa,* 2007 U.S. Dist. LEXIS 86928 (D. Idaho Nov. 27,
21 2007) (dismissing similar associational challenge to Idaho's open primary).

22 Secondly, even if Plaintiff had standing to bring this claim, it is
23 effectively foreclosed by *Washington I* and *Washington II.* Both of those
24 cases expressly rejected "freedom of association" challenges to Washington
25 State's top two primary law, on which Proposition 14 is closely modeled. Not
26 only has Plaintiff has made no effort to distinguish those controlling cases,
27 she failed to *even cite* them in her moving papers.

28

## B.   Plaintiff Fails To State A Claim Under Either The Fourteenth Or Fifteenth Amendments.

Plaintiff's "First Claim for Relief" also alleges that Proposition 14 violates the Fourteenth Amendment. And though neither of the two causes of action contained in the Complaint cite the Fifteenth Amendment,[9] the Prayer asks for a declaration that Proposition 14 does violate that Amendment, and the motion for preliminary injunction makes passing reference to the Amendment as well.   To the extent that Plaintiff seeks to ground her complaint in these Civil War Amendments, she fails to state a claim.

First of all, it is questionable whether the Fifteenth Amendment would even apply to the type of claims that Plaintiff brings. She does not claim that she is being denied the right to register and vote in the general election; rather, she is essentially claiming that her vote will be diluted by virtue of her inability to vote for a candidate of her liking. "The Supreme Court has recognized that the Fifteenth Amendment protects the right to register and to vote, but it has never held or even suggested that vote dilution violates the Fifteenth Amendment." *Osburn*, 369 F.3d at 1288 (citing *Reno v. Bossier Parish Sch. Bd.*, 528 U.S. 320, 334 n.3 (2000) ("*Bossier Parish II*")).

More importantly, however, whether the claim is grounded in the Fourteenth or Fifteenth Amendment Plaintiff would only be entitled to relief if she could prove that Proposition 14 was adopted for "a racially discriminatory purpose chargeable to the state." *Lucas v. Townsend*, 967 F.2d 549, 551 (11th Cir. 1992) (per curiam). *See also Reno v. Bossier Parish Sch. Bd.*, 520 U.S. 471, 481 (1997) ("*Bossier Parish I*") ("Since 1980, a plaintiff bringing a constitutional vote dilution challenge, whether under

---

[9] The Fifteenth Amendment to the U.S. Constitution provides in relevant part, "The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color or previous condition of servitude." U.S. CONST. amend. XV, § 1.

the Fourteenth or Fifteenth Amendment, has been required to establish that the state or political subdivision acted with a discriminatory purpose."); *NAACP v. Jones*, 131 F.3d 1317, 1321-22 (9th Cir. 1997) ("the Equal Protection Clause is not implicated by classifications with disparate racial impact in the absence of discriminatory intent.").

The Complaint in this action does not even allege that the voters of California adopted Proposition 14 for a racially discriminatory purpose, much less does Plaintiff provide evidence of such a purpose.  To the contrary, the voter pamphlet materials prepared in connection with that measure, and distributed to the voters, clearly demonstrates that no such illicit motive did underlie the voters' decision—rather, California's voters adopted Proposition 14 for the purpose of reforming their dysfunctional government, to:

- "Reduce gridlock by electing the best candidates to state office and Congress, regardless of political party;
- "Give independent voters an equal voice in primary elections; and
- "Elect more practical individuals who can work together for the common good."

*See* RJN, Exhibit B (Rebuttal To Argument Against Proposition 14), page 2.

Absent proof of a racially discriminatory purpose underlying Proposition 14, no claim can be stated under the Civil War Amendments.

### C.   Plaintiff Fails To State A Claim For Violation Of Substantive Due Process.

At various points in her Complaint, Plaintiff asserts that Proposition 14 violates "a substantive due process right protected under the 14th Amendment & *Bush v. Gore* (2000)."  (*See* Complaint ¶ 3(b) & 22.)  Plaintiff represents that *Bush v. Gore* "recognized that State citizens had rights in federal elections under the substantive due process clause of the United States Constitution, rights now abridged by the conservative-only republican-only

general election in the in the 8th Congressional District." (Complaint ¶ 3(b); MPA ISO Mot. Prelim. Inj. p. 4:1-2.)

