1
2

NIELSEN MERKSAMER
   PARRINELLO GROSS & LEONI LLP
MARGUERITE MARY LEONI (SBN 101696)
CHRISTOPHER E. SKINNELL (SBN 227093)
2350 Kerner Boulevard, Suite 250
San Rafael, California 94901
TELEPHONE: (415) 389-6800
FACSIMILE:   (415) 388-6874
Email: mleoni@nmgovlaw.com
Email: cskinnell@nmgovlaw.com

*Attorneys for Intervener-Defendants*
INDEPENDENT VOTER PROJECT,
CALIFORNIANS TO DEFEND THE OPEN
PRIMARY, ABEL MALDONADO AND
DAVID TAKASHIMA

3
4
5
6
7
8
9
10
11
12

13

IN THE UNITED STATES DISTRICT COURT

14

FOR THE CENTRAL DISTRICT OF CALIFORNIA

15

16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| ELISE BROWN,<br><br>            *Plaintiff,*<br><br>    vs.<br><br>DEBRA BOWEN, in her official capacity as California Secretary of State,<br><br>            *Defendant.*<br>_____<br><br>INDEPENDENT VOTER PROJECT, CALIFORNIANS TO DEFEND THE OPEN PRIMARY, ABEL MALDONADO AND DAVID TAKASHIMA,<br><br>            *Intervener-Defendants.*<br>_____ | Case No.: 12-cv-05547-PA-SPx<br><br>**INTERVENERS' NOTICE OF MOTION & MOTION TO DISMISS FOR LACK OF STANDING & FAILURE TO STATE A CLAIM [FRCP 12(b)(1) & 12(b)(6)]**<br><br>JUDGE: Hon. Percy Anderson<br>COURTROOM: 163<br>HEARING DATE: Oct. 1, 2012<br>HEARING TIME: 1:30 p.m. |

# **TABLE OF CONTENTS**

**Page(s)**

NOTICE OF MOTION & MOTION ..................................................................ix

POINTS & AUTHORITIES ...........................................................................1

I.    INTRODUCTION ............................................................................1

II.   FACTUAL BACKGROUND & LITIGATION HISTORY ...........................3

    A.    Proposition 14 (Top Two Candidate Open Primary Act) ...............3

    B.    Proposition 14 Was Consciously Modeled On Washington State's Top-Two System, Which Has Been Upheld Against Both Facial & As-Applied Challenges................................ 4

        1.    *Wash. State Grange v. Wash. Republican Party,* 552 U.S. 442 (2008) ("*Washington I*").................................. 4

        2.    As-Applied Claims Were Rejected In *Wash. State Republican Party v. Wash. State Grange,* 676 F.3d 784 (9th Cir. Jan. 19, 2012) ("*Washington II*") .....................5

    C.    Prior Unsuccessful Litigation Against Proposition 14 ....................7

        1.    *Field v. Bowen* (S.F. Superior Court/Cal. Ct. App.) ..............7

        2.    *Chamness v. Bowen* (C.D. Cal.) ............................................7

        3.    *Rubin v. Bowen* (Alameda Superior Court).......................... 8

        4.    Previous proceedings in this case ......................................... 9

III.  KEY ALLEGATIONS IN THE FIRST AMENDED COMPLAINT........... 9

IV.   STANDARD GOVERNING MOTIONS TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) & (6).....................10

    A.    Challenge to Standing Under Federal Rule 12(b)(1) ....................10

    B.    Failure To State A Claim Under Federal Rule 12(b)(6) ............... 11

V.   EACH OF PLAINTIFF'S FOUR CLAIMS FOR RELIEF IS
     FATALLY DEFECTIVE, AND SHOULD BE DISMISSED WITH
     PREJUDICE ......................................................................................... 12

     A.   Plaintiff Lacks Standing To Bring Her First Claim For
          Relief, That Proposition 14 Violates The Freedom of
          Association, And That Claim Is Also Foreclosed By Two
          Controlling Cases: *Washington I* and *Washington II* .................. 12

          1.   Plaintiff's lack of standing ................................................... 13

          2.   Failure to state a claim ......................................................... 13

     B.   Plaintiff's First And Second Claims For Relief Should Be
          Dismissed, To The Extent They Allege Racial Vote
          Dilution In Violation Of The Fourteenth And Fifteenth
          Amendments, Because They Fail To State A Claim ....................... 14

     C.   Plaintiff Third Claim For Relief Has Not Stated A Claim
          Under Section 2 Of The Voting Rights Act .................................... 16

     D.   Plaintiff's Fourth Claim For Relief Has Not Stated A
          Claim Under The Privileges & Immunities Clauses Of The
          Fourteenth Amendment Or Article IV, § 2, cl. 1 ........................... 21

VI.  CONCLUSION ................................................................................... 22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Anderson v. Celebrezze,*
 460 U.S. 780 (1983) ........................................................................12

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009) ...................................................................... 11

*Baird v. Consolidated City of Indianapolis,*
 976 F.2d 357 (7th Cir. 1992), *cert. denied*, 508 U.S. 907 (1993) .......2, 16, 17

*Baldwin v. Fish & Game Comm'n,*
 436 U.S. 371 (1978) ...................................................................... 22

*Balistreri v. Pacifica Police Dep't,*
 901 F.2d 696 (9th Cir. 1990)..........................................................14

*Bartlett v. Strickland,*
 556 U.S. 1 (2009) ......................................................................20, 21

*Beck v. Ysursa,*
 2007 U.S. Dist. LEXIS 86928 (D. Idaho Nov. 27, 2007) ...........................13

*Bell Atlantic Corp. v. Twombly,*
 550 U.S. 544 (2007) ...................................................................... 11

*Burdick v. Takushi,*
 504 U.S. 428 (1992) ...................................................................... 14

*Cal. Democratic Party v. Jones,*
 530 U.S. 567 (2000)................................................................. 4, 5, 13

*Chamness v. Bowen,*
 Case No. 11-cv-01479-ODW-FFM (C.D. Cal. filed Feb. 17, 2011) .................7

*Chamness v. Bowen,*
 2011 U.S. Dist. LEXIS 94876 (C.D. Cal. Aug. 23, 2011) ............................ 8

*Chamness v. Bowen,*
 Case No. 11-55534 (9th Cir. filed Mar. 30, 2011)...................................7

*Chamness v. Bowen,*
    Case No. 11-56449 (9th Cir. filed Aug. 24, 2011) ............................................ 8

*Chandler v. State Farm Mut. Auto. Ins. Co.,*
    598 F.3d 1115 (9th Cir. 2010) ...........................................................10

*Conservation Force v. Salazar,*
    646 F.3d 1240 (9th Cir. 2011) ...........................................................14

*Democratic Party of the United States v. Wisc. ex rel. La Follette,*
    450 U.S. 107 (1981) ...........................................................13

*Democratic Party v. Reed,*
    343 F.3d 1198 (9th Cir. 2003) .......................................................... 4

