ROBERT D. CONAWAY Bar No. 119657
LAW OFFICE of ROBERT D. CONAWAY
222 East Main Street, Suite 212
Barstow CA 92311
Mailing address: PO Box 865
Barstow CA 92312-0865
(760) 256-0603 PHONE
(760) 256-0660 FAX

Attorneys for ELISE BROWN
Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELISE BROWN,<br><br>        Plaintiff,<br><br>vs.<br><br>DEBRA BOWEN<br><br><br><br><br><br>        Defendant. | 2:12-cv-05547-PA-SPx<br><br>**PLAINTIFF ELISE BROWN's OPPOSITION TO INTERVENOR's FRCP 12(b)(6)-(7) MOTION TO DISMISS**<br><br>Date:  October 1, 2012<br>Time:  1:30 p.m.<br>Courtroom: 15<br>Judge: The Honorable Percy Anderson<br>Action filed: 6/26/2012 |

## I. THE INTERVENOR DID NOT EVEN ATTEMPT TO MEET AND CONFER BEFORE BRINING ITS MOTION AND SHOULD BE DENIED

The Intervenor for reasons that are unclear, who did meet and confer with Mrs. Brown BEFORE opposing the motion for preliminary injunction (but neglected to report that to the court leaving the court with the impression that plaintiff opposed intervenor's intervention), did not even attempt to meet and confer before bringing its FRCP 12b6 motion. Additional issues were raised in the First Amended complaint that should have been discussed in a good faith meet and confer attempt.

That NO attempt was made to meet and confer and that coupled with comments re plaintiff's "Hail Mary", are religiously offensive, just as failing to represent to the Court we did meet and confer on the motion for injunctive relief.

## II. MRS. BROWN IS NOT SUING FOR A POLITICAL PARTY BUT HERSELF AS AN AFRICAN AMERICAN VOTER WHO IS LOSING THE RIGHT TO VOTE FOR A DEMOCRAT IN A GENERAL ELECTION FOR THE FIRST TIME IN NEARLY A HALF CENTURY

It is probably safe to say that Mrs. Brown has been voting longer that moving counsel has been practicing and maybe even longer than they have been alive.

For African Americans coming back from WW II, the mission, after shedding their blood in defense of this nation, was to gain the full privileges of citizenship which obviously included the unfettered right to vote. No African American should have to leave White Primary states like Texas, Alabama, Mississippi and Georgia to be able to vote and now arguably White Primary Districts like California's 8th, nor have endure threats of sanctions for raising a voting right claim.

The effect of the Top 2 primary effective will leave Mrs. Brown with having to consider, if she wants to vote for a democrat for Congress, whether she should move to move to a traditional party primary state–that such a decision-making process might have to be even considered, is constitutionally offensive–we owe our African American voters more.

But when all that is digested, it is Mrs. Brown's claim that should be examined, not any political parties' claim or rights.

Democratic party affiliation and propensity to vote democratic by African Americans is what is issue, not political party rights. In the motion for preliminary injunction and the complaint studies which reference discriminatory impacts that result from such types of legal changes (like Prop 14) are criticized as discriminating against African American voting rights. Like the first Brown case (Brown v Board of Education which relied upon Swedish studies that challenged the "separate but equal" doctrine of another Court), this Brown, case, if Classic v United States is not dispositive, needs to be examined after some discovery and expert testimony taken.

Asking the court for the costs of suit to be awarded against Mrs. Brown [when the Washington State Grange case is being conference by the SCOTUS of September

24, 2012], on a matter THEY chose to intervene in, is a bit over the top.

### III. THE RIGHT TO VOTE FOR A REPRESENTATIVE IN CONGRESS AT THE GENERAL ELECTION IS AS A MATTER OF LAW RESTRICTED TO THE SUCCESSFUL PARTY CANDIDATE(s) AT THE PRIMARY, NOT TO THE TWO HIGHEST VOTE GETTERS

In United States v Classic, 313 U.S. 299,313 (1941)] a rule of law was recognized [in a case ruling that Article I Section 2 created federal jurisdiction over primaries]:

> "The right to vote for a representative in Congress at the general election is, as a matter of law, *thus restricted to the successful party candidate at the primary*, to those not candidates at the primary who file nomination papers, and those whose names may be lawfully written into the ballot by the electors"(emphasis added)Id at 316-317

