1  KAMALA D. HARRIS
   Attorney General of California
2  PETER A. KRAUSE
   Supervising Deputy Attorney General
3  GEORGE WATERS
   Deputy Attorney General
4  State Bar No. 88295
     1300 I Street, Suite 125
5    P.O. Box 944255
     Sacramento, CA 94244-2550
6    Telephone: (916) 323-8050
     Fax: (916) 324-8835
7    E-mail: George.Waters@doj.ca.gov
   *Attorneys for Defendant Debra Bowen*
8   *as California Secretary of State*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ELISE BROWN,** <br><br> Plaintiff, <br><br> v. <br><br> **DEBRA BOWEN,** <br><br> Defendant. | 2:12-cv-05547-PA-SP <br><br> **REPLY BRIEF OF DEFENDANT SECRETARY OF STATE IN SUPPORT OF MOTION TO DISMISS** <br><br> Date: October 1, 2012 <br> Time: 1:30 p.m. <br> Courtroom: 15 <br> Judge: The Honorable Percy Anderson <br> Trial Date: N/A <br> Action Filed: 6/26/2012 |

**INTRODUCTION**

Plaintiff's claim in this action is unprecedented. She asserts that she has a federally-protected right to vote for a Democrat in the Congressional District 8 (CD 8) general election, even though the top two vote-getters in the primary were Republicans.

As set forth in defendant Secretary of State's opening brief and as further explained below, there is no right to vote for a particular candidate or party in a general election. Both the United States Constitution and the federal Voting Rights Act protect the right to an election process free from invidious discrimination, but they do not guarantee the right to any particular election procedure. California, like Washington and Louisiana, has adopted a top-two election system where the top two vote-getters in the primary – regardless of political affiliation – proceed to the general election. Plaintiff has failed to allege facts that would support an inference that this system discriminates on the basis of race or political affiliation. For that reason, her complaint should be dismissed.

**I.  PLAINTIFF'S FIRST CLAIM (14TH AMENDMENT) DOES NOT STATE A CLAIM**

There is no right to vote at a general election for a particular candidate or particular party.[1] Precedent is to the contrary: The primary election and the general election are not separate free-standing events; they are two stages in one election *process*. *Storer v. Brown*, 415 U.S. 724, 735 (1974) (primary election is "the initial stage in a two-stage process by which the people choose their public officers"). The constitution protects the right to a fair election process, but it does not

---

[1] The Court should note that all California elections for judicial, school, county, and municipal office are conducted under a nonpartisan system where no party may nominate a candidate and party affiliations do not appear on the ballot. Cal. Elec. Code §§ 334, 8002, 13206(b). Only the top two vote-getters appear on the general election ballot (unless a candidate wins a majority of the votes at the primary, in which case that candidate is elected outright and there is no general election). Cal. Elec. Code §§ 8140, 8141.

guarantee the right to any particular procedure. *See Burdick v. Takushi*, 504 U.S. 428, 440 (1992) ("limiting the choice of [general election] candidates to those who have complied with state election law requirements is the prototypical example of a regulation that, while it affects the right to vote, is eminently reasonable."). Plaintiff's Fourteenth Amendment claim fails because it does not allege any constitutional fault in the top-two election *process*. Plaintiff had the opportunity to vote for any of thirteen candidates (including three Democrats) at the first stage of the process. The fact that no Democrat made it to the run-off in CD 8 does not invalidate the process, just as the fact that no Republican made it to the run-off in CDs 13, 15, 29, 30, 33, 35, 40, 43, and 44 does not invalidate the process.[2]

Plaintiff's reliance on *United States v. Classic*, 313 U.S. 299 (1941), is wholly misplaced. (Plaintiff's Opposition, p. 1.) *Classic* is one of the so-called White Primary Cases in which the Supreme Court considered the constitutionality of white-only primaries in the South. In 1921, the Supreme Court held that Congress had no authority to regulate federal primary elections because primary elections were private nominating events, not "elections" within the meaning of the Elections Clause of the United States Constitution (Article I, Section 4). *Newberry v. United States*, 256 U.S. 232, 249-250 (1921). *Newberry* was effectively reversed twenty years later by *Classic*. *Classic* held that the Elections Clause does in fact authorize Congress to regulate primary as well as general elections "where the primary is by law made an integral part of the election machinery." *Classic*, 313 U.S. at 318. Eventually, in *Smith v. Allwright*, 321 U.S. 649 (1944), the Court invalidated Texas' white primary. *Allwright*, like *Classic* before it, concluded that primary and

---

[2] The primary election results show that CD 8 is composed of parts of three counties, and that a Democratic candidate (Jackie Conaway) finished first in two of those counties (Inyo and Mono). (Dkt. #27-1, p. 30.) From the perspective of a Democratic voter such as plaintiff, the problem with CD 8 is that the vast majority of voters reside in San Bernardino County, and those voters voted overwhelmingly for Republicans. As a result, Republicans took the top three places in CD 8. It appears that plaintiff's complaint has much more to do with redistricting than with the top-two primary.

2

general elections are "a single instrumentality" and that the right to vote in each without discrimination by the State is a right secured by the federal constitution, including the Fourteenth Amendment. *Allwright*, 321 U.S. at 660, 661-662.

