1 NIELSEN MERKSAMER
2    PARRINELLO GROSS & LEONI LLP
MARGUERITE MARY LEONI (SBN 101696)
3 CHRISTOPHER E. SKINNELL (SBN 227093)
4 2350 Kerner Boulevard, Suite 250
San Rafael, California 94901
5 TELEPHONE: (415) 389-6800
6 FACSIMILE:   (415) 388-6874
Email: mleoni@nmgovlaw.com
7 Email: cskinnell@nmgovlaw.com
8

9 *Attorneys for Intervener-Defendants*
INDEPENDENT VOTER PROJECT,
10 CALIFORNIANS TO DEFEND THE OPEN
11 PRIMARY, ABEL MALDONADO AND
DAVID TAKASHIMA
12

13         IN THE UNITED STATES DISTRICT COURT
14
         FOR THE CENTRAL DISTRICT OF CALIFORNIA
15

16 ELISE BROWN,                          | Case No.: 12-cv-05547-PA-SPx
17              *Plaintiff,*             | **INTERVENERS' REPLY IN**
18      vs.                              | **SUPPORT OF MOTION TO**
                                         | **DISMISS FOR LACK OF**
19 DEBRA BOWEN, in her official capacity as | **STANDING & FAILURE**
20 California Secretary of State,        | **TO STATE A CLAIM [FRCP**
                                         | **12(b)(1) & 12(b)(6)]**
21              *Defendant.*             |
22                                       | JUDGE: Hon. Percy Anderson
INDEPENDENT VOTER PROJECT,              | COURTROOM: 163
23 CALIFORNIANS TO DEFEND THE OPEN       | HEARING DATE: Oct. 1, 2012
24 PRIMARY, ABEL MALDONADO AND           | HEARING TIME: 1:30 p.m.
DAVID TAKASHIMA,                        |
25
26              *Intervener-Defendants.*
27
28

# TABLE OF CONTENTS

**Page(s)**

I.   INTRODUCTION ................................................................................ 1

II.  ARGUMENT ..................................................................................... 7

    A.   It is Beyond Question That Proposition 14 Is Facially Constitutional ............................................................................. 7

    B.   Plaintiff Cites No Authority To Support Her Contention That She Has Standing To Raise An Associational Claim In This Case Challenging The Top Two Primary ........................... 8

    C.   There Is No Right To Vote For A Candidate Of One's Preferred Political Party In A Non-Partisan System ...................... 9

    D.   Plaintiff Must Allege Purposeful Discrimination As An Essential Element Of Her Fourteenth Amendment Claim; The So-Called "Propensity Theory" Argument" Has No Application To This Case ....................................................... 12

    E.   Section 2 Does Not Protect The Right To Vote For Any Particular Candidate ......................................................... 13

    F.   The Privileges And Immunities Clauses Do Not Require California To Have a Partisan Electoral ..................................... 16

    G.   Intervenors Satisfied The Meet And Confer Requirement ........... 17

III. CONCLUSION .................................................................................. 17

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Ansell v. Green Acres Contr. Co.,*
347 F.3d 515 (3d Cir. 2003) ............................................................ 8

*Barrows v. Jackson,*
346 U.S. 249 (1953) .........................................................................5

*Bartlett v. Strickland*
556 U.S. 1 (2009) ...........................................................................10

*Bates v. Little Rock,*
361 U.S. 516 (1960) ........................................................................ 4

*Beck v. Ysursa,*
2007 U.S. Dist. LEXIS 86928 (D. Idaho Nov. 27, 2007) ...............3

*Buchanan v. Warley*
245 U.S. 60 (1917) ...........................................................................5

*Bullock v. Carter,*
405 U.S. 134 (1972) ........................................................................ 6

*Burdick v. Takushi,*
504 U.S. 428 (1992) ......................................................................4, 5

*California Democratic Party v. Jones* ............................................3

*Democratic Party of the United States of America v. Wisconsin ex rel.
La Follette,*
450 U.S. 107 (1981) .........................................................................3

*Duke v. Massey,*
87 F.3d 1226 (11th Cir. 1996) ........................................................ 6

*Frost & Frost Trucking Co. v. Railroad Comm'n,*
271 U.S. 583 (1926) ......................................................................6, 7