Plaintiff is mistaken about the holding of *Bush v. Gore*. It is not a substantive due process case at all, and it most certainly did not hold that Democrats have a right to vote for a Democrat even when a Democrat does not manage to win a top post at the primary. The issue in *Bush v. Gore* was whether the use of standard-less manual recounts of the votes cast in the 2000 Presidential Election violated the Equal Protection and Due Process Clauses in that, whether one's vote counted depended on the different standards applied in the various counties in which the voters lived, and sometimes even on which recount board in a single county reviewed a particular ballot. *Bush v. Gore*, 531 U.S. 98, 103 (2000). Plaintiff does not allege any similar violation in the vote counting in Congressional District 8.

Plaintiff does allege that she "desires ... to have her and all those similarly situated persons' votes counted on an equal basis with white citizens of San Bernardino County by being able to vote for a Democratic candidate in the general election." (Complaint ¶ 7.) Plaintiff does not allege, however, that only votes for Republican candidates are counted or that different vote-counting standards apply to votes cast by white voters.

Plaintiff also appears to mistakenly believe that the holding of *Bush v. Gore* prevents California's voters from amending their Constitution to institute a non-partisan Top Two system simply because California has had partisan primary elections in the past. (MPA ISO Mot. Prelim. Inj. p. 4:1-8.) The issue in *Bush v. Gore* was the lack of uniform procedures to ensure that votes were fairly counted across the State. *Bush v. Gore* did not hold that vote-counting procedures could not be changed, rather, the Court held that procedures needed to be established that were uniformly applicable:

The question before the Court is not whether local entities, in the

1   exercise of their expertise, may develop different systems for
2   implementing elections. Instead, we are presented with a situation
3   where a state court with the power to assure uniformity has ordered a
    statewide recount with minimal procedural safeguards. When a court
4   orders a statewide remedy, there must be at least some assurance that
    the rudimentary requirements of equal treatment and fundamental
5   fairness are satisfied.

6   531 U.S. at 109. Simply put, Plaintiff has not stated a claim for violation of
7   substantive due process.

8   **D.   Plaintiff Has Not Stated A Claim Under Section 2 Of The**
9   **      Voting Rights Act.**

10      Plaintiff's "Second Claim for Relief" urges that Proposition 14 violates
11  Section 2 of the Voting Rights Act (42 U.S.C. § 1973), which makes it illegal to
12  deny or abridge, on account of race, any person's right to vote. In essence,
13  Plaintiff's claim boils down to a very simple premise: that because she is
14  African American she has an absolute right to vote for a Democrat at the
15  general election, because African American voters historically favor
16  Democrats (and vice versa). Such is not the law! "The Voting Rights Act does
17  not guarantee that nominees of the Democratic Party will be elected, even if
18  black voters are likely to favor that party's candidates." *Baird*, 976 F.2d at
19  361. "It is a balm for racial minorities, not political ones—even though the
20  two often coincide." *Id.* (citing *Whitcomb*, 403 U.S. at 153).

21      Plaintiff's own Complaint and the election results makes clear that it is
22  politics—not race—that resulted in two Republicans being nominated for the
23  November election in Congressional District 8. First, it appears that the
24  reason a Democrat did not advance to the general election is that the two
25  Democratic candidates who ran (Jackie Conaway, wife of Plaintiff's counsel of
26  record, and John Pinkerton), split the vote. Had only one of them run, he or
27  she could have garnered 24% of the vote in CD 8 and would have been the top
28  vote-getter in a field featuring ten Republican candidates and one without a

party preference (Anthony Adams, who was previously elected to the California Assembly as a Republican). *See* RJN, Exhibit D. In other words, Plaintiff's preferred candidate lost, not because of vote dilution, but because of bad politics and poor strategic planning by Democrats.