*Dudum v. Arntz,*
    640 F.3d 1098 (9th Cir. 2011) ...........................................................12

*Fayer v. Vaughn,*
    649 F.3d 1061 (9th Cir. 2011) ........................................................... 11

*Field v. Bowen,*
    199 Cal. App. 4th 346 (1st Dist. 2011) ...........................................................7

*Field v. Superior Court,*
    Case No. A129829 (Cal. Ct. App. 1st Dist.) ...........................................................7

*Field v. Superior Court,*
    Case No. S188436 (Cal.) ...........................................................7

*Gompper v. VISX, Inc.,*
    298 F.3d 893 (9th Cir. 2002) ........................................................... 11

*Growe v. Emison,*
    507 U.S. 25 (1993) ........................................................... 20

*Hague v. Committee for Indus. Org.,*
    307 U.S. 496 (1939) ........................................................... 22

*Ileto v. Glock, Inc.,*
    349 F.3d 1191 (9th Cir. 2003) ........................................................... 11

*Johnson v. Bredesen,*
   624 F.3d 742 (6th Cir. 2010), *reh'g en banc denied,* 2010 U.S. App.
   LEXIS 26390 (6th Cir. Dec. 17, 2010), *cert. denied sub nom.,*
   *Johnson v. Haslam,* 563 U.S. ___, 131 S. Ct. 2903 (U.S. 2011) ................... 22

*LaRouche v. Fowler,*
   152 F.3d 974 (D.C. Cir. 1998) ....................................................................... 12

*League of United Latin Am. Citizens, Council No. 4434 v. Clements,*
   999 F.2d 831 (5th Cir. 1993) (en banc) ......................................................... 18

*Lopez v. County of Merced,*
   473 F. Supp. 2d 1072 (E.D. Cal. 2007) .......................................................... 21

*Lucas v. Townsend,*
   967 F.2d 549 (11th Cir. 1992) (per curiam) ................................................... 15

*Mack v. South Bay Beer Distribs.,*
   798 F.2d 1279 (9th Cir. 1986) ................................................................. 11, 17

*McKay v. Thompson,*
   226 F.3d 752 (6th Cir. 2000), *reh'g and reh'g en banc denied,* 2000
   U.S. App. LEXIS 27840 (6th Cir. Oct. 27, 2000), *cert. denied,* 532
   U.S. 906 (2001) ............................................................................................. 22

*Mobile v. Bolden,*
   446 U.S. 55 (1980) ........................................................................................ 18

*Mullis v. United States Bankruptcy Court,*
   828 F.2d 1385 (9th Cir. 1987) ................................................................. 11, 17

*NAACP v. Jones,*
   131 F.3d 1317 (9th Cir. 1997) ....................................................................... 15

*Navarro v. Block,*
   250 F.3d 729 (9th Cir. 2001) ......................................................................... 11

*Osburn v. Cox,*
   369 F.3d 1283 (11th Cir.), *cert. denied,* 543 U.S. 943 (2004) .......... 13, 15, 19

*Partnoy v. Shelley,*
   277 F. Supp. 2d 1064 (S.D. Cal. 2003) .......................................................... 12

*Reno v. Bossier Parish Sch. Bd.,*
    520 U.S. 471 (1997) ...................................................................... 15

*Reno v. Bossier Parish Sch. Bd.,*
    528 U.S. 320 (2000) ...................................................................... 15

*Righeimer v. Jones,*
    2000 U.S. Dist. LEXIS 13313 (E.D. Cal. Sept. 14, 2000) ........................... 13

*Rubin v. Bowen,*
    Case No. RG11605301 (Alameda Superior Court) ...................................... 8

*Thornburg v. Gingles,*
    478 U.S. 30 (1986) ................................................................... 18, 20

*Vecinos De Barrio Uno v. City of Holyoke,*
    72 F.3d 973 (1st Cir. 1995) ........................................................... 17

*Wash. State Grange v. Wash. Republican Party,*
    552 U.S. 442 (2008) ................................................................*passim*

*Wash. State Republican Party v. Wash. State Grange,*
    2011 U.S. Dist. LEXIS 2448 (W.D. Wash. Jan. 11, 2011) ............................ 6

*Wash. State Republican Party v. Wash. State Grange,*
    676 F.3d 784 (9th Cir. Jan. 19, 2012) .............................................*passim*

*Wash. State Republican Party v. Wash. State Grange,*
    Case No. 05-cv-00927-JCC (W.D. Wash.) .............................................. 6

*Whitcomb v. Chavis,*
    403 U.S. 124 (1971) ........................................................ 2, 17, 18, 19

*White v. Regester,*
    412 U.S. 755 (1973) ..................................................................... 18

*Winstead v. Stodola,*
    2007 U.S. Dist. LEXIS 68049 (E.D. Ark. Sept. 13, 2007) ........................... 21

*Wolfe v. Strankman,*
    392 F.3d 358 (9th Cir. 2004) ........................................................... 10

1

**STATUTES**

2

Section 2 of the federal Voting Rights Act (42 U.S.C. § 1973) ............. *passim*

3

Cal. Elec. Code § 359.5 ...................................................................... 4

4

5

Cal. Elec. Code § 2151 ........................................................................3

6

Cal. Elec. Code § 8002.5(b) ...............................................................3

7

Cal. Elec. Code § 8141.5 ................................................................... 4

8

Cal. Elec. Code § 15452 .................................................................... 4

9

Cal. Elec. Code §§ 8300-8304 ...........................................................3

10

11

Cal. Elec. Code § 13302(b) .................................................................5

12

13

**U.S. CONSTITUTION**

14

U.S. CONST. art. I, § 4, cl. 1 (Elections Clause) .............................. 8

15

U.S. CONST. art. IV, § 2, cl. 1 (privileges & immunities) ...............1, 10, 21, 22

16

17

U.S. CONST. amend. I.................................................................... 12, 13

18

U.S. CONST. amend. XIV (equal protection) ...................................10, 14, 15

19

U.S. CONST. amend. XIV (due process)............................................ 9, 10, 12

20

U.S. CONST. amend. XIV (privileges & immunities) ....................1, 10, 21, 22

21

22

U.S. CONST. amend. XV ...............................................................14, 15, 16

23

24

**CALIFORNIA CONSTITUTION**

25

CAL. CONST. art. II, § 5 ..................................................................3, 4

26

27

28

1
2

**OTHER AUTHORITIES**

3

Fed. R. Civ. Proc. 12(b)(1) ...............................................................10

4

Fed. R. Civ. Proc. 12(b)(6)................................................... 10, 11, 14

5
6

S. Rep. No. 97-417 (1982) ...............................................................18

7

(Cal.) Senate Bill 6 (2009-2010 Reg. Sess.), *codified at* Cal. Stats.
2009, ch. 1 .................................................................................3

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **NOTICE OF MOTION & MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that on October 1, 2012, at 1:30 p.m., or as soon thereafter as the parties may be heard, the Intervener-Defendants in this action will move this Court, at the United States Courthouse located at 312 N. Spring Street, Los Angeles, California, 90012, Courtroom #15 (Room #163), for dismissal of the First Amended Complaint under Federal Rule of Civil Procedure 12(b)(1) and (6), on the grounds that (1) the Court lacks jurisdiction over the associational claim contained in the First Claim for Relief, because Plaintiff lacks standing to raise that claim, and (2) each of the Claims for Relief contained in the first amended complaint fail to state a claim upon which relief can be granted.