Prop 14's Top Two Primary law has created in at least eight Congressional Districts [Brown 's District No. 8 and in at least 7 other districts: 15, 30, 31, 35, 40, 43 & 44] results that violate the rule of law stated in Classic, hence presenting the Court with a facial violation. The Court in Class was careful to point out that :

> "the right to choose, secured by the Constitution, is the right of qualified voters to cast their ballots and have them counted at Congressional elections [and] [that] this court has consistently held that this is right secured by the Constitution [citations] [a]nd since the Constitutional command is without restriction or limitation, the right unlike those guaranteed by the Fourteenth and Fifteenth Amendments, is secured against the action of individuals as well as of states." United States v Classic at 315.

The right recognized in the Classic case can be brought against offending state action under 42 USC 1983 as Classic states the policy and right which Bowen defends the violation of. Mrs. Brown brings this action to enforce it for her INDIVIDUAL rights and for all other African Americans whose primary right has been similarly abridged [more on that later].

To grant the intervenor's motion will require this court to overrule or somehow distinguish Supreme Court authority (that for all the authority cited in intevenor's motion, is not listed). The right of the people to choose Representatives in Congress is a right established and guaranteed by Art. I, § 2 of the Constitution, and hence is one secured by it to those citizens and inhabitants of the State who are entitled to exercise the right. Classic, Id. 313 U. S. 314. The primary election is an integral part of the procedure for choosing representatives, so by tampering with it so to interfere with the process and remove top vote

getters from each party fielding a candidate, is more than regulation–it is the deprivation of fundamental individual voting rights

## IV. THE 14th AMENDMENT BASED CLAIMS ARE ACTIONABLE AS PLED

*First*, it needs to be said, the 14th Amendment facially, without more, makes a race-silent (and neutral) statement of public policy and backs it up with a unique sanction (where abridgement is done by State Action, electoral votes can be taken as a sanction). What part of the 14th Amendment policy is not clear *"when the right to vote at any federal election ... is denied to any... inhabitant of a state...the basis of representation therein shall be reduced."* U.S. Const. XIV, § 2. .

*Second,* the 14th Amendment forbids a state from making or enforcing any law which abridges the privileges and immunities of citizens of the United States. Smith v Allwright 321 U.S. 649, 657 (1944). Voting is such a privilage.

Since the functional effect of Prop 14 in California Congressional Districts 8, 15, 30, 31, 35, 40, 43 & 44 is to restrict voting to just one party, and that the possible outcome was acknowledged in the ballot statement, merely shows the plan and scheme's discriminatory effect was known of, possibly a calculated effect and a prophylactic warning was inserted to later in litigation try and blunt Constitutional challenges that might be raised.

Since United States v Cruikshank, laws in violation of the Constitution (as United States v Classic has identified Prop 14's outcome to be" "are absolute[ly] void by virtue of that prohibition [referring to the Court's interpretation of Article I, Section 2][and] [s]o far as related to rendering null and void the obnoxious law, it is done already." United States v Cruikshank et al 25 F. Cas. 707 (C.C.D. La. 1874) affirmed, 92 U.S. 542 (1876)

*Third, to the extent Prop 14 denies Mrs. Brown the right to cast an effective vote for the party she is a member of in all such upcoming & future federal elections (and which has been part of the privileges she has enjoyed for 50 years as an African American woman in California) because of the complained of state action, the claim can be sued on under the 14th Amendment, not because a political party's associational right is in issue, but her individual associational right."* It is beyond debate that freedom to

engage in association for the advancement of beliefs and ideas is an inseparable aspect of the `liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech." NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 460 (1958); see NAACP v. Button, 371 U.S. 415, 430 (1963); Bates v. Little Rock, 361 U.S. 516, 522 -523 (1960)."The right to associate with (or vote for representatives of) the political party of one's choice is an integral part of this basic constitutional freedom." Kusper v Pontikes, 414 U.S. 51, 57(1973).