Nothing in *Classic* or any of the other White Primary Cases creates a right to vote for a Democrat in the general election. The linchpin of these cases is that general elections are "a single instrumentality" for the election of public officers and that the constitution applies to the entire process. *Allwright*, 321 U.S. at 660. The top-two election process is fully consistent with the White Primary Cases because the process does not discriminate on the basis of race or political affiliation.

Further, and as fully explained in the Secretary of State's opening brief, plaintiff's Fourteenth Amendment Claim fails because it does not allege facts that would support an inference that the top-two primary was adopted for a racially discriminatory purpose. (Dkt. #26-1, 7:9-24.) To the extent plaintiff attempts to plead a freedom-of-association claim under the Fourteenth Amendment, the claim fails because in the context of a primary election, the right of association is a right that belongs to a political party, not an individual voter. *Eu v. San Francisco County Democratic Cent. Committee*, 489 U.S. 214, 224 (1989). Even if individual voters did possess some associational rights, their rights would be no greater than those of political parties, and it is clear that political parties have no right to put their nominees on the general election ballot. (Dkt. #26-1, 7:27-9:8.)

## II. PLAINTIFF'S SECOND CLAIM (15TH AMENDMENT) HAS BEEN WITHDRAWN

Plaintiff's second claim, alleging a violation of the 15th Amendment, has been withdrawn. (Dkt. #29, 10:7-8 [Plaintiff's Opposition to Secretary of State's Motion to Dismiss].)

///

///

3

### III. PLAINTIFF'S THIRD CLAIM (SECTION 2 OF THE VOTING RIGHTS ACT) DOES NOT STATE A CLAIM

To state a claim under Section 2 of the Voting Rights Act, plaintiff must allege facts that would support an inference that minority voters – *as a result of the top-two primary* – have less opportunity than others to "elect representatives of their choice." *See* 42 U.S.C. § 1973(b); *see also Osburn v. Cox*, 369 F.3d 1283, 1288-1289 (11th Cir. 2004) (affirming dismissal of Section 2 challenge to Georgia open primary because "Plaintiffs have not alleged facts to support a claim that the minority group has been excluded from meaningful access to the political process due to the interaction of racial bias in the community with the challenged voting system").

Nothing in plaintiff's amended complaint and nothing in her opposition memorandum suggests that minority voters in CD 8 have less opportunity to elect representatives of their choice as a result of the top-two primary. Plaintiff alleges that African-Americans prefer Democratic candidates, that Republicans enjoy a 10% registration advantage in San Bernardino County, and that no African-American has ever been elected to countywide office in San Bernardino County. (Dkt. #24, 5:24-6:5; 8:22-9:3.) These allegations undermine any claim that the top-two election system has an adverse impact on the ability of minority voters in CD 8 to elect representatives of their choice. *See Osburn*, 369 F.3d at 1288-1289.

### IV. PLAINTIFF'S FOURTH CLAIM (PRIVILEGES & IMMUNITIES CLAUSE) DOES NOT STATE A CLAIM

As stated in the Secretary of State's opening brief, the Privileges and Immunities Clause protects only rights created by the federal constitution and laws. (Dkt. #26-1, 12:18-13:11.) This claim fails because plaintiff has failed to cite any authority that establishes a federal right to vote for a particular candidate or party in a general election. No such authority exists.

### V. PLAINTIFF HAS FAILED TO JOIN NECESSARY PARTIES

The Secretary of State's opening brief explains that the two existing Republican candidates in CD 8 (Greg Imus and Paul Cook) are necessary parties because plaintiff seeks to remove one of them (Cook) from the ballot, and the other (Imus) would face a new opponent in the general election. (Dkt. #26-1, pp. 13-14.) They are necessary parties because this action, if successful, will "impair or impede" their interests. Fed.R.Civ.Pro. 19(a)(1).

Plaintiff's opposition is unresponsive. She asserts that the joinder issue "is something, if raised by motion, the court in its discretion could deny." (Dkt. #29, 9:26-28.) But the issue has been raised by motion (this motion), and it is uncontested that Messrs. Cook and Imus have interests that would be impaired by this action, should it succeed. Unless they are joined, this action must be dismissed. Fed.R.Civ.Pro. 12(b)(7).

### CONCLUSION

For the reasons set forth above, the Secretary of State's motion to dismiss should be granted without leave to amend.

Dated: September 17, 2012

Respectfully submitted,

KAMALA D. HARRIS
Attorney General of California
PETER A. KRAUSE
Supervising Deputy Attorney General

*/s/ George Waters*

GEORGE WATERS
Deputy Attorney General
*Attorneys for Defendant Debra Bowen as California Secretary of State*

SA2012106769
10955377.doc

5

# CERTIFICATE OF SERVICE

Case Name:   *Elise Brown v. Debra Bowen*          Case No.   2:12-cv-05547-PA-SP

I hereby certify that on <u>September 17, 2012</u>, I electronically filed the following document(s) with the Clerk of the Court by using the CM/ECF system:

## REPLY BRIEF OF DEFENDANT SECRETARY OF STATE IN SUPPORT OF MOTION TO DISMISS

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>September 17, 2012</u>, at Sacramento, CA.

| L. Carnahan | /s/ L. Carnahan |
|---|---|
| Declarant | Signature |

SA2012106769
10955421.doc