*Griffin v. Burns,*
431 F. Supp. 1361 (D.R.I. 1977), *aff'd,* 570 F.2d 1065 (1st Cir. 1978) ............5

*Hague v. Committee for Indus. Org.,*
 307 U.S. 496 (1939) ................................................................ 11

*Jonas v. Board of Commissioners,*
 699 F. Supp. 2d 1284 (D.N.M. 2010) ...................................... 8

*Kusper v. Pontikes,*
 414 U.S. 51 (1971) ................................................................ 3, 4

*Lucas v. Townsend,*
 967 F.2d 549 (11th Cir. 1992) (per curiam) ............................ 7

*McDonnell Douglas Corp. v. Green,*
 411 U.S. 792 (1973) ................................................................. 8

*McKay v. Thompson,*
 226 F.3d 752 (6th Cir. 2000), *reh'g and reh'g en banc denied,* 2000
 U.S. App. LEXIS 27840 (6th Cir. Oct. 27, 2000), *cert. denied,* 532
 U.S. 906 (2001) ...................................................................... 11

*NAACP v. Alabama,*
 357 U.S. 449 (1958) ................................................................. 4

*NAACP v. Button,*
 371 U.S. 415 (1963) ................................................................. 4

*NAACP v. Jones,*
 131 F.3d 1317 (9th Cir. 1997) ................................................. 7

*Nollan v. California Coastal Commission,*
 483 U.S. 825 (1987) ................................................................. 6

*Oregon v. Mitchell,*
 400 U.S. 112 (1970) ............................................................... 11

*Osburn v. Cox,*
 369 F.3d 1283 (11th Cir.), *cert. denied,* 543 U.S. 943 (2004) ....... 3

*Parratt v. Taylor,*
 451 U.S. 527 (1981) ................................................................. 5

*Pierce v. Society of Sisters,*
 268 U.S. 510 (1925) ................................................................. 5

*Reno v. Bossier Parish Sch. Bd.,*
520 U.S. 471 (1997) ...........................................................................7

*Reynolds v. Sims,*
377 U.S. 533 (1964) ....................................................................1, 2

*Righeimer v. Jones,*
2000 U.S. Dist. LEXIS 13313 (E.D. Cal. Sept. 14, 2000) ..............3

*Saenz v. Roe,*
526 U.S. 489 (1999) ..................................................................11, 12

*Smith v. Allwright,*
321 U.S. 649 (1944) .....................................................................1, 3

*United States v. Classic,*
313 U.S. 288 (1941) .................................................................1, 2, 3

*United States v. Cruikshank,*
92 U.S. 542 (1875) ..........................................................................11

*Wash. State Grange v. Wash. Republican Party,*
552 U.S. 442 (2008) ....................................................................1, 2

**STATUTES**

18 U.S.C. § 51 ...................................................................................2

18 U.S.C. § 52 ...................................................................................2

18 U.S.C. § 241 .................................................................................2

18 U.S.C. § 242 .................................................................................2

42 U.S.C. § 1973 (§ 2 of the federal Voting Rights Act) ........8, 9, 10

42 U.S.C. § 1973b(f)(2) .....................................................................8

42 U.S.C. § 1973aa-1a(c) ..................................................................9

42 U.S.C. § 1983 ...........................................................................4, 5

Pub. L. 97-205, § 3, June 29, 1982, 96 Stat. 134 .........................10

1

## OTHER AUTHORITIES

U.S. CONST. art. IV, § 2, cl. 1 ....................................................................... 11

U.S. CONST. amend V...................................................................................... 6

U.S. CONST. amend XIV............................................................................ passim

U.S. CONST. amend XV ...............................................................................3, 7

H.R. Rep. No. 102-655 (1992)........................................................................ 9

L.R. (C.D. Cal.) 7-3 ........................................................................................12

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.   INTRODUCTION.

Citing a plethora of inapposite cases, Plaintiff's opposition provides no legal authority that supports her claims.   By the same token, Plaintiff completely ignores the dispositive authorities cited by Intervenors, which hold that she lacks standing to maintain her claims of a violation of her associational rights, and that she has no constitutional right to vote for a Democratic candidate.   Plaintiff does not address even one of the cases cited by Intervenors, which demonstrate that Plaintiff's claims are meritless.   The First Amended Complaint ("FAC") should be dismissed with prejudice.