Second, as the Complaint itself acknowledges, CD 8 is one of the few left in California in which Republican voters have a substantial registration edge (of at least 10%) over Democratic voters. (Complaint, ¶¶ 12(i) & (j) and 15.) Plaintiff has supplied no allegation—much less proof—that White voters in this District oppose Democratic candidates for racial reasons, rather than political ones. (Tellingly, there is not even an allegation that either of the losing Democratic candidates is an African American or other minority.) "[W]hen racial antagonism is not the cause of an electoral defeat suffered by a minority candidate, the defeat does not prove a lack of electoral opportunity but a lack of whatever else it takes to be successful in politics (say, failure to support popular programmatic initiatives, or failure to reflect the majority's ideological viewpoints, or failure to appreciate the popularity of an incumbent). Section 2 does not bridge that gap—nor should it." *Vecinos De Barrio Uno v. City of Holyoke*, 72 F.3d 973, 981 (1st Cir. 1995). *See also League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 999 F.2d 831, 854 (5th Cir. 1993) (en banc) ("Electoral losses that are attributable to partisan politics do not implicate the protections of § 2.").

Instructive on this point is the Supreme Court's decision in *Whitcomb v. Chavis*, cited above.[10] In *Whitcomb*, the lower court had held that plaintiffs,

---

[10] *Whitcomb* predated the 1982 amendments to Section 2, but those amendments were expressly intended to return the law of vote dilution after the plurality opinion in *Mobile v. Bolden* to the paradigm set forth in *Whitcomb* and *White v. Regester*: "Amended § 2 is intended to codify the 'results' test employed in *Whitcomb v. Chavis*, 403 U.S. 124 (1971), and *White v. Regester*, 412 U.S. 755 (1973), and to reject the 'intent' test propounded in the plurality opinion in *Mobile v. Bolden*, 446 U.S. 55 (1980). S. Rep. No. 97-417, pp. 27-28 (1982) (hereinafter S.

African-American residents of Marion County, Indiana, had established that their voting strength had been diluted in state legislative elections. The lower court found that plaintiffs were a cognizable minority with political interests that differed from those of the white majority and that the at-large election structure prevented them from electing their share of the county's representatives to the state legislature. 403 U.S. at 134-35. The Supreme Court reversed, concluding that cognizable minority status, plus a lack of success at the polls, did not equate to vote dilution. *Id.* at 148-49. The Court found nothing in the record to indicate that African-Americans "were not allowed to register to vote, to choose the political party they desired to support, to participate in its affairs or to be equally represented on those occasions when legislative candidates were chosen." *Id.* at 149. The Court concluded that African-American-supported candidates lost not because of their identification with the African-American community but because—just like in CD 8—they were Democrats in a Republican county. *Id.* at 152-53. The lower court's finding that the "voting power" of the African-American community "may have been 'cancelled out' . . . seems a mere euphemism for political defeat at the polls." *Id.* at 153. The Court elaborated:

> On the record before us plaintiffs' position comes to this: that although they have equal opportunity to participate in and influence the selection of candidates and legislators, and although [African Americans] vote[] predominantly Democratic and that party slates candidates satisfactory to [them], invidious discrimination nevertheless results when [African Americans], along with all other Democrats, suffer[] the disaster of losing too many elections. . . . The mere fact that one interest group or another concerned with the outcome of Marion County elections has

---

Rep.). Whereas *Bolden* required members of a racial minority who challenged impairment of their voting strength to prove that the challenged electoral system was created or maintained with a discriminatory purpose and led to discriminatory results, under the results test, 'plaintiffs may choose to establish discriminatory results without proving any kind of discriminatory purpose.' S. Rep., at 28." *Thornburg v. Gingles,* 478 U.S. 30, 83-84 (1986) (O'Connor, J., concurring).

found itself outvoted and without legislative seats of its own provides no basis for invoking constitutional remedies where, as here, there is no indication that this segment of the population is being denied access to the political system.