Therefore, Interveners respectfully request that the Court:

1.      Dismiss the Plaintiff's first amended complaint with prejudice;

2.      Award Interveners costs of suit; and

3.      Award Interveners any other relief to which they are entitled.

This motion is based on the following documents: this notice of motion and motion; the attached points and authorities; all the other papers, documents, or exhibits on file or to be filed in this action to the extent they are judicially-noticeable; and the argument to be made at any hearing on the motion ordered by the Court.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on August 15, 2012.

///

///

///

///

///

1

2   Dated:  August 16, 2012

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

NIELSEN MERKSAMER
      PARRINELLO GROSS & LEONI LLP

By:/s/       Marguerite Mary Leoni
             Marguerite Mary Leoni

By:/s/       Christopher E. Skinnell
             Christopher E. Skinnell

INDEPENDENT VOTER PROJECT,
CALIFORNIANS TO DEFEND THE
OPEN PRIMARY, ABEL MALDONADO
AND DAVID TAKASHIMA

**POINTS & AUTHORITIES**

## I.    INTRODUCTION.

Though the Plaintiff has filed an amended complaint, it suffers from the same defects as the initial complaint and should be dismissed for failure to state a claim.   For the same reasons that this Court already found that Plaintiff "[wa]s not likely to succeed on the merits and that she has failed to raise a serious question" regarding her claims, this case should be dismissed for failure to state a claim.  Simply put, the first amended complaint has not remedied the fundamental defect of the original complaint: the failure to allege a cognizable constitutional or statutory claim for relief.

Ultimately, Plaintiff's objection to Proposition 14 is ideological, not constitutional.  Plaintiff frankly admits that she is a Democratic voter in a predominantly Republican congressional district, who objects to that fact and who objects to the nomination and election under California's Top Two Candidate Open Primary Act, Proposition 14, of Republican candidates with whom she disagrees, and who wishes to be able to cast a ballot for a candidate whose ideology she finds more congenial.  But neither the U.S. Constitution nor the federal Voting Rights Act guarantees any person the right to be represented by a person with whom one agrees, nor is there a constitutional or statutory right not to lose elections.  Plaintiff's first amended complaint has thus stated no claim on which relief can be granted.

Insofar as she alleges a violation of her "right" and the "right" of other Democratic voters to vote for a Democratic candidate in the congressional and state elections, she lacks standing to bring such a claim.    Under established case law, any such "freedom of association" claim could only be brought by the Democratic Party itself.  Moreover, on the merits, her claims are foreclosed by two controlling cases: *Wash. State Grange v. Wash. Republican Party,* 552 U.S. 442 (2008) ("*Washington I*"), and *Wash. State*

*Republican Party v. Wash. State Grange,* 676 F.3d 784 (9th Cir. Jan. 19, 2012) ("*Washington II*").  Those case rejected facial and as-applied "freedom of association" claims leveled against the top-two primary in Washington State on which Proposition 14 was closely modeled.

Insofar as she alleges a violation of the Fourteenth and Fifteenth Amendments, based on the fact that African American voters prefer Democratic candidates, and Democratic candidate may not reach the general election in some congressional districts—such as her congressional district (CD 8) this November—she has failed to allege that Proposition 14 was adopted by California's voters for a racially discriminatory purpose.  Indeed, the ballot materials show that Proposition 14 was adopted for the purpose of reforming California's political system.

Insofar as Plaintiff alleges a violation of Section 2 of the  Voting Rights Act, her argument boils down to the bare premise that—as an African American Democrat—she has the absolute right to vote for a Democratic candidate.  Unfortunately for Plaintiff, that is simply not the law.  "The Voting Rights Act does not guarantee that nominees of the Democratic Party will be elected, even if black voters are likely to favor that party's candidates."  *Baird v. Consolidated City of Indianapolis*, 976 F.2d 357, 361 (7th Cir. 1992), *cert. denied*, 508 U.S. 907 (1993).  "It is a balm for racial minorities, not political ones—even though the two often coincide."  *Id.* (citing *Whitcomb v. Chavis,* 403 U.S. 124, 153 (1971)).

And finally, Plaintiff's claim that Proposition 14 violates her "privileges and immunities" is an obvious "Hail Mary," which runs headlong into federal case law holding that the right to vote does not fall within the privileges and immunities clause of either Article IV, § 2, or the Fourteenth Amendment.

For all these reasons, the first amended complaint should be dismissed.  And, as no amendment could cure the defects in this litigation, leave to

amend should be denied.

## II.     FACTUAL BACKGROUND & LITIGATION HISTORY.

### A.     Proposition 14 (Top Two Candidate Open Primary Act).

Proposition 14, approved by California voters on June 8, 2010, is one of a series of reforms adopted by Californians in an effort to fix their dysfunctional government, which is plagued with extreme partisanship.

Proposition 14 amended the state Constitution to abolish political party primaries and replace them with a type of nonpartisan open primary election known as "top two," or "voter-nominated" primary election.  Under the prior system, only candidates and voters registered with a qualified political party could participate in that party's primary election; the top vote-getter in each party's primary became the party's official nominee, and each qualified party was guaranteed a place on the general election ballot for its nominee. Decline-to-State ("DTS") voters and those affiliated with non-qualified parties were prohibited from participating in the primary, where the election was often effectively decided.[1]  And candidates unaffiliated with a qualified party were excluded from the primary, and could access the general election ballot only through the more stringent "independent" nomination process (*see* Elec. Code §§ 8300-8304), or write-in candidacies.

Under Proposition 14 and its implementing legislation, SB 6,[2] the political parties no longer control the primary.  Instead, any candidate may run in the primary for congressional or state elective office (now called "voter-nominated" offices), and any voter may vote at the primary election for any candidate.  *See* CAL. CONST. art. II, § 5 (as amended by Proposition 14); Elec.

---

[1] DTS voters are voters who decline to register with any political party.  DTS voters could not vote in any party's primary under the former system, unless the party permitted it.  *See* Elec. Code § 2151.  Voters affiliated with a non-qualified party (or "political body") could not participate at all.

[2] Senate Bill 6 (2009-2010 Reg. Sess.), *codified at* Stats. 2009, ch. 1.