### V. EVEN WERE WE NOT LOOKING AT THE REQUIREMENT THAT THE SUCCESSFUL PARTY CANDIDATE AT THE PRIMARY" ADVANCE, MRS. BROWN's INDIVIDUAL CLAIM IS ACTIONABLE UNDER 42 USC 1983

#### A. MRS. BROWN's CASE IS A 42 USC 1983 REMEDY CASE WHICH ALLOWS INDIVIDUAL AND REPRESENTATIONAL STANDING WHERE PRIMARY RIGHTS ARE IN ISSUE

To the extent the African American community's electoral choices are being taken away, she can in a 42 USC 1983 case stand for them. Griffin v Burns (1977, DC RI) 431 F Supp 1361, aff'd (CA1 RI) 570 F2d 1065 and where "primary rights" (such as voting) are in issue, United States Supreme Court gives standing to individual plaintiffs in federal courts to litigate them. Barrows v Jackson (1953) 346 US 249, reh den 346 US 841; Buchanan v Warley (1917) 245 US 60, Pierce v Society of Sisters (1925) 268 US 510.

#### B. A 42 USC 1983 CLAIM CAN BE MADE FOR MRS. BROWN

The official policy in issue is the Secretary's enforcement of Prop 14, clearly an action taken 'under color of' state law. Ex parte Virginia, 100 U.S. 339, 346; Home Tel. & Tel. Co. v. Los Angeles, 227 U.S. 278 , 287, et seq., Hague v. C.I. O., 307 U.S. 496, 507].

The loss of Mrs Brown's individual (and other African Americans') voting right is caused by the official policy being enforced by Secretary Bowen. The individual's right to vote has always been bound up with the right of candidates to run for an office and the Supreme Court has said that "[t]he rights of voters and the rights of candidates do not lend themselves to neat separation; laws that affect candidates always have at least some theoretical, correlative effect on voters". Bullock v Carter 405 U.S. 134, 143 (1972), which

Case 2:12-cv-05547-PA-SP   Document 28   Filed 09/08/12   Page 6 of 11   Page ID #:465

led the 11th Circuit in Duke v Massey to conclude that voters have standing to sue when their favorite candidate was excluded. Duke v Massey 87 F. 3d 1226,1231,1233 (11th Cir. 1996)

The right in issue is fundamental. Justice Douglas, dissenting in South v. Peters, 339 U.S. 276, 279 [cited with approval in the majority's opinion in Reynold v Sims 377 U.S. 533 (1964) by Chief Justice Earl Warren] stated that *"the right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strikes at the heart of representative government....*[p556](emphasis added).

### C. THAT A PROPOSITION WAS PASSED "BY THE PEOPLE" (THAT SHOWED AT THE POLLS) IS NO DEFENSE TO PROP 14 TRAMMELING ON MRS. BROWN's RIGHTS UNDER THE 14th AMENDMENT & US v CLASSIC

The Supreme Court in Reynolds v. Sims, 377 U.S. 533, 561-562, warned states that "[i]ndividual rights are not subject to a public vote; a majority has no right to vote away the rights of a minority; the political function of rights is precisely to protect minorities from oppression by majorities (and the smallest minority on earth is the individual)." Does Prop 14, because of the vote of many, take away such an individual's fundamental right? Should it? Nay says Mrs. Brown. The policy recognized in Class & Reynolds forms a facial challenege to Prop 14's constitutionality, Mrs. Brown respectfully submits.

To the extent the Court does not share Mrs. Brown's view of United States v Classic being dispositive, Mrs. Brown alternatively submits that evidence of discrimination comes in is via the propensity argument (more-African-Americans-vote-democrat-than-not) and evidence (the public record and expert testimony to explain/interpret it like the University of Chicago Roginski study appears to), which Mrs. Brown respectfully submits will show:

1. African Americans have an overwhelming propensity to vote Democratic in November Congressional elections and did so vote in Brown's district (the 8th CD)–which was alleged in Brown's complaint;

2. Those voting propensities have been holding firm for the last 50 years so that voting performance data is something that can be judicially noticed;–which was alleged in the complaint and by the study served with the Conaway declaration in support of the Motion for Preliminary Injunctive Relief and is referenced in Brown's complaint;

BROWN's OPPOSITION TO INTERVENOR's FRCP 12b6 MOTION                                        Page 6

3. Putting minorities in a Congressional District where republicans have a marked advantage registration wise, makes the primary and the general election the only chance for African Americans to vote for Democrats, unless Prop 14 rules are in play–which was alleged in the complaint;

4. The Secretary KNEW (from their ballot statements) that two from the same party might emerge as well as two people equally unappealing to vote for-which is admitted in Bowen's moving papers!