Plaintiff likens the Top Two Primary system to the disgraceful and now illegal white primary systems struck down in *Smith v. Allwright*, 321 U.S. 649 (1944).   In contrast, the United States Supreme Court has considered and upheld the constitutionality of the Top Two System. *Wash. State Grange v. Wash. Republican Party*, 552 U.S. 442 (2008).   Plaintiff freely voted in the June 5, 2012 Primary Election.   Plaintiff does not allege that there was any impediment to her exercise of that fundamental right.   Plaintiff is entitled to vote in the November general election and has not alleged that there is any impediment to her doing so. Plaintiff does not like being a Democrat in a fairly-apportioned, but heavily Republican, district in which the Top Two Primary resulted in the advancement of two Republicans to the general election, but that is not actionable under any theory raised in the FAC.

## II.   ARGUMENT.

### A.   It is Beyond Question That Proposition 14 Is Facially Constitutional.

Plaintiff appears to believe that under *United States v. Classic*, 313 U.S. 288 (1941), and *Reynolds v. Sims*, 377 U.S. 533 (1964), non-partisan primary systems like that enacted by Proposition 14 are facially unconstitutional. (Pltf's Opposition Memorandum ["Oppo." herein] at 3-4 & 6:10-16.) Those

cases have nothing to do with non-partisan primary systems the constitutionality of which was upheld in *Wash. State Grange.*

*United States v. Classic* held that election fraud in primary elections for federal offices could be prosecuted under 18 U.S.C. §§ 51 and 52 (now 18 U.S.C. §§ 241 and 242), which prohibit any conspiracy, under color of state law, to injure a citizen in the exercise of any right or privilege secured by the U.S. Constitution or laws of the United States. The case involved a Democratic partisan primary election in Louisiana to nominate a candidate of the Democratic Party for representative in Congress. The Commissioners of Elections who conducted the election were charged with willfully altering and falsely counting and certifying the ballots of voters cast in the primary election. The question presented was whether the right of qualified voters to vote in the Louisiana primary and to have their ballots counted is a right "secured by the Constitution" within the meaning of §§ 19 and 20 of the Criminal Code, 18 U.S.C. §§ 51 & 52, and whether the acts of appellees charged in the indictment violate those sections. The Court held that the cited sections of the Criminal Code applied. The case has no relevance to the case at bench.

Nor does *Reynolds v. Sims,* which held that the Fourteenth Amendment prohibits state legislative electoral districts in which the populations of the districts are significantly unequal. The case has nothing to do with primary elections at all.

**B.     Plaintiff Cites No Authority To Support Her Contention That She Has Standing To Raise An Associational Claim In This Case Challenging The Top Two Primary.**

Plaintiff's associational claim boils down to the assertion of the right to have a partisan primary election in which she, and other Democratic voters can advance a Democrat to the general election ballot so that she is not faced

with the prospect of voting for a Republican. Plaintiff's response to the authority cited by Intervenors holding that she lacks standing to assert such a right is to ignore that authority[1], and protest more emphatically that "because of ***the complained of state action, the claim can be sued on under the 14th Amendment, not because a political party's associational right is in issue, but her individual associational right.***" (Oppo. at 4:27-28, emphasis in original.) No case cited by Plaintiff, or located by Intervenors, supports that proposition.

*Smith v. Allwright,* 321 U.S. 649 (1944), and *Kusper v. Pontikes,* 414 U.S. 51 (1971), are the only cases Plaintiff cites that have anything to do with primary elections. In *Smith v. Allwright,* the Supreme Court held that the right to vote in a primary election, like the right to vote in a general election, is a right secured by the Constitution, and under the Fifteenth Amendment that right may not be abridged by any State on account of race. 321 U.S. at 661-662 (citing *Classic,* 313 U.S. at 314). In *Kusper v. Pontikes,* the Court decided that an Illinois rule disqualifying a person from voting in the primary of one political party if he has voted in the primary of another political party during the preceding 23 months imposed an impermissible burden on Illinois