403 U.S. at 155.

Instructive, too, is *Osburn v. Cox*, also cited above. In that case, the plaintiffs challenged, under Section 2, Georgia's use of an open primary in the 2002 Democratic primary in Congressional District 4. They alleged that the votes of African American voters for incumbent Congresswoman Cynthia McKinney were diluted by the "crossover" votes of white Republican voters who favored Ms. McKinney's (ultimately successful) opponent, Denise Majette. The Eleventh Circuit held, "The facts alleged by Plaintiffs, *i.e.*, that Republican voters crossed-over and voted for Majette rather than McKinney, do not demonstrate a violation of Section 2 of the Voting Rights Act. The Plaintiffs have not alleged facts to support a claim that the minority group has been excluded from meaningful access to the political process due to the interaction of racial bias in the community with the challenged voting system." 369 F.3d at 1289.

Finally, it is significant—and fatal to Plaintiff's claim—that African Americans only comprise approximately 9% of the population of this District. (*See* Complaint, ¶ 15.) Under such circumstances, there is <u>no</u> voting system that would allow African American voters to "elect their candidate of choice based on their own votes and without assistance from others. Recognizing a § 2 claim in this circumstance would grant minority voters 'a right to preserve their strength for the purposes of forging an advantageous political alliance.' [Citations.] Nothing in § 2 grants special protection to a minority group's right to form political coalitions. '[M]inority voters are not immune from the obligation to pull, haul, and trade to find common political ground.'" *Bartlett v. Strickland*, 556 U.S. 1, 14-15 (2009).

In *Bartlett*, the Supreme Court held that minority voters who could constitute no more than 39% of the eligible voters in an electoral district could not state a claim for illegal vote dilution under Section 2. The Court held that minority voters cannot bring a claim under Section 2 unless they have the ability to elect a candidate on their own, and without the assistance of other voters, by constituting at least 50%+1 of eligible voters in the district. The Court explained:

> "[u]nless minority voters possess the *potential* to elect representatives in the absence of the challenged structure or practice, they cannot claim to have been injured by that structure or practice." [*Thornburg v. Gingles*,] 478 U.S. [30] at 50, n. 17 [1986]. . . . the first *Gingles* requirement (of a majority of eligible voters) is "needed to establish that the minority has the potential to elect a representative of its own choice in some single-member district." [*Growe v. Emison*,] 507 U.S. [25] at 40 [1993]. Without such a showing, "there neither has been a wrong nor can be a remedy." *Id.*, at 41 . . . . There is a difference between a racial minority group's "own choice" and the choice made by a coalition.

*Bartlett*, 556 U.S. at 15.

In the same vein, there is no allegation in the Complaint that African American Democrats would have the "potential to elect a representative of [their] own choice" in Congressional District 8 in the absence of the Top Two Primary, or even that Democrats more generally would have the potential to elect a representative of their choice. (This is, after all, a district that has been represented by Republican congressmen for decades.) Given the small proportion of the District's population that is African American, Plaintiff's supposed claim under Section 2 is to a "right" to form a coalition with other, non-African American Democrats—a right that *Bartlett* expressly rejected.

### E. Plaintiff Asks This Court To Perform An Unconstitutional Act—To Exclude A Winning Candidate From The Ballot Because Of His Beliefs.

Plaintiff requests that this Court perform an unconstitutional act—denying certificates of nomination to Mr. Imus and Mr. Cook because they have political views that differ from those of Plaintiff and do not, in Plaintiff's view, differ significantly between themselves. Plaintiff alleges that Prop. 14

> replaced the competition of ideas that takes place with a candidate from one's own party in the general election contest [sic] stands up and competes on issues of importance to African Americans, to a competition of campaigning skills and resources. This less than subtle shift in policy manifested itself most graphically in the 8th Congressional District race. African Americans want their issues discussed and debated in Congressional races, and not just wiped out by who was the best campaigner in a primary ...

(MPA ISO Mot. Prelim. Inj. p. 5:4-11.)

Plaintiff frankly asserts, "In districts where the African American [sic] are a smaller percentage and the candidates so reactionary, it is not the likely winners at the ballot box that should be protected." (MPA ISO Mot. Prelim. Inj. p. 5:24-26.)