Code § 8002.5(b).[3]   The two candidates receiving the highest vote totals for each office at the primary then compete for the office at the ensuing general election.  *See* CAL. CONST. art. II, § 5; Elec. Code §§ 8141.5 and 15452.   Though the candidates may list their personal party "preference" on the ballot, the candidate is not the party's nominee, and no party is guaranteed a place on the general election ballot unless its preferred candidate is one of the top two vote-getters.   *Id.*   Except for the candidate's ability to list his or her party "preference" on the ballot, this system works much like the nonpartisan general/runoff system by which many local officials in California are elected.

### B.   Proposition 14 Was Consciously Modeled On Washington State's Top-Two System, Which Has Been Upheld Against Both Facial & As-Applied Challenges.

#### 1.   *Wash. State Grange v. Wash. Republican Party, 552 U.S. 442 (2008) ("Washington I").*

California's 1998 "blanket primary" law (Proposition 198), in which voters could vote for any candidate at the primary without regard to party affiliation and in which the top vote-getter from each party advanced to the general election as the party's nominee, was struck down in *Cal. Democratic Party v. Jones*, 530 U.S. 567 (2000), on the ground that it violated the political parties' associational rights by forcing them to accept—as the party's official nominee and "standard-bearer"—candidates chosen by other parties' voters, with whom the party might not even wish to associate.   At the time, the State of Washington had an identical system, which was also enjoined.[4]

In response, and based on language in *Jones* itself, the voters of

---

[3] "Voter-nominated offices" include: (1) Governor; (2) Lieutenant Governor; (3) Secretary of State; (4) State Treasurer; (5) Controller; (6) State Insurance Commissioner; (7) Member of the Board of Equalization; (8) Attorney General; (9) State Senator; (10) Member of the Assembly; (11) United States Senator; (12) Member of the U.S. House of Representatives. Elec. Code § 359.5

[4] *Democratic Party v. Reed*, 343 F.3d 1198 (9th Cir. 2003).

Washington adopted a top-two primary system in 2004, known as I-872. Several of Washington's political parties immediately challenged I-872, claiming it violated *Jones*. In *Washington I,* 552 U.S. at 442, the Supreme Court rejected the plaintiffs' facial challenge to Washington's system, distinguishing *Jones* on the ground that—unlike the blanket primary—the top-two primary does not actually choose party nominees.   Though candidates may express a *personal* preference for a party on the ballot, to inform the voters, those candidates are not the parties' nominees; the parties are free to endorse candidates, and to publicize their support to the voters.

Proposition 14 was explicitly modeled on the Washington system, taking its cue from the Court's ruling in *Washington I.   See* Interveners' Request for Judicial Notice, filed July 6, 2012 (Dkt. #21, hereafter "RJN"), p. 15 of 49 (Text of Prop. 14).  Like the Washington system, under Proposition 14 the primary does not choose the parties' nominees, though candidates may share their party "preference" with the voters.  The parties, however, remain free to endorse candidates, and Proposition 14 even permits the parties to print a list of their endorsements in the sample ballot.   *See* Elec. Code § 13302(b).

### 2.   As-Applied Claims Were Rejected In *Wash. State Republican Party v. Wash. State Grange,* 676 F.3d 784 (9th Cir. Jan. 19, 2012) ("*Washington II*").

The claim rejected by the Supreme Court in *Washington I* was a facial challenge to I-872.  Left undecided by the Supreme Court's opinion was an as-applied constitutional challenge, based on the premise that Washington voters might be confused as to whether candidates who express a "preference" for the party are the party's nominee.  The Court remanded the case for further proceedings on the as-applied claim.

On remand, the Washington State political party plaintiffs advanced (1) their as-applied "confusion"/forced association claims, (2) a challenge

alleging that minor parties may have difficulty advancing to the general election, (3) trademark claims, and (4) claims pertaining to the election of party officers in Washington.  On August 20, 2009, the federal district court granted the State's motion to dismiss the ballot access claim.  *See* RJN, pp. 18-46 of 49 (Aug. 20, 2009, order in *Wash. State Republican Party v. Wash. State Grange*, Case No. 05-cv-00927-JCC (W.D. Wash.)).  The plaintiffs and defendants (the State of Washington and the Grange) then filed cross-motions for summary judgment on the remaining claims.  The district court granted summary judgment in favor of the defendants on the as-applied claim and trademark claims, and granted summary judgment to the plaintiffs on the party officer claims.  *Wash. State Republican Party v. Wash. State Grange,* 2011 U.S. Dist. LEXIS 2448 (W.D. Wash. Jan. 11, 2011).  The plaintiff political parties appealed the dismissal of their ballot access claims and the grant of summary judgment on the "confusion" and trademark claims.

On January 19, 2012, the Ninth Circuit unanimously affirmed the trial court's rulings, holding that (1) the minor parties' associational rights were <u>not</u> unconstitutionally infringed by the difficulties their preferred candidates may face in advancing to the general election ballot, (2) the plaintiffs had failed to create a triable issue of fact with respect to the as-applied "confusion" issue, and (3) that plaintiffs had failed to state a claim for trademark violation.  *Washington II,* 676 F.3d 784 (9th Cir. Jan. 19, 2012).[5]

## C.    Prior Unsuccessful Litigation Against Proposition 14.

This is not the first court to be presented with a challenge to Proposition 14.  Indeed, Proposition 14 has been subject to sustained (and unsuccessful) legal attack since shortly after its adoption in 2010.

---

[5] The Washington Democratic and Libertarian Parties have filed petitions for *certiorari* in this case (Case Nos. 11-1263 and 11-1266).  The Respondents filed responses on June 22, and the brief has been distributed for conference on September 24, 2012.

### 1. *Field v. Bowen* (S.F. Superior Court/Cal. Ct. App.).

In July 2010, six plaintiffs brought a challenge to Proposition 14 and SB 6 in San Francisco Superior Court, arguing that (1) it is unconstitutional to allow candidates to state a preference only for "qualified" political parties; and (2) it is unconstitutional to prevent voters from casting write-in ballots at the general election.  Based on those contentions, the plaintiffs argued that Proposition 14 and SB 6 must be enjoined in their entirety, and the pre-Proposition 14 partisan system should be reinstated.  The trial court granted a motion by IVP, CADOP and Mr. Maldonado to intervene in that action.

Plaintiffs unsuccessfully sought a preliminary injunction from the trial court, and from the First Appellate District and California Supreme Court.[6]

On September 19, 2011, the Court of Appeal issued a unanimous, published, thirty-page opinion affirming the trial court's denial of a preliminary injunction, and rejecting plaintiffs' claims on the merits as a matter of law.  *Field v. Bowen*, 199 Cal. App. 4th 346 (1st Dist. 2011).

Judgment was entered in that action on behalf of the defendants and interveners (including IVP, CADOP and Mr. Maldonado) on January 27, 2012.  The time for Plaintiffs to appeal that judgment has long since passed.