5. The Secretary KNEW or in reckless disregard of the substantial likelihood of the discriminatory effect and outcome did not challenge the law before it went to the ballot, when it passed and in fact, now comes to its defense.

As to the Washington State Grange case [which is going to a Conference at the United Supreme Court on September 24, 2012 on a writ of certioari], it was a set back for associational rights claimed by a state political party, but not individuals like Mrs. Brown seeking vindication under 42 USC 1983 case.

**VI.    ARGUING MRS. BROWN CAN STILL VOTE IN NOVEMBER FOR ONE OF THE TOP TWO REPUBLICAN VOTE GETTERS & THAT THE RESULT OF PROP 14 IS SOMEHOW ACCEPTABLE BECAUSE THE BALLOT STATEMENT WARNED ABOUT HAVING TO VOTE FOR TWO PEOPLE FROM THE SAME PARTY VIOLATES THE "UNCONSTITUTIONAL CONDITIONS" DOCTRINE**

Government may not condition the award of a benefit (in this case the right to vote in a federal general election post-Prop 14) on the relinquishment of a constitutional right (in this case the right to vote for the party of one's choice that is the top vote getter or the party which African American overwhelmingly chose and thereby typically exercise their right of associational rights with in the primary) [see, e.g., *Nollan v. California Coastal Commission 483 U.S. 825(1987)*]. In the case before the Court the argument is, because Prop 14 is such a good idea for encouraging voter participation and making elections more competitive, its an acceptable constitutional casualty to deny the right to be able to vote for someone from your own party in the general election. That is not regulation that is evisceration.

In effect, a federal right to vote in a general election has been altered because of the agenda of a state-based group that sees no purpose in protecting race-based partisan

alignments in federal elections, matters over which the state is not sovereign, and getting the "majority" to vote for a Proposition that takes away the general election federal voting right (e.g. to vote in general elections for the party of one's choice and/or partisan alignment, a right that has existed since California joined the Union in 1850).

Prop 14 goes too far. "[T]he power of the state [...] is not unlimited; and one of the limitations is that it may not impose conditions which require relinquishment of constitutional rights. If the state may compel the surrender of one constitutional right as a condition of its favor, it may, compel a surrender of all. It is inconceivable that guarantees embedded in the Constitution of the United States may thus be manipulated out of existence". Frost & Frost Trucking Co. v. Railroad Comm'n 271 U.S. 583, 594 (1926).

### VII. SECTION 2 of the VOTING RIGHT ACT PROHIBITS THE TOP TWO PRIMARY AS A VOTING PRACTICE IS UNLAWFUL BECAUSE OF ITS DISCRIMINATORY EFFECT & BECAUSE IT INTERFERES WITH THE VOTER's RIGHT TO CAST AN EFFECTIVE BALLOT

#### A. IT IS IMPORTANT TO NOTE THAT INTERVENOR AVOIDS ADDRESSING THE BEHAVIORAL STUDIES REFERENCED IN MRS. BROWN's COMPLAINT (EVEN THROUGH LINKS WERE PROVIDED ON THE ROGINSKI STUDY WAS SERVED IN THE LAST ROUND OF PLEADINGS) THAT SUGGEST PROP 14 DISCRIMINATES UNLAWFULLY

Again assuming the United States v Classic case is not dispositive, it needs to be stated (again) that allowing the voter to cast an effective ballot is implicit in the granting of the franchise [Senate Report No. 94-295 (1975), at p. 32].

That the Intervenor has a pleading bank from what is served in this case is obvious, but for all the form, there is an avoidance of the studies being relied upon to factually assert there is an unlawful effect (e.g. that the right to cast an effective ballot is being impacted) under Section of the Voting Rights Act of 1982.

#### B. THE VOTING RIGHTS ACT REACHES FAR MORE THAN A STERILE INTENT TO ABRIDGE THE RIGHT TO VOTE & ALLOWS REVIEW OF PROPOSITIONS LIKE PROP 14, the TOP TWO PRIMARY

The Voting Rights Act was designed to apply "throughout the electoral process." See H.R.Rep. No. 102-655 (1992) and reaches any "voting qualification or prerequisite to voting *or standard, practice, or procedure" that adversely affects the right to vote"*.