---

[1] Plaintiff simply ignores the cases which hold that she lacks standing to assert the right of association in this case. *California Democratic Party v. Jones* and *Democratic Party of the United States of America v. Wisconsin ex rel. La Follette,* 450 U.S. 107 (1981). Individual voters lack standing to raise such a claim. *See Osburn v. Cox,* 369 F.3d 1283, 1287-88 (11th Cir.), *cert. denied,* 543 U.S. 943 (2004) (affirming district court's dismissal of individual voters' associational claim alleged in a challenge to Georgia's open primary for lack of standing); *Righeimer v. Jones,* 2000 U.S. Dist. LEXIS 13313 (E.D. Cal. Sept. 14, 2000) (in a challenge to California's 1998 blanket primary system, holding, "the First Amendment associational rights at issue belong solely to the association, here, the Republican Party, not to any individual candidate or voter."); *Beck v. Ysursa,* 2007 U.S. Dist. LEXIS 86928 (D. Idaho Nov. 27, 2007) (dismissing similar challenge to Idaho's open primary).

---

voters' exercise of their right to vote and to free political association by changing their political party affiliation.  414 U.S. at 65.  Plaintiff does not claim that she is prevented from associating with the political party of her liking.  *Kusper* does not hold that she has a right to a partisan primary in order to ensure that a Democrat reaches the general election ballot, or standing to assert such a claim.

The other cases cited by plaintiff address the issue of an *organization*'s (as opposed to an individual's) standing to assert certain associational claims unrelated to voting.  (Oppo. at 4:18-5:7: *NAACP v. Alabama*, 357 U.S. 449 (1958) [finding that the NAACP had standing to assert the constitutional rights of its members, and holding that compelled disclosure of group membership may interfere with freedom of association]; *NAACP v. Button*, 371 U.S. 415 (1963) [holding that the NAACP had standing to assert its own rights, as well as the corresponding rights of its members]; *Bates v. Little Rock*, 361 U.S. 516 (1960) [finding municipal ordinances requiring the disclosure of NAACP membership lists to be an unconstitutional restraint on freedom of association].)

**C.    There Is No Right To Vote For A Candidate Of One's Preferred Political Party In A Non-Partisan System.**

Plaintiff attempts to save her associational claim by rephrasing it as "the African American community's [right to] electoral choice," which she claims to have standing to enforce under 42 U.S.C. § 1983.  (Oppo. at 5:12.)  In other words, Plaintiff's claims rest on the theory that she, and other African-American voters, have a right to vote for a Democrat.  The Court has already correctly ruled that such a right does not exist:

> Plaintiff provides no citations to authority in support of her novel theory that she has a constitutional right to vote for a candidate from a party of her choice in a general election. Indeed, limitations on an individual candidate's access to the ballot are routinely upheld when those

limitations are reasonable, nondiscriminatory, and further a state's important regulatory interests. <u>Burdick[ v. Takushi]</u>, 504 U.S. [428,] 434, 112 S. Ct. at 2063-64 [1992]. . . . <u>Without relevant case law to support her assertion that such deprivations amount to a constitutional violation, the Court cannot conclude that Plaintiff is likely to succeed on the merits of her claim or that she has raised a serious question.</u>

Order Granting Ex Parte Application to Intervene & Denying Plaintiff's Motion for Preliminary Injunction (Dkt. #14), p. 4.  Nothing in Plaintiff's opposition brief supplies the missing authority for this fundamental but mistaken theory underlying her First Amended Complaint

Liability under section 1983 lies only where (1) "the conduct complained of was committed by a person acting under color of state law; and (2) . . . <u>this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.</u>" *Parratt v. Taylor*, 451 U.S. 527, 535 (1981) (emphasis added).  Plaintiff cites no case which holds that she has a constitutional right to vote for a Democrat in an open primary electoral system. *Griffin v. Burns*, 431 F. Supp. 1361 (D.R.I. 1977), *aff'd*, 570 F.2d 1065 (1st Cir. 1978), does not hold to the contrary.  In that case, the court held that plaintiffs had a claim under § 1983 where the primary ballots of qualified electors were not counted, and there was therefore a *complete loss* of plaintiffs' right to vote in the election. The other cases cited by Plaintiff are also inapposite. *See Barrows v. Jackson*, 346 U.S. 249 (1953) (enforcement of racially restrictive homeowner covenants constituted state action and thus violated the Fourteenth Amendment); *Buchanan v. Warley* 245 U.S. 60 (1917) (Kentucky ordinance preventing the sale of property to persons of color violated the Fourteenth Amendment because it interfered with property rights without providing due process); *Pierce v. Society of Sisters,* 268 U.S. 510 (1925) (ordinance mandating public school attendance unconstitutionally interfered with the parental rights of those who wished to send their children

to private schools, and with the business interests of the private school owners who challenged the ordinance).

*Bullock v. Carter*, 405 U.S. 134 (1972), and *Duke v. Massey*, 87 F.3d 1226 (11th Cir. 1996), are also inapposite. In *Bullock*, the Supreme Court held that a statutory scheme requiring candidates in party primary elections to shoulder the costs of conducting primary elections through large filing fees, without providing a reasonable alternative means of access to the ballot, denies equal protection of the laws because it arbitrarily utilizes the criterion of ability to pay as a condition to being on the ballot, thus excluding some candidates otherwise qualified and denying an undetermined number of voters the opportunity to vote for candidates of their choice.

*Duke v. Massey*, 87 F.3d 1226, is completely inapposite, and in fact supports Intervenors. The Court of Appeals in *Duke* held that there was no constitutional right of voters who supported a particular candidate to have that candidate appear on the ballot when the political party whose nomination that candidate sought, did not want him. *Id.* at 1233.

Similarly, Plaintiff's claim that Proposition 14 imposed an "unconstitutional condition", *i.e.*, "den[ial] of the right to be able to vote for someone from your own party in the general election," is spurious. (Oppo. at 7:18 - 8:10.) Because there is no right to vote for a candidate registered with the Plaintiff's preferred political party, all of Plaintiff's claims fail. *Nollan v. California Coastal Commission*, 483 U.S. 825 (1987), and *Frost & Frost Trucking Co. v. Railroad Comm'n*, 271 U.S. 583 (1926), do not hold to the contrary. Neither case concerned voting. In *Nollan*, the court held that there must be a substantial nexus between land use permit conditions and a legitimate government interest; otherwise, the condition violates the Fifth Amendment. 483 U.S. at 836-37. *Nollan* addresses only the constitutionality of certain land use decisions, and has no application in the voting rights

context. *Frost & Frost Trucking Co.* also considered unconstitutional conditions in the context of property rights, finding that certain permit conditions imposed on private carriers deprived those carriers of their property without due process of law, in violation of the Fourteenth Amendment. *Frost*, 271 U.S. at 599.

**D.   Plaintiff Must Allege Purposeful Discrimination As An Essential Element Of Her Fourteenth Amendment Claim; The So-Called "Propensity Theory" Argument" Has No Application To This Case.**

There is no right to vote for a candidate of a particular political party in a general election under a non-partisan system.  But even if there were, Plaintiff mistakenly claims that the necessary element of purposeful discrimination to support her Fourteenth Amendment claim (it appears that plaintiff has abandoned her claim under the Fifteenth Amendment, which does not apply to this case) is supplied by the "propensity argument (more-Aftican-Americans-vote-democrat-than-not)." (Oppo. 6: 18-20.)

As demonstrated in Intervenors' memorandum in support of their motion to dismiss, Plaintiff would only be entitled to relief under the Fourteenth and Fifteenth Amendment if she could prove that Proposition 14 was adopted for "a racially discriminatory purpose chargeable to the state." *Lucas v. Townsend*, 967 F.2d 549, 551 (11th Cir. 1992) (per curiam).  *See also Reno v. Bossier Parish Sch. Bd.*, 520 U.S. 471, 481 (1997) ("*Bossier Parish I*") ("Since 1980, a plaintiff bringing a constitutional vote dilution challenge, whether under the Fourteenth or Fifteenth Amendment, has been required to establish that the state or political subdivision acted with a discriminatory purpose."); *NAACP v. Jones*, 131 F.3d 1317, 1321-22 (9th Cir. 1997) ("the Equal Protection Clause is not implicated by classifications with disparate racial impact in the absence of discriminatory intent.").  Plaintiff does not allege in the FAC that Proposition 14 was enacted with a racially

discriminatory purpose.

Plaintiff cites absolutely no authority for the proposition that a so-called "propensity argument" can substitute for the necessary element of purposeful discrimination in a voting case.  Intervenors have not located any case in which "propensity" evidence was used to show intentional discrimination in the context of voting.  *Compare Ansell v. Green Acres Contr. Co.*, 347 F.3d 515, 521 (3d Cir. 2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973)) ("Evidence of an employer's conduct towards other employees has long been held to be relevant and admissible to show that an employer's proffered justification [for discharge] is pretext"), *with Jonas v. Board of Commissioners*, 699 F. Supp. 2d 1284, 1291-92 (D.N.M. 2010) (noting that a number of circuit courts, including the Ninth Circuit, have refused to allow propensity evidence in § 1983 excessive-force cases).

### E.  Section 2 Does Not Protect The Right To Vote For Any Particular Candidate.

Section 2 of the Voting Rights Act protects the right of certain protected classes of persons, including racial minorities, to participate in elections and to elect their chosen candidates on an equal basis with other members of the electorate.  Section 2 does not protect the right to vote for any particular person.  Section 2 provides:

> (a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 1973b(f)(2) of this title, as provided in subsection (b) of this section.

> (b) A violation of subsection (a) of this section is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision

are not equally open to participation by members of a class of citizens protected by subsection (a) of this section in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice. The extent to which members of a protected class have been elected to office in the State or political subdivision is one circumstance which may be considered: Provided, That nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population.

42. U.S.C. § 1973 (emphasis added).

Plaintiff does not claim that she lacks the same right to vote in elections under Proposition 14 that is enjoyed by all other members of the electorate.

Plaintiff appears to believe that Section 2(a) requires that African-American voters be accorded an "incentive to come to the polls" by ensuring that there is a Democrat on the ballot at the general election. (Oppo. at 9:26-27.) Not surprisingly, Plaintiff provides no support for this unusual theory, and such is not the law. Section 2(b) states how a violation of section 2(a) is established and hence the necessary allegations to state a claim. A plaintiff must allege that the political processes under Proposition 14 are not equally open to participation by African-American voters because they "have less opportunity than other members of the electorate to participate in the political process..." Plaintiff has not alleged that, under Proposition 14, she is not able to vote on an equal footing with all other members of the electorate.

Plaintiff's citation to H.R. Rep. No. 102-655 (1992) is not authority for the proposition that Section 2 requires that African-Americans be provided "an incentive" to come to the polls. (Oppo. at 8:27.) That is a portion of the congressional record pertaining to the 1992 amendments to sections of the Voting Rights Act that are not at issue in this case, 42 U.S.C. § 1973aa-1a(c). Those provisions require that, in certain States with substantial linguistic minority populations of voting age, election materials must be provided in the

1  applicable minority languages as well as English.  Plaintiff does not allege a
2  violation of any of those provisions.

3  Moreover, any disincentive Plaintiff may have to go to the polls in
4  November because of the outcome of the June Top Two Primary in CD 8, is
5  not "on account of her race."  42 U.S.C. § 1973(a).  Just like many other
6  Democrats in the district, regardless of race, she does not like the "choice
7  between two ultra conservatives." (Oppo. at 9:27.)  Many Republicans of all
8  races probably feel the same way in those congressional districts in which two
9  Democrats proceeded to the general election after the Top Two Primary.  But
10 that dislike does not translate into a cause of action.

11 Plaintiff tries to entice the Court into denying the motion to dismiss by
12 string-citing law review articles (none of which concern Proposition 14), and
13 claiming that "the topic is hot, current and will require factual discovery and
14 'totality of circumstances' analysis of Section 2's rewrite by Congress..."  The
15 Court should not be tempted.  Section 2 has not been amended since 1982
16 (*see* Pub. L. 97-205, § 3, June 29, 1982, 96 Stat. 134), and the jurisprudence
17 thereunder as set forth in Intervenors' brief in support of their motion to
18 dismiss and above, is well-established.  Plaintiff just ignores it.  Nonetheless,
19 under that jurisprudence, Plaintiff has failed to state a claim under Section 2
20 of the federal Voting Rights Act.[2]

21
22  [2] Plaintiff appears to concede that she cannot state a claim under the
    "opportunity to elect" clause of subsection (b) of Section 2, *i.e.,* that she has
23  less opportunity that others to elect representatives of her choice, who
    apparently are Democrats.  The political realities are that African-Americans
24  are such a small minority of the population of Congressional District 8, where
25  Plaintiff resides, that they cannot possibly hope to elect a candidate without
    the assistance of other like-minded voters.  The United States Supreme Court,
26  however, held in *Bartlett v. Strickland* that Section 2 does not protect the
27  ability to form political coalitions.  556 U.S. 1 (2009).  There simply is no
28  protection under Section 2 for "race-based partisan alignments in federal
    elections." (Oppo. at 9:28 - 9:4.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**F.    The Privileges And Immunities Clauses Do Not Require California To Have a Partisan Electoral.**

There is no authority for Plaintiff's view that the Privileges or Immunities Clause of the Fourteenth Amendment requires California to use an electoral system that ensures that a Democrat appears on the general election ballot. Justice Douglas's dissenting opinion in *Oregon v. Mitchell*, 400 U.S. 112, 147-150 (1970), is not such a case. (Oppo. at 10:6-7.) In his dissent, Justice Douglas relied on the privileges and immunities clause of the Fourteenth Amendment in opining that reducing the voting age to 18 should also apply in state as well as federal elections. (That was not, however, the holding of the majority.) *See also United States v. Cruikshank*, 92 U.S. 542, 555 (1875) (the Constitution of the United States has not conferred the right of suffrage upon any one).

Plaintiff is mistaken in her apparent belief that the Privileges and Immunities Clause of Article IV of the Constitution requires that California to hold partisan elections because other states do. *See* U.S. CONST. art. IV, § 2, cl. 1. The Privileges and Immunities Clause requires only that states give to citizens of every other state the same privileges and immunities that their own citizens enjoy. *See Hague v. Committee for Indus. Org.*, 307 U.S. 496, 511 (1939); *McKay v. Thompson*, 226 F.3d 752, 756 (6th Cir. 2000), *reh'g and reh'g en banc denied*, 2000 U.S. App. LEXIS 27840 (6th Cir. Oct. 27, 2000), *cert. denied*, 532 U.S. 906 (2001). Plaintiff voted in the June 2012 Top Two Primary election on the very same basis as all Californians, and she is entitled to vote in the upcoming national election in November. There is no violation of privileges and immunities. Once again, Plaintiff's argument is based on the flawed view that there is a "right to vote for a Democrat in a general election." (Oppo. at 10:10.) Plaintiff has not cited any constitutional provision or case that establishes such a right. It simply does not exist.

*Saenz v. Roe*, 526 U.S. 489 (1999), is not such a case. In *Saenz*, the

United States Supreme Court struck down state and federal statutes that treated new citizen of a state differently based on durational residency with regard to eligibility for welfare benefits. Nothing in *Saenz* requires that new California citizens be entitled to vote in a partisan primary election if they came from a state that used closed partisan primary elections. *Saenz* in fact struck down a California statute that required new state residents for twelve months to receive welfare benefits equivalent to those in the states from which they moved. *Id.* at 498.

### G. Intervenors Satisfied The Meet And Confer Requirement.

Finally, contrary to Plaintiff's erroneous claim, counsel for Intervenors did meet and confer as required by L.R. 7-3, which took place on August 15, 2012. *See* Decl. of Skinnell, filed herewith.

## III. CONCLUSION.

The First Amended Complaint fails to state a claim for relief. Plaintiff has not cited any authority for her novel theory that the Constitution affords her the right to vote for a Democrat in a general election. Absent that right, her whole complaint fails and should be dismissed without leave to amend.

Respectfully submitted,

Dated: September 17, 2012

NIELSEN MERKSAMER
PARRINELLO GROSS & LEONI LLP

By: /s/ Marguerite Mary Leoni
Marguerite Mary Leoni

By: /s/ Christopher E. Skinnell
Christopher E. Skinnell

INDEPENDENT VOTER PROJECT,
CALIFORNIANS TO DEFEND THE
OPEN PRIMARY, ABEL MALDONADO
AND DAVID TAKASHIMA