It could not be clearer that Plaintiff is asking this Court to deny one of the Top Two winning candidates in the June 5 Primary election a place on the general election ballot because of his political beliefs, and to place the leading Democratic candidate on the ballot instead, because that candidate's views are more congenial to Plaintiff. There could not be a more improper action by this Court, or a clearer violation of the First Amendment. The right to fairly run for political office without being discriminated against based upon political beliefs is protected by the First Amendment and the equal protection clause of the Fourteenth Amendment. *See Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 675 (1998) (if a state-owned public television station sponsors a candidate debate, it cannot engage in viewpoint discrimination in

excluding a candidate); *Communist Party of Indiana v. Whitcomb*, 414 U.S. 441, 446-50 (1974) (party's candidates could not be excluded from the ballot based on the beliefs espoused by the party); *Socialist Workers Party v. Hill*, 483 F.2d 554, 556-57 (5th Cir. 1973) (oath requiring candidates to swear to defend present form of government and resist movement to subvert present form of government was unconstitutional because right to seek office could not have been conditioned on foreswearing of political beliefs). It is well-settled that the First Amendment prohibits the State from excluding a person from a profession or a privilege because he holds certain beliefs. *See Keyishian v. Board of Regents*, 385 U.S. 589, 607 (1967); *Baird v. State Bar of Ariz.*, 401 U.S. 1, 6 (1971). The very same principle applies in this case.

## VII. THE BALANCE OF HARDSHIPS TIPS SHARPLY AGAINST AN INJUNCTION.

Plaintiff has suffered no cognizable harm in this case. On the other hand, Interveners *and the public interest* face grave harm if a preliminary injunction issues, suspending Proposition 14.

First, Plaintiff seeks to interfere with the conduct of the general election in November, but that electoral process that is already underway. The primary has already been conducted, the nominated candidates are running their campaigns, funds have been raised, etc. Leaving aside the lack of merit of Plaintiff's claims, Supreme Court case law counsels against enjoining a pending election even if a violation were found to exist. The Court has held, in the seminal case of *Reynolds v. Sims*, 377 U.S. 533 (1964), that:

> [U]nder certain circumstances, such as where an impending election is imminent and a State's election machinery is already in progress, equitable considerations might justify a court in withholding the granting of immediately effective relief in a legislative apportionment case, even though the existing apportionment scheme was found invalid.

1  *Id.* at 585.  Courts have been extremely solicitous of this sage advice.  *See*
2  *Cardona v. Oakland Unified School District,* 785 F. Supp. 837, 839-40 (N.D.
3  Cal. 1992); *S.W. Voter Regis. Educ. Proj. v. Shelley,* 344 F.3d 914, 919 (9th
4  Cir. 2003) (*en banc*) ("*Southwest Voter*"); *Purcell v. Gonzalez,* 549 U.S. 1, 7
5  (2006) (*per curiam*).    "The strong public interest in having elections go
6  forward . . . weighs heavily against an injunction that would delay an upcoming
7  election."  *Cardona,* 785 F. Supp. at 842 (refusing to enjoin the conduct of a
8  pending election in an unconstitutional districting plan).

9      Plaintiff also audaciously seeks to nullify the results of the June primary,
10  based on her dissatisfaction with those results.  But changing the rules of the
11  game after an election has already been conducted violates basic standards of
12  fundamental fairness and due process.  *See Griffin v. Burns,* 570 F.2d 1065,
13  1078-79 (1st Cir. 1978) (Court of Appeal found fundamental unfairness—and
14  a violation of due process—where a state Supreme Court's post-election
15  invalidation of absentee ballots resulted in the disqualification of ten percent
16  of the total votes cast in a primary election).

17      Granting an injunction in this case would also harm the public interest
18  insofar as Plaintiff seeks broader relief against the conduct of future elections
19  using the Proposition 14 system (as appears to be the case from the Prayer).

20      As discussed above, California's voters adopted Proposition 14 to reform
21  their dysfunctional political system.  *See* RJN, Exhibit B (Rebuttal To
22  Argument Against Proposition 14), p. 19.  An injunction against the measure
23  will frustrate that purpose.  Judicial restraint is warranted, where the Court is
24  faced with a reform measure opposed by virtually the entire political
25  establishment in Sacramento (and probably in Washington).  *See Legislature*
26  *v. Eu,* 54 Cal. 3d 492, 511-12 (1991) (to invalidate a voter-enacted legislative
27  reform measure, term limits, risked "insulat[ing] the Legislature from any
28  severe reform measures directed at that branch . . . ."); *see also* Order

1  DENYING Plaintiff's Motion for Preliminary Injunction, *Chamness v. Bowen*,
2  Case No. 11-cv.-01479 (C.D. Cal. filed Mar. 30, 2011), p. 19.

3      Second, Proposition 14 gives unaffiliated/DTS voters new constitutional
4  rights to participate in primary elections.  An injunction would deprive 3.4
5  million independent voters (like Intervener Takashima) of their newly-won
6  constitutional rights at future primaries.

7      And finally, an injunction against Proposition 14, and a return to the
8  partisan primary system, would deprive candidates who are not affiliated with
9  qualified parties of the ability to participate in future primary elections.  The
10  only way for such candidates to have their name placed on the general
11  election ballot would be to proceed as an independent candidate, with
12  requirements that are more stringent than under Proposition 14.[11]

13  **VIII.  CONCLUSION.**

14      The motion for preliminary injunction should be denied.

15  Dated: July 6, 2012                        NIELSEN MERKSAMER
16                                             PARRINELLO GROSS & LEONI LLP

17                                             By:/s/      Marguerite Mary Leoni      .
18                                                         Marguerite Mary Leoni

19                                             By:/s/      Christopher E. Skinnell      .
20                                                         Christopher E. Skinnell

21                                             *Attorneys for Intervener-Defendants*
22                                             INDEPENDENT VOTER PROJECT,
23                                             CALIFORNIANS TO DEFEND THE
                                               OPEN PRIMARY, ABEL MALDONADO
24                                             AND DAVID TAKASHIMA

25

26      [11] *Compare* § 8062 (65 to 100 signatures required to seek nomination of
      qualified party for statewide office) *with* § 8400 (1% of registered voters statewide—
27    currently 173,041 voters—must sign nomination papers for an independent
      candidate to run statewide); *see also* § 8403(a)(1) (only 60 days to collect signatures
28    on independent nomination papers for statewide office).

1

## **PROOF OF SERVICE**

2  I am employed in the County of Marin, State of California.  I am over the age

3  of 18 and not a party to the within cause of action.  My business address is, 2350

4  Kerner Boulevard, Suite 250, San Rafael, California 94901.

5  **On July 6, 2012, I caused the foregoing document described as**

6  **INTERVENERS' OPPOSITION TO PLAINTIFFS' MOTION FOR**

7  **PRELIMINARY INJUNCTION**

8  to be served on the individuals listed below as follows:

9
10
11
12
13
14

| Robert D. Conaway, Esq. | George Waters, Esq. |
|---|---|
| Law Office of Robert D. Conaway | Deputy Attorney General |
| 222 E. Main Street, Suite 212 | Office of the Attorney General |
| Mailing Address: P.O. Box 865 | 1300 I St., Suite 125 |
| Barstow, CA 923120865 | Sacramento, CA 94244-2550 |
| Ph: (760) 256-0603 | Ph: (916) 323-8050 |
| Email: rdconaway@gmail.com | Email: George.Waters@doj.ca.gov |
| (Attorney for Plaintiff) | (Attorney for Defendant Debra Bowen) |

15

16  _x_  **BY U.S. MAIL:** By following ordinary business practices and placing for
17      collection and mailing at 2350 Kerner Blvd., Suite 250, San Rafael,
        California 94901 a true copy of the above-referenced document(s), enclosed
18      in a sealed envelope; in the ordinary course of business, the above
        documents would have been deposited for first-class delivery with the
19      United States Postal Service the same day they were placed for deposit, with
20      postage thereon fully prepaid.

21  _x_  **BY ELECTRONIC SERVICE:** By transmitting by email to the above
        party(ies) at the above email addresses.
22

23  Executed in San Rafael, California on July 6, 2012.  I declare under penalty

24  of perjury, under the laws of the State of California, that the foregoing is true and

25  correct.

26

27  _____
    Paula A. Scott

28