### 2. *Chamness v. Bowen* (C.D. Cal.).

In February 2011, while the appeal in *Field* was pending, a new case was filed in this Court, raising claims very similar to those in *Field*.  *Chamness v. Bowen*, Case No. 11-cv-01479-ODW-FFM (C.D. Cal. filed Feb. 17, 2011).  IVP, CADOP and Mr. Maldonado intervened as defendants in that action as well.

Following unsuccessful attempts, in both the district court and Ninth Circuit,[7] to get a preliminary injunction against the use of Proposition 14 at

_____

[6] *Field v. Superior Court*, Case No. A129829 (Cal. Ct. App. 1st Dist.) (writ denied Oct. 14, 2010); *Field v. Superior Court*, Case No. S188436 (Cal.) (writ denied Dec. 15, 2010).

[7] *See Chamness v. Bowen*, Case No. 11-55534 (9th Cir. filed Mar. 30, 2011).

the 2012 elections, the federal plaintiffs moved for summary judgment.  On August 23, 2011, Judge Otis D. Wright II denied plaintiffs' motion and *sua sponte* granted summary judgment on behalf of the defendants and interveners.  *Chamness v. Bowen*, 2011 U.S. Dist. LEXIS 94876 (C.D. Cal. Aug. 23, 2011).   The *Chamness* plaintiffs immediately filed an appeal. *Chamness v. Bowen*, Case No. 11-56449 (9th Cir. filed Aug. 24, 2011).  The Ninth Circuit denied Appellants' motion to expedite the appeal to resolve it before the 2012 elections; the appeal is briefed and awaits oral argument.

### 3.   *Rubin v. Bowen* **(Alameda Superior Court).**

A third suit challenging Proposition 14 was filed on November 21, 2011, in Alameda County Superior Court.   *Rubin v. Bowen*, Case No. RG11605301. The *Rubin* plaintiffs alleged that (1) Proposition 14 will make it more difficult for minor parties to have their preferred candidates advance to the general election, and thereby unduly burdens the rights of minor parties and their supporters to ballot access at the general election; (2) voters were likely to be "confused" by the fact that candidates may indicate their party "preference" on the ballot into thinking such candidates are the parties' "standard-bearer"; and (3) Proposition 14 violates the Elections Clause of the U.S. Constitution.

On January 13, 2012, the plaintiffs filed a motion to preliminarily enjoin the use of Proposition 14 at the 2012 elections.  The Secretary of State filed a demurrer, in which IVP, CADOP, Mr. Maldonado and Mr. Takashima (as Interveners) joined, and the Secretary and Interveners both opposed the motion for preliminary injunction.  On April 24, 2012, the court denied the motion for preliminary injunction and sustained demurrers, with leave to amend, as to each of the three causes of action alleged in the original complaint, based largely on the rulings in *Washington I* and *Washington II.*

The plaintiffs in *Rubin* filed an amended complaint in May 2012, seeking to re-characterize their claims as as-applied challenges, rather than

facial challenges.  The Secretary of State and Interveners demurred to the amended complaint as well.  A hearing on the pending demurrers is presently set for September 25, 2012.

### D.    Previous proceedings in this case.

Plaintiff initially filed this action June 26, 2012, seeking to enjoin the Secretary of State from issuing certificates of election to the two candidates for Congress who were nominated to advance to the November 2012 general election in her congressional district (CD 8).  Plaintiff alleged violations of the First, Fourteenth and Fifteenth Amendments; the federal Voting Rights Act, and substantive due process.  She sought interim relief in the form of a preliminary injunction preventing the two "Republican" candidates from advancing to the general election in November.

Following oppositions by Defendant Secretary and by Interveners, the proponents of Proposition 14, and Plaintiff's reply, this Court ruled that Plaintiff had failed to show a likelihood of success on the merits of her claims, or even a serious question; and that the balance of hardships favored denial of the requested injunction.

Plaintiff filed a first amended complaint ("FAC") on July 31, 2012.

## III.    <u>**KEY ALLEGATIONS IN THE FIRST AMENDED COMPLAINT**</u>.

Plaintiff in this case seeks declaratory and injunctive relief against the implementation of Proposition 14 in November and thereafter.

The essence of Plaintiff's claim is that she and other Democrats have the constitutional right and the right under Section 2 of the federal Voting Rights Act to vote for a candidate with whose opinions they agree—namely a Democrat.  Plaintiff wants Proposition 14's system of non-partisan primary elections eliminated and the prior system of partisan primary elections restored, so that a Democrat is assured of advancing to the general election. (FAC, Prayer ¶ 6).

Plaintiff alleges that Proposition 14 violates Section 2 of the Voting Rights Act (and the First, Fourteenth and Fifteenth Amendments to the U.S. Constitution) because it dilutes the right of African Americans to vote for Democrats by creating a substantial likelihood that in some electoral districts, like Congressional District 8, a Democrat will not be among the Top Two vote getters in the Primary Election. (FAC, ¶¶ 3 and 11(c).)

Plaintiff further alleges that Proposition 14 violates the 14th Amendment to the United States Constitution by abolishing Plaintiff's and Democrats' alleged right to have a Democratic party representative in the general election for Congress in violation of their associational rights and right to equal protection, due process, as well as the privileges and immunities clauses. (FAC, ¶¶ 18-29.)

## IV.   STANDARD GOVERNING MOTIONS TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) & (6).

### A.   Challenge to Standing Under Federal Rule 12(b)(1).

A challenge to standing is properly raised in an FRCP 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). A jurisdictional challenge under FRCP 12(b)(1) may be made on the face of the pleadings or in a factual attack, disputing the truth of the allegations in the pleading. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* (internal quotations omitted). If the motion is a facial attack, the court must accept all facts pled in the complaint as true and draw all reasonable inferences in favor of the plaintiff.

## B.    Failure To State A Claim Under Federal Rule 12(b)(6).

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *See Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable theory. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In reviewing the motion, the Court will assume the truth of all factual allegations and will construe them in the light most favorable to the nonmoving party. *See Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002). However, the court is not bound to accept as true a legal conclusion couched as a factual allegation. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679-80 (2009). However, the conclusions contained in the pleading "are not entitled to the assumption of truth." *Id.*   In other words, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (citation and internal quotation marks omitted). Moreover, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

In ruling on a motion under Rule 12(b)(6), the court may consider facts which may be judicially noticed, *Mullis v. United States Bankruptcy Court*, 828 F.2d 1385, 1388 (9th Cir. 1987), and matters of public record, including pleadings, orders, and other papers filed with the court. *Mack v.*

*South Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986).

## V. EACH OF PLAINTIFF'S FOUR CLAIMS FOR RELIEF IS FATALLY DEFECTIVE, AND SHOULD BE DISMISSED WITH PREJUDICE.

Plaintiff's first amended complaint should be dismissed with prejudice because it fails to state any cognizable claim, Plaintiff lacks standing to bring one of her claims, and no amendment can cure the defects.

### A. Plaintiff Lacks Standing To Bring Her First Claim For Relief, That Proposition 14 Violates The Freedom of Association, And That Claim Is Also Foreclosed By Two Controlling Cases: *Washington I* and *Washington II*.

The main gravamen of Plaintiff's "First Claim for Relief" seems to be that her right of association, and that of other Democrats, is infringed by the fact that she cannot vote for ("associate with") a Democratic candidate at the general election because none advanced under the Top Two system.[8]  In other words, Plaintiff wishes to return to a partisan primary system in which only Democrats vote for their standard-bearer.  That way, Plaintiff will not be faced in the general election with the prospect of voting for one of two Republicans.  There is no merit whatsoever to Plaintiff's claim.

#### 1. Plaintiff's lack of standing.

First of all, in the context of the regulation of the primary election

---

[8] Plaintiff variously seeks to ground this claim in the Fourteenth Amendment, the First Amendment, the privileges and immunities clause, and substantive due process.  Ultimately, the specific constitutional provision relied upon is irrelevant, however, because the federal courts—including the Supreme Court and the Ninth Circuit—adjudicate election law claims under various constitutional provisions "collectively using a single analytic framework."  *Dudum v. Arntz*, 640 F.3d 1098, 1108 n.15 (9th Cir. 2011) (citing *Anderson v. Celebrezze*, 460 U.S. 780, 787 n.7 (1983), and *LaRouche v. Fowler,* 152 F.3d 974, 987-88 (D.C. Cir. 1998)).  See also *Partnoy v. Shelley,* 277 F. Supp. 2d 1064, 1072 (S.D. Cal. 2003) (in resolving challenges to election laws courts employ the "same basic mode of analysis" regardless of the constitutional provision that plaintiffs claim is violated).

process the "right of association" is a right that belongs to the political party itself—not to individual voters.  This fact is amply demonstrated by the primary cases upon which Plaintiff relied in her unsuccessful motion for preliminary injunction: *California Democratic Party v. Jones, supra*, and *Democratic Party of the United States of America v. Wisconsin ex rel. La Follette*, 450 U.S. 107 (1981).  Because this is a right belonging to the party, individual voters lack standing to raise such a claim.  *See Osburn v. Cox*, 369 F.3d 1283, 1287-88 (11th Cir.), *cert. denied*, 543 U.S. 943 (2004) (affirming district court's dismissal of individual voters' associational claim alleged in a challenge to Georgia's open primary for lack of standing); *Righeimer v. Jones*, 2000 U.S. Dist. LEXIS 13313 (E.D. Cal. Sept. 14, 2000) (in a challenge to California's 1998 blanket primary system, holding, "the First Amendment associational rights at issue belong solely to the association, here, the Republican Party, not to any individual candidate or voter."); *Beck v. Ysursa*, 2007 U.S. Dist. LEXIS 86928 (D. Idaho Nov. 27, 2007) (dismissing similar associational challenge to Idaho's open primary).  Because she lacks standing to bring this claim, Plaintiff's First Claim for Relief should be dismissed without leave to amend.

### 2.    Failure to state a claim.

Secondly, even if Plaintiff did have standing to bring this claim, there is no merit to it.  As this Court recognized, in denying Plaintiff's motion for preliminary injunction:

> Plaintiff provides no citations to authority in support of her novel theory that she has a constitutional right to vote for a candidate from a party of her choice in a general election. Indeed, limitations on an individual candidate's access to the ballot are routinely upheld when those limitations are reasonable, nondiscriminatory, and further a state's important regulatory interests. Burdick[ v. Takushi], 504 U.S. [428,] 434, 112 S. Ct. at 2063-64 [1992]. . . . Without relevant case law to support her assertion that such deprivations amount to a constitutional

violation, the Court cannot conclude that Plaintiff is likely to succeed on the merits of her claim or that she has raised a serious question.

Order Granting Ex Parte Application to Intervene & Denying Plaintiff's Motion for Preliminary Injunction (Dkt. #14), p. 4.

Not only is there no authority supporting Plaintiff's claim, there is in fact case law that effectively forecloses it: *Washington I* and *Washington II*. Both of those cases expressly rejected "freedom of association" challenges to Washington State's top two primary law, on which Proposition 14 is closely modeled.

Simply put, Plaintiff's First Cause of Action is properly subject to dismissal for failure to state a claim under Rule 12(b)(6) due to the "lack of a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).[9]  Again, in light of the binding Ninth Circuit and Supreme Court precedents on this issue, amendment cannot cure the defects in this Claim for Relief, so dismissal should be with prejudice.

### B.    Plaintiff's First And Second Claims For Relief Should Be Dismissed, To The Extent They Allege Racial Vote Dilution In Violation Of The Fourteenth And Fifteenth Amendments, Because They Fail To State A Claim.

Plaintiff's "Second Claim for Relief" alleges that Proposition 14 violates the Fifteenth Amendment, which provides in relevant part, "The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color or previous condition of servitude."  U.S. CONST. amend. XV, § 1.  Likewise, her First Claim for Relief contains allegations that the rights of *African American* voters specifically will be abridged by the implementation of Proposition 14.

---

[9] Indeed, if Plaintiff's legal theories in this case were accepted, all nonpartisan elections would seem to be unconstitutional as well.

However, to the extent that Plaintiff seeks to ground her complaint in these Civil War Amendments, she also fails to state a claim upon which relief can be granted.

First of all, it is questionable whether the Fifteenth Amendment would even apply to the type of claim that Plaintiff brings.  She does not claim that she is being denied the right to register and vote in general elections by virtue of her race; rather, she is essentially claiming that her vote will be *diluted* by virtue of her inability to vote for a candidate of her liking.  "The Supreme Court has recognized that the Fifteenth Amendment protects the right to register and to vote, but it has never held or even suggested that vote dilution violates the Fifteenth Amendment."  *Osburn*, 369 F.3d at 1288 (citing *Reno v. Bossier Parish Sch. Bd.*, 528 U.S. 320, 334 n.3 (2000) ("*Bossier Parish II*")).

More importantly, however, Plaintiff would only be entitled to relief under the Fourteenth and Fifteenth Amendment if she could prove that Proposition 14 was adopted for "a racially discriminatory purpose chargeable to the state."  *Lucas v. Townsend,* 967 F.2d 549, 551 (11th Cir. 1992) (per curiam).  *See also  Reno v. Bossier Parish Sch. Bd.,* 520 U.S. 471, 481 (1997) ("*Bossier Parish I*") ("Since 1980, a plaintiff bringing a constitutional vote dilution challenge,  whether  under  the Fourteenth or Fifteenth  Amendment, has been required to establish that the state or political subdivision acted with a discriminatory purpose."); *NAACP v. Jones*, 131 F.3d 1317, 1321-22 (9th Cir. 1997) ("the Equal Protection Clause is not implicated by classifications with disparate racial impact in the absence of discriminatory intent.").

The first amended complaint does not contain any allegation that the voters of California adopted Proposition 14 for a racially discriminatory purpose.   To the contrary, the voter pamphlet materials prepared in connection with that measure, and distributed to the voters (which is judicially-noticeable and therefore properly considered in connection with

this motion), clearly demonstrates that no such illicit motive did underlie the voters' decision—rather, California's voters adopted Proposition 14 for the purpose of reforming their dysfunctional government, to:

- "Reduce gridlock by electing the best candidates to state office and Congress, regardless of political party;

- "Give independent voters an equal voice in primary elections; and

- "Elect more practical individuals who can work together for the common good."

*See* RJN, *supra*, p. 14 of 49 (Rebuttal To Argument Against Proposition 14).

Absent proof of a racially discriminatory purpose underlying Proposition 14, no claim can be stated under the Fourteenth and Fifteenth Amendment, and the First and Second Claims for Relief should be dismissed for failure to state a claim.  Moreover, because the judicially-noticeable ballot pamphlet demonstrates that a non-discriminatory motive underlay the adoption of Proposition 14, granting leave to amend these Claims for Relief would be futile and so the dismissal should be granted with prejudice.

## C. Plaintiff Third Claim For Relief Has Not Stated A Claim Under Section 2 Of The Voting Rights Act.

Plaintiff's "Third Claim for Relief" urges that Proposition 14 violates Section 2 of the Voting Rights Act (42 U.S.C. § 1973), which makes it illegal to deny or abridge, on account of race, any person's right to vote.  In essence, Plaintiff's claim boils down to a very simple premise: that because she is African American she has an absolute right to vote for a Democrat at the general election, because African American voters historically favor Democrats (and vice versa).  Such is not the law.  "The Voting Rights Act does not guarantee that nominees of the Democratic Party will be elected, even if black voters are likely to favor that party's candidates."  *Baird*, 976 F.2d at 361.  "It is a balm for racial minorities, not political ones—even though the

---

1   two often coincide." *Id.* (citing *Whitcomb,* 403 U.S. at 153).

2   As Plaintiff's original Complaint, first amended complaint, and the
3   election results from the 2012 primary in Plaintiff's congressional district
4   make clear, it is politics—not race—that resulted in two Republicans being
5   nominated for the November election in Congressional District 8.  First, it
6   appears that the reason a Democrat did not advance to the general election is
7   that the two Democratic candidates who ran (Jackie Conaway, wife of
8   Plaintiff's counsel of record, and John Pinkerton), split the vote.  Had only
9   one of them run, he or she could have garnered 24% of the vote in CD 8 and
10  would have been the top vote-getter in a field featuring ten Republican
11  candidates and one without a party preference (Anthony Adams, who was
12  previously elected to the California Assembly as a Republican).  *See* RJN,
13  Exhibit D.[10]  In other words, Plaintiff's preferred candidate lost, not because
14  of vote dilution, but because of bad politics and poor strategic planning by
15  Democrats.

16  Second, as the first amended complaint itself acknowledges, CD 8 is one
17  of the few left in California in which Republican voters have a substantial
18  registration edge (of at least 10%) over Democratic voters.   (FAC, ¶ 14.)
19  Plaintiff has made no allegation that White voters in this District oppose
20  Democratic candidates for racial reasons, rather than political ones.  "[W]hen
21  racial antagonism is not the cause of an electoral defeat suffered by a minority
22  candidate, the defeat does not prove a lack of electoral opportunity but a lack
23  of whatever else it takes to be successful in politics (say, failure to support
24  popular programmatic initiatives, or failure to reflect the majority's
25  ideological viewpoints, or failure to appreciate the popularity of an
26  incumbent). Section 2 does not bridge that gap—nor should it."  *Vecinos De*

27  _____
28  [10] Again, because these results are judicially-noticeable they are properly
    considered in connection with this motion.  *Mullis*, 828 F.2d at 1388; *Mack*, 798
    F.2d at 1282.

*Barrio Uno v. City of Holyoke*, 72 F.3d 973, 981 (1st Cir. 1995).   *See also League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 999 F.2d 831, 854 (5th Cir. 1993) (en banc) ("Electoral losses that are attributable to partisan politics do not implicate the protections of § 2.").

Instructive on this point is the Supreme Court's decision in *Whitcomb v. Chavis*, cited above.[11]   In *Whitcomb,* the lower court had held that plaintiffs, African-American residents of Marion County, Indiana, had established that their voting strength had been diluted in state legislative elections. The lower court found that plaintiffs were a cognizable minority with political interests that differed from those of the white majority and that the at-large election structure prevented them from electing their share of the county's representatives to the state legislature.   403 U.S. at 134-35. The Supreme Court reversed, concluding that cognizable minority status, plus a lack of success at the polls, did not equate to vote dilution.   *Id.* at 148-49.   The Court found nothing in the record to indicate that African-Americans "were not allowed to register to vote, to choose the political party they desired to support, to participate in its affairs or to be equally represented on those occasions when legislative candidates were chosen." *Id.* at 149. The Court concluded that African-American-supported candidates lost not because of

---

[11]   *Whitcomb* predated the 1982 amendments to Section 2, but those amendments were expressly intended to return the law of vote dilution after the plurality opinion in *Mobile v. Bolden* to the paradigm set forth in *Whitcomb* and *White v. Regester*:   "Amended § 2 is intended to codify the 'results' test employed in *Whitcomb v. Chavis*, 403 U.S. 124 (1971), and *White v. Regester*, 412 U.S. 755 (1973), and to reject the 'intent' test propounded in the plurality opinion in *Mobile v. Bolden*, 446 U.S. 55 (1980). S. Rep. No. 97-417, pp. 27-28 (1982) (hereinafter S. Rep.). Whereas *Bolden* required members of a racial minority who challenged impairment of their voting strength to prove that the challenged electoral system was created or maintained with a discriminatory purpose and led to discriminatory results, under the results test, 'plaintiffs may choose to establish discriminatory results without proving any kind of discriminatory purpose.' S. Rep., at 28." *Thornburg v. Gingles,* 478 U.S. 30, 83-84 (1986) (O'Connor, J., concurring).

their identification with the African-American community but because—just like in CD 8—they were Democrats in a Republican county. *Id.* at 152-53. The lower court's finding that the "voting power" of the African-American community "may have been 'cancelled out' . . . seems a mere euphemism for political defeat at the polls." *Id.* at 153. The Court elaborated:

> On the record before us plaintiffs' position comes to this: that although they have equal opportunity to participate in and influence the selection of candidates and legislators, and although [African Americans] vote[] predominantly Democratic and that party slates candidates satisfactory to [them], invidious discrimination nevertheless results when [African Americans], along with all other Democrats, suffer[] the disaster of losing too many elections. . . . The mere fact that one interest group or another concerned with the outcome of Marion County elections has found itself outvoted and without legislative seats of its own provides no basis for invoking constitutional remedies where, as here, there is no indication that this segment of the population is being denied access to the political system.

403 U.S. at 155.

Instructive, too, is *Osburn v. Cox*, also cited above.  In that case, the plaintiffs challenged, under Section 2, Georgia's use of an open primary in the 2002 Democratic primary in Congressional District 4.  They alleged that the votes of African American voters for incumbent Congresswoman Cynthia McKinney were diluted by the "crossover" votes of white Republican voters who favored Ms. McKinney's (ultimately successful) opponent, Denise Majette.  The Eleventh Circuit held, "The facts alleged by Plaintiffs, *i.e.*, that Republican voters crossed-over and voted for Majette rather than McKinney, do not demonstrate a violation of Section 2 of the Voting Rights Act.  The Plaintiffs have not alleged facts to support a claim that the minority group has been excluded from meaningful access to the political process due to the interaction of racial bias in the community with the challenged voting system." 369 F.3d at 1289.

Finally, it is significant—and fatal to Plaintiff's claim—that African Americans only comprise approximately 9% of the population of this District. (*See* FAC, ¶¶ 10 & 14.)  Under such circumstances, there is <u>no</u> voting system that would allow African American voters to "elect their candidate of choice based on their own votes and without assistance from others.  Recognizing a § 2 claim in this circumstance would grant minority voters 'a right to preserve their strength for the purposes of forging an advantageous political alliance.' [Citations.] Nothing in § 2 grants special protection to a minority group's right to form political coalitions. '[M]inority voters are not immune from the obligation to pull, haul, and trade to find common political ground.'" *Bartlett v. Strickland*, 556 U.S. 1, 14-15 (2009).

In *Bartlett*, the Supreme Court held that minority voters who could constitute no more than 39% of the eligible voters in an electoral district could not state a claim for illegal vote dilution under Section 2.  The Court held that minority voters cannot bring a claim under Section 2 unless they have the ability to elect a candidate on their own, and without the assistance of other voters, by constituting at least 50%+1 of eligible voters in the district. The Court explained:

> "[u]nless minority voters possess the *potential* to elect representatives in the absence of the challenged structure or practice, they cannot claim to have been injured by that structure or practice." [*Thornburg v. Gingles*,] 478 U.S. [30] at 50, n. 17 [1986].  .  .  .  the first *Gingles* requirement (of a majority of eligible voters) is "needed to establish that the minority has the potential to elect a representative of its own choice in some single-member district." [*Growe v. Emison*,] 507 U.S. [25] at 40 [1993].  Without such a showing, "there neither has been a wrong nor can be a remedy." *Id.*, at 41 . . . .  There is a difference between a racial minority group's "own choice" and the choice made by a coalition.

*Bartlett*, 556 U.S. at 15.

In the same vein, there is no allegation in the Complaint that African

American Democrats would have the "potential to elect a representative of [their] own choice" in Congressional District 8 in the absence of the Top Two Primary, or even that Democrats more generally would have the potential to elect a representative of their choice.  (This is, after all, a district that has been represented by Republican congressmen for decades.)   Given the small proportion of the District's population that is African American, Plaintiff's supposed claim under Section 2 is to a "right" to form a coalition with other, non-African American Democrats—a right that *Bartlett* expressly rejected.

Because Plaintiff has failed to state a claim under Section 2—and because, as just discussed, such a claim is impossible in the Congressional District in which Plaintiff lives—the Third Claim for Relief should be dismissed with prejudice.[12]

**D.   Plaintiff's Fourth Claim For Relief Has Not Stated A Claim Under The Privileges & Immunities Clauses Of The Fourteenth Amendment Or Article IV, § 2, cl. 1.**

Finally, as an obvious claim of last resort, Plaintiff seeks a declaration that Proposition 14 violates her rights under the Privileges & Immunities Clause of Article IV, § 2, cl. 1 of the United States Constitution and the Fourteenth Amendment.  This claim, too, lacks merit.

Article IV, § 2, cl. 1, provides that "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."  "This clause requires only that states give to citizens of every other state the

---

[12] Plaintiff lacks standing to challenge the operation of Proposition 14 in districts other than that in which she lives.  *See Lopez v. County of Merced*, 473 F. Supp. 2d 1072, 1080 (E.D. Cal. 2007) (three-judge voting rights court) ("there can be no infringement of a plaintiff's right to vote in an election in which he or she is not eligible to vote."); *Winstead v. Stodola*, 2007 U.S. Dist. LEXIS 68049, *7-*8 (E.D. Ark. Sept. 13, 2007) (denying standing under the Voting Rights Act to plaintiffs challenging councilmanic wards in Little Rock, even though plaintiffs resided in Little Rock and voted in City elections, because "Plaintiffs d[id] not allege that they reside in minority wards, or that their ward representative is [minority].").

same privileges and immunities that their own citizens enjoy. *See Hague v. Committee for Indus. Org.*, 307 U.S. 496, 511, 59 S. Ct. 954, 83 L. Ed. 1423 (1939)." *McKay v. Thompson*, 226 F.3d 752, 757 (6th Cir. 2000), *reh'g and reh'g en banc denied*, 2000 U.S. App. LEXIS 27840 (6th Cir. Oct. 27, 2000), *cert. denied*, 532 U.S. 906 (2001). The provision does not restrict a State in its prescription of qualifications for elective office. *Id.* (rejecting application of constitutional provision to voter registration statutes in Tennessee); *Baldwin v. Fish & Game Comm'n*, 436 U.S. 371, 383 (1978).

The Privileges & Immunities Clause of the Fourteenth Amendment is likewise inapposite. *Johnson v. Bredesen*, 624 F.3d 742, 752 (6th Cir. 2010), *reh'g en banc denied*, 2010 U.S. App. LEXIS 26390 (6th Cir. Dec. 17, 2010), *cert. denied sub nom., Johnson v. Haslam*, 563 U.S. ___, 131 S. Ct. 2903 (U.S. 2011) ("no authority recognizes the right to vote in federal elections as a privilege or immunity of United States citizenship. Indeed, dicta in several historical Supreme Court cases suggest the opposite.").

Because these two clauses do not apply to claims such as Plaintiff's she is unable to state a claim upon which relief can be granted, and this Claim for Relief should be dismissed without leave to amend.

## VII. <u>CONCLUSION</u>.

Each of the Claims for Relief contained in Plaintiff's First Amended Complaint fails to state a claim upon which relief can be granted, and no amendment can cure the defects in those claims. Thus, the entire First Amended Complaint should be dismissed without leave to amend.

///

///

///

///

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Dated:  August 16, 2012

NIELSEN MERKSAMER
      PARRINELLO GROSS & LEONI LLP

By: /s/        Marguerite Mary Leoni
                  Marguerite Mary Leoni

By: /s/        Christopher E. Skinnell
                  Christopher E. Skinnell

*Attorneys for Intervener-Defendants*
INDEPENDENT VOTER PROJECT,
CALIFORNIANS TO DEFEND THE
OPEN PRIMARY, ABEL MALDONADO
AND DAVID TAKASHIMA