An example of such an adverse effect is found looking at African American voting propensities. The Prop 14 advocates and defenders knew what those propensities have been and that by removing from a general election the party toward which they gravitate traditionally align and vote with, their right to cast an effective vote is taken away and another effect is to chill African American voter participation by taking away the party choice they could vote for in Districts such a CD-08 [See discussion under III.C above and incorporated herein by reference for argument re discriminatory intent & proof].

Jon Rogowski & Amir Fairdosi from the University of Chicago in their April 11, 2012 paper entitled "Voting by Race? The Neglected Role of Partisanship" [Copy attached as Exhibit "A" to the Declaration of Robert Conaway filed in Support of the Reply Brief due availability concerns on the internet] they state "partisanship among blacks has been relatively impervious to the significant social and political changes that have occurred over the past 4 decades – African Americans have identified with the Democratic Party and supported presidential and congressional candidates" [p.6] Other studies that have looked at the strategies that have adversely impacted African American's right to cast an effective vote include studies reported in law and voting policy journals such as the Oregon Law Review [81 Oregon L.Rev. 849, 886 (2002) reporting on the new methods of vote dilution which arguably touches upon Top 2 Primary scenarios at p 868-66] and the 2012 Santa Clara Law Review article by Chelsea J. Hopkins entitled The Minority Coalition's Burden of Proof Under Section 2 of the Voting Rights Act [detailing the new Senate Report No. 97-417 "factors" or policies that restrict minority voting under the new language of Section 2 of the Voting Rights Act, again arguably touching Top 2 Primary scenarios]. The topic is hot, current and will require factual discovery and "totality of circumstances" analysis on Section 2's rewrite by Congress, assuming again the Classic case is not dispositive.

Taking the incentive for coming to polls for voting for African Americans, by leaving with them with a problematic choice between two ultra conservatives at the general election, is a Section 2 effect that needs some discovery before summarily dismissing.

## VI. THE PRIVILEGE & IMMUNITY ARGUMENT IS NO A HAIL MARY

The 14th Amendment forbids a state from making or enforcing any law which abridges the privileges and immunities of citizens of the United States. Smith v Allwright 321 U.S. 649, 657 (1944). The right to vote in national elections is a privilege and immunity of national citizenship and state based restrictions which interfere with same are an impermissible prior restraint. Oregon v Mitchell, 400 U.S. 112 (1970),147-150.

Articled IV, Section 2 (the original privilege and immunity clause) can get triggered by travel U.S. v Cruikshank 92 US 542 (1875). Should an African American coming into California have to lose the right to vote for a Democrat in a general election because of Prop 14? More subtle of an application was found in Saenz v. Roe 526 US 429 (1999). California was asked to justify its sound [fiscal] policy which discriminated against those who had been citizens for less than a year and also why it was permissible to apply such a variety of rules within that class. The Court ruled that the State's legitimate interest in "saving money" provides no justification for its decision to discriminate among equally eligible citizens. In the case before this court, supposedly serving the policy of more competitive elections amongst eligible voters will have an adverse right to vote impact on people potentially coming into California from traditional party primary states and Prop 14 potentially creates a forced travel scenario for people like Mrs. Brown who might have to move to vote for a democrat for Congress again before she dies.

## VIII. CONCLUSION

If United v Classic is not enough to deny Intervenor's motion and have appropriate orders to stop a constitutional tragedy issued, then Intervenor's motion should be denied.

Dated: September 8, 2012         LAW OFFICE of ROBERT D. CONAWAY

By: _____
ROBERT D. CONAWAY, Attorney for
ELISE BROWN, PLAINTIFF

# CERTIFICATE OF SERVICE

Case name: Brown v Bowen     Case No. **2:12-cv-05547-PA-SPx**

I hereby certify that on September 8, 2012, I electronically filed the following document with the Clerk of the Court by using the CM/ECF system:

**PLAINTIFF ELISE BROWN's OPPOSITION TO INTERVENOR's FRCP 12(b)(6)-(7) MOTION TO DISMISS**

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on September 8, 2012 at Barstow, California.

ROBERT D. CONAWAY            /s/  ROBERT D. CONAWAY
Declarant                